# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PAULA F. SOTO,　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　Plaintiff,　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　v.　　　　　　　　　　　　　　　) | C.A. No. 13-10822 |
| 　　　　　　　　　　　　　　　　　　) | |
| CITY OF CAMBRIDGE,　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　Defendant.　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |

## FIRST AMENDED COMPLAINT

## INTRODUCTION

This action is brought by Paula Frances Soto ("Soto"), a Cambridge resident, to challenge a City of Cambridge policy that interferes with and restricts her public leafleting on political and social issues.  Soto, a political and social activist, distributes leaflets on parked automobiles on public streets to advise the Cambridge community about significant issues that in her view are not adequately addressed in the mainstream media, and to invite participation at monthly film screenings to discuss those issues.  Cambridge, through its police and law departments, has told Soto that she will be subject to arrest unless she stops placing leaflets for her film screenings on parked automobiles.  The City has a policy of prohibiting such leafleting, which it claims is based on a 20-year-old letter written by a former City Solicitor that addressed solely commercial leafleting.

Soto brings this action under 42 U.S.C. § 1983 for violation of her First Amendment rights under the United States Constitution, and under Article XVI of the Massachusetts Declaration of Rights to challenge the City's interference with her right to freedom of

expression.  Soto requests that this Court follow the majority of other federal courts that have

found similar restrictions on leafleting activity to be an unconstitutional restriction of speech

under the First Amendment.  *See, e.g., Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir.

2009); *Horina v. The City of Granite City*, 538 F.3d 624 (7th Cir. 2008); *Krantz v. City of Fort

Smith*, 160 F.3d 1214 (8th Cir. 1999); *Robinson v. Town of Kent*, 835 F. Supp. 2d 1 (S.D.N.Y.

2011); *Ramsey v. City of Pittsburgh*, 764 F. Supp. 2d 728 (W.D. Pa. 2011); *Traditionalist

American Knights of the KKK v. City of Cape Girardeau*, 2012 WL 4464868 (E.D. Mo. Sept.

27, 2012).

## PARTIES

1.     Plaintiff Soto is a resident of Cambridge, Massachusetts.

2.     Defendant City of Cambridge is a municipal corporation in Middlesex County,

Massachusetts.

## NATURE OF THE ACTION

3.     Soto brings this action under 42 U.S.C. § 1983 seeking declaratory relief, nominal

damages, and attorneys' fees for violation of her First Amendment rights and an injunction

against the City from enforcing a prohibition on placing non-commercial leaflets on parked

automobiles.  With respect to declaratory relief, Soto seeks declaratory judgments that: (i) the

City's policy of prohibiting the placement of non-commercial leaflets on parked automobiles is

not supported by either the Defacement Ordinance[1] or the Defacement Statute[2]; and (ii) to the

extent that the Defacement Ordinance and/or the Defacement Statute are deemed to prohibit

the placement of non-commercial leaflets on parked automobiles, the Defacement Ordinance

---

[1] The text of the Defacement Ordinance, Cambridge City Ordinance § 9.04.050, can be seen in Exhibit 1, which is attached to this Complaint.
[2] The text of the Defacement Statute, Mass Gen. Laws ch. 266 § 126, can be seen in Exhibit 2, which is attached to this Complaint.

and/or the Defacement Statute violate Soto's rights under 42 U.S.C. § 1983 and the First

Amendment.

4.      Soto also brings this action under Article XVI of the Massachusetts Declaration of

Rights, seeking declaratory judgments that: (i) the City's policy of prohibiting the placement of

non-commercial leaflets on parked automobiles is not supported by either the Defacement

Ordinance or the Defacement Statute; and (ii) to the extent that the Defacement Ordinance

and/or the Defacement Statute are deemed to prohibit the placement of non-commercial

leaflets on parked automobiles, the Defacement Ordinance and/or the Defacement Statute

violate Soto's rights under Article XVI of the Massachusetts Declaration of Rights.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and

1343(a)(3) for Soto's 42 U.S.C. § 1983 claim of a deprivation, carried out under color of state

law, of a federal constitutional right.

6.      In addition, this Court has supplemental jurisdiction pursuant to 28 U.S.C.

§ 1367(a) over Soto's cause of action arising under the Massachusetts Constitution.

7.      Venue lies in this District because a substantial part of the acts or omissions

giving rise to Soto's claims occurred in the City of Cambridge.  28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

8.      Soto is the founder of UPandOUT, an organization created to raise awareness and

understanding about a variety of important political and social issues that Soto believes are not

being adequately addressed by the mainstream media.  Soto, through UPandOUT, organizes

and hosts a free film series on the third Thursday of every month.  These films range in subject

matter.  For example, past films have included *Death of a Nation: The Timor Conspiracy* (about the Indonesian military occupation of East Timor), *Lumumba* (about the roles of the United States and Belgium in the assassination of Patrice Lumumba, the first legally elected prime minister of the Democratic Republic of the Congo), *Our Daily Bread* (about industrial food production and high-tech farming) and *Burning The Future* (about rising global warming emissions as a result of alleged "clean coal" technology).

9.    The films are screened in the community room of Soto's apartment building, an affordable housing complex.  The screenings are free to the public, and attract an audience that can range from 20 – 40 individuals every month.  Soto pays for all of the costs associated with these events through her own limited financial means.

10.    The primary way that Soto promotes the film screenings is by leafleting automobiles parked on public streets in the City of Cambridge, typically during the week leading up to the screening.

11.    In the seven years that Soto has been involved in organizing the monthly film series, she has found that leafleting parked neighborhood automobiles is the most effective way to advertise the film screenings to a wide range of individuals not limited to solely local residents.

12.    The leaflets not only inform the community about the monthly film series, but provide educational information about relevant political and social issues.

13.    An example of one of Soto's leaflets is attached as Exhibit 3.

14.    Soto leaflets hundreds of parked automobiles every month for the purpose of promoting the monthly film series and educating the community about political and social

issues.  Soto limits her leafleting to parked automobiles on public streets, and does not leaflet

automobiles on driveways or other private property.

15.   On December 12, 2011, Soto was leafleting parked automobiles in her

neighborhood when she was approached by a City of Cambridge police officer.  The officer

told her that she could not put leaflets on automobiles, that she needed a permit to leaflet, and

that her actions constituted littering.

16.   Soto ceased leafleting that day as a result of her conversation with the police

officer.

17.   The next day, Soto contacted the American Civil Liberties Union of

Massachusetts ("ACLUM") about her encounter with the Cambridge police.  In early January

of 2012, an ACLUM attorney contacted the then-Cambridge City Solicitor and informed him

that the organization had been contacted by an individual who had been ordered by a police

officer to stop placing leaflets on parked automobiles.  ACLUM suggested that this order was

unconstitutional, with many courts having so ruled, and asked that the police be told to stop

giving such orders.  The City Solicitor noted that he would investigate the matter.

18.   On January 11, 2012,  the City Solicitor responded by sending ACLUM a letter

written nearly two decades earlier, in 1994, which had the subject heading: "Re: Placement of

*Commercial Advertising* on Car Windows." (emphasis added) ("Opinion Letter").  In that

Opinion Letter, a former City Solicitor advised the City Manager that it was illegal for a

business in Harvard Square to place advertisements on parked automobiles.[3]

19.   The Opinion Letter purported to rely on the Defacement Ordinance,  which

governs the defacement of public or private property.  The Defacement Ordinance prohibits the

---

[3] The Opinion Letter is attached as <u>Exhibit 4</u>.

"post[ing]" or "attach[ing]" of "any handbill, poster, advertisement or notice . . .  on private property" without the consent of the owner or occupant.  The offense is punishable by a fine up to $300 per illegal advertisement, or if punished by noncriminal ticketing, $25 for the first violation, $100 for the second violation, and $200 for the third and subsequent violations.

20.    The Defacement Ordinance does not define "handbill," "poster," "advertisement," "notice of any kind," or "private property," does not say what conduct constitutes "posting" or "attaching," and does not explicitly prohibit objects from being placed on automobiles.  Nor does it purport to apply to activities constituting the exercise of protected speech.

21.    The Opinion Letter also cited the Defacement Statute, which governs the "defacement" of public or private property.  With respect to any "object which is public property or the property of another," the Defacement Statute prohibits "paint[ing]," "put[ting] upon," or "affix[ing]" "any . . . advertising or notice which is not required by law to be posted" without first obtaining the consent of the property owner.  The offense is punishable by a fine of up to one hundred dollars, and the offender is also subject to a tort action for "the cost of removing or obliterating such defacement."

22.    The Defacement Statute does not define "object" or "property," does not say what kinds of conduct constitute "putting upon" or "affixation," and does not explicitly prohibit objects from being placed on parked automobiles.  Nor does the statute purport to apply to activities constituting the exercise of free speech.

23.    The scope of the Opinion Letter was limited to addressing the placement of *commercial advertising* on automobiles, as evidenced by the subject heading of the letter.

24.    Along with sending the Opinion Letter to ACLUM, the City Solicitor also stated by email that the City would reconsider its legal opinion in light of court decisions issued after the 1994 Opinion Letter.

25.    Despite receiving from ACLUM references to numerous court decisions since 1994 holding that it is a violation of the First Amendment to prohibit individuals from leafleting automobiles, in subsequent discussions with ACLUM a new acting City Solicitor informed ACLUM in May 2012 that the City stood by its policy and would continue to enforce it in Cambridge.  In so doing, the City has ratified the actions of its police officer who threatened Soto when he stopped her from placing leaflets on parked automobiles.

26.    On February 21, 2013, counsel for Soto sent a letter to the now officially appointed City Solicitor seeking to resolve the matter and provided further references to court decisions that support Soto's claim that the City's interpretation of both the statute and local law violate Soto's First Amendment rights.

27.    In response, by letter dated March 13, 2013, the City Solicitor maintained the City's "position that its ordinance is presumptively valid and as such the City is *required* to enforce it." (emphasis added).  The City's response letter is attached as Exhibit 5.

28.    At a May 5, 2014, City Council meeting, which was open to the public, City Council members expressed concern about the First Amendment implications of restricting leafleting and questioned whether the ordinance was intended to prohibit this type of activity. The Council referred the matter to the City Council Ordinance Committee to consider amendment.

29.     At a June 18, 2014, City Council Ordinance Committee meeting, which was open to the public, the City Solicitor continued to maintain the City's position that the ordinance is both unambiguous and presumptively valid and as such the City is required to continue enforcing its policy against leafleting of parked vehicles.

30.     The City's threat to continue enforcing its prohibition on the placement of political leaflets on parked automobiles interferes unnecessarily with Soto's First Amendment rights because such leafleting is the most efficient and cost-effective way for her to reach a large number of persons living in, or found in, the City.  No comparable alternative exists.

31.     The City's policy has unconstitutionally chilled, and will continue to chill, advocacy by Soto and other members of UPandOUT.  They have suffered ongoing irreparable injury because they reasonably fear that they will be arrested or fined if they distribute leaflets, and feel in danger of being stopped by the police every time that they engage in these actions.

32.     Soto and other members of UPandOUT have been and are being harmed by the violation of their constitutional rights caused by the Cambridge policy and practice.

33.     Upon information and belief, no other municipality in the Commonwealth of Massachusetts has interpreted the Defacement Statute as prohibiting the placement of political leaflets on parked automobiles, nor has any other municipality in Massachusetts enforced a city ordinance prohibiting such conduct.

**COUNT I: The City's Enforcement of the Defacement Ordinance Against Soto's Non-Commercial Leafleting on Parked Automobiles Violates Soto's Rights Under 42 U.S.C. § 1983 and the First Amendment**

**(42 U.S.C. § 1983 and First Amendment)**

34.     Soto repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

35.     The text of the Defacement Ordinance does not prohibit placing non-commercial leaflets on parked automobiles.  Therefore, the City's asserted policy of prohibiting the placement of non-commercial leaflets on parked automobiles is not based on any law and cannot be enforceable.

36.     Soto, through counsel, has asserted to the City that her activities do not violate the Defacement Ordinance, but the City has continued to assert its enforcement policy.  Given the City's continued stance, Soto has a reasonable apprehension that the City will punish her if she carries on her leafleting activities.

37.     To the extent that the Defacement Ordinance is deemed to prohibit the placement of non-commercial leaflets on parked automobiles, the Defacement Ordinance violates Soto's rights under 42 U.S.C. § 1983 and the First Amendment.

38.     The City's policy that the Defacement Ordinance prohibits the placement of non-commercial leaflets on parked automobiles is allegedly based on a nearly 20-year old Opinion Letter, which addresses only the "placement of *commercial advertising* on car windows." (emphasis added).  Even if the City's ban on the placement of commercial advertising on car windows is itself constitutional—a point that Soto does not concede—its extension of that ban to non-commercial leafleting is still unconstitutional.  Soto's leaflets concern political and social issues, and are indisputably non-commercial in nature.  Given that non-commercial speech receives the greatest level of First Amendment protection, the City's ban on placing non-commercial leaflets on parked automobiles violates Soto's First Amendment rights.

39.     The City has maintained its position that the Defacement Ordinance is presumptively valid and that enforcement of the Defacement Ordinance does not violate the

First Amendment.  Given the City's continued stance, Soto has a reasonable apprehension that the City will punish her if she carries on her leafleting activities.

40.    Based on the foregoing, there is an actual, immediate and justiciable controversy between Soto and the City about the applicability of the Defacement Ordinance.

41.    To resolve the legal and factual questions raised by the City and to afford relief from the uncertainty and controversy which the City's accusations have precipitated, Soto is entitled to declaratory judgments that: (i) the Defacement Ordinance, upon which the City's policy is based, does not prohibit the placement of non-commercial leaflets on parked automobiles;  and (ii) to the extent that the Defacement Ordinance is deemed to prohibit the placement of non-commercial leaflets on parked automobiles, the Defacement Ordinance violates Soto's rights under 42 U.S.C. § 1983 and the First Amendment.

42.    Soto is also entitled to nominal damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988.

**COUNT 2: The City's Enforcement of the Defacement Ordinance Against Soto's Non-Commercial Leafleting on Parked Automobiles Violates Soto's Rights Under Article XVI of the Massachusetts Declaration of Rights**

43.    Soto repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

44.    To the extent that the Defacement Ordinance is deemed to prohibit the placement of non-commercial leaflets on parked automobiles, the Defacement Ordinance violates Soto's right to free speech under Article XVI of the Massachusetts Declaration of Rights.

45.    The City has maintained its position that the Defacement Ordinance is presumptively valid and that enforcement of the Defacement Ordinance does not violate

Article XVI.  Given the City's continued stance, Soto has a reasonable apprehension that the City will punish her if she carries on her leafleting activities

46.   Based on the foregoing, there is an actual, immediate and justiciable controversy between Soto and the City about the constitutionality of the City's policy to enforce the Defacement Ordinance against Soto's non-commercial leafleting activities.

47.   To resolve the legal and factual questions raised by the City and to afford relief from the uncertainty and controversy which the City's accusations have precipitated, Soto is entitled to declaratory judgments that: (i) the Defacement Ordinance, upon which the City's policy is based, does not prohibit the placement of non-commercial leaflets on parked cars; and (ii) to the extent that the Defacement Ordinance is deemed to prohibit the placement of non-commercial leaflets on parked automobiles, the Defacement Ordinance violates Soto's rights under Article XVI of the Massachusetts Declaration of Rights.

**COUNT 3: The City's Enforcement of the Defacement Statute Against Soto's Non-Commercial Leafleting on Parked Automobiles Violates Soto's Rights Under 42 U.S.C. § 1983 and the First Amendment**

**(42 U.S.C. § 1983 and First Amendment)**

48.   Soto repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

49.   The text of the Defacement Statute does not prohibit placing non-commercial leaflets on parked automobiles.  Therefore, the City's asserted policy of prohibiting the placement of non-commercial leaflets on parked automobiles is not based on any law and cannot be enforceable.

50.   Soto, through counsel, has asserted to the City that her activities do not violate the Defacement Statute, but the City has continued to assert its enforcement policy.  Given the

City's continued stance, Soto has a reasonable apprehension that the City will punish her if she carries on her leafleting activities.

51.   To the extent that the Defacement Statute is deemed to prohibit the placement of non-commercial leaflets on parked automobiles, the Defacement Statute violates Soto's rights under 42 U.S.C. § 1983 and the First Amendment.

52.   The City's policy that the Defacement Statute prohibits the placement of non-commercial leaflets on parked automobiles is allegedly based on a nearly 20-year old Opinion Letter, which addresses only the "placement of *commercial advertising* on car windows." (emphasis added).  Even if the City's ban on the placement of commercial advertising on car windows is itself constitutional—a point that Soto does not concede—its extension of that ban to non-commercial leafleting is still unconstitutional.  Soto's leaflets concern political and social issues, and are indisputably non-commercial in nature.  Given that non-commercial speech receives the greatest level of First Amendment protection, the City's ban on placing non-commercial leaflets on parked automobiles violates Soto's First Amendment rights.

53.   The City has maintained its position that the Defacement Statute is presumptively valid and that enforcement of the Defacement Statute does not violate the First Amendment. Given the City's continued stance, Soto has a reasonable apprehension that the City will punish her if she carries on her leafleting activities.

54.   Based on the foregoing, there is an actual, immediate and justiciable controversy between Soto and the City about the applicability of the Defacement Statute.

55.   To resolve the legal and factual questions raised by the City and to afford relief from the uncertainty and controversy which the City's accusations have precipitated, Soto is

entitled to declaratory judgments that: (i) the Defacement Statute, upon which the City's policy

is based, does not prohibit the placement of non-commercial leaflets on parked automobiles;

and (ii) to the extent that the Defacement Statute is deemed to prohibit the placement of non-

commercial leaflets on parked automobiles, the Defacement Statute violates Soto's rights

under 42 U.S.C. § 1983 and the First Amendment.

56.     Soto is also entitled to nominal damages and attorneys' fees pursuant to 42

U.S.C. §§ 1983 and 1988.

### COUNT 4: The City's Enforcement of the Defacement Statute Against Soto's Non-Commercial Leafleting on Parked Automobiles Violates Soto's Rights Under Article XVI of the Massachusetts Declaration of Rights

57.     Soto repeats, re-alleges, and incorporates by reference the allegations in the

foregoing paragraphs of this Complaint as fully set forth herein.

58.     To the extent that the Defacement Statute is deemed to prohibit the placement of

non-commercial leaflets on parked automobiles, the Defacement Statute violates Soto's right to

free speech under Article XVI of the Massachusetts Declaration of Rights.

59.     The City has maintained its position that the Defacement Statute is presumptively

valid and that enforcement of the Defacement Statute does not violate Article XVI.  Given the

City's continued stance, Soto has a reasonable apprehension that the City will punish her if she

carries on her leafleting activities.

60.     Based on the foregoing, there is an actual, immediate and justiciable controversy

between Soto and the City about the constitutionality of the City's policy to enforce the

Defacement Statute against Soto's non-commercial leafleting activities.

61.    To resolve the legal and factual questions raised by the City and to afford relief

from the uncertainty and controversy which the City's accusations have precipitated, Soto is

entitled to declaratory judgments that: (i) the Defacement Statute, upon which the City's policy

is based, does not prohibit the placement of non-commercial leaflets on parked automobiles;

and (ii) to the extent that the Defacement Statute is deemed to prohibit the placement of non-

commercial leaflets on parked automobiles, the Defacement Statute violates Soto's rights

under Article XVI of the Massachusetts Declaration of Rights.

## CLAIM FOR RELIEF

WHEREFORE Soto requests this Court:

62.    Award Soto nominal damages for violation of her constitutional rights pursuant to

42 U.S.C. § 1983;

63.    Award Soto her costs and reasonable attorneys' fees pursuant to 42 U.S.C.

§§ 1983 and 1988;

64.    Enter declaratory judgments pursuant to 42 U.S.C. § 1983 finding that: (i) the

City's policy of prohibiting the placement of non-commercial leaflets on parked automobiles is

not supported by either the Defacement Ordinance or the Defacement Statute; and (ii) to the

extent that the Defacement Ordinance and/or the Defacement Statute are deemed to prohibit

the placement of non-commercial leaflets on parked automobiles, the Defacement Ordinance

and/or the Defacement Statute violate Soto's rights under 42 U.S.C. § 1983 and the First

Amendment.

65.    Enter declaratory judgments pursuant to Article XVI of the Massachusetts

Declaration of Rights finding that: (i) the City's policy of prohibiting the placement of non-

commercial leaflets on parked automobiles is not supported by either the Defacement

Ordinance or the Defacement Statute; and (ii) to the extent that the Defacement Ordinance and/or Defacement Statute are deemed to prohibit the placement of non-commercial leaflets on parked automobiles, the Defacement Ordinance and/or Defacement Statute violate Soto's rights under Article XVI of the Massachusetts Declaration of Rights.

66.   Issue preliminary and permanent injunctions enjoining the City from enforcing a prohibition on placing non-commercial leaflets on parked automobiles; and

67.   Award Soto such other relief as the Court deems just and proper.

Dated:   August 26, 2014                    Respectfully submitted,


                                            /s/ Thaila K. Sundaresan
                                            Richard A. Johnston (BBO# 253420)
                                            Kevin S. Prussia (BBO# 666813)
                                            Thaila K. Sundaresan (BBO# 683616)
                                            Julia M. Ong (BBO# 685014)
                                            WILMER CUTLER PICKERING
                                             HALE AND DORR, LLP
                                            60 State Street
                                            Boston, MA  02109
                                            Telephone:  617-526-6000
                                            Facsimile:  617-526-5000
                                            richard.johnston@wilmerhale.com
                                            kevin.prussia@wilmerhale.com
                                            thaila.sundaresan@wilmerhale.com
                                            julia.ong@wilmerhale.com


                                            Of Counsel:


                                            Matthew R. Segal (BBO# 654489)
                                            AMERICAN CIVIL LIBERTIES UNION
                                             OF MASSACHUSETTS
                                            211 Congress Street, 3rd Floor
                                            Boston, MA  02110
                                            Telephone:  617-482-3170
                                            Facsimile:  617-451-0009
                                            msegal@aclum.org


                                            *Attorneys for Plaintiff Paula F. Soto*

## CERTIFICATE OF SERVICE

I, Thaila K. Sundaresan, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 26th day of August, 2014.

/s/ Thaila K. Sundaresan
Thaila K. Sundaresan

# Exhibit 1

Cambridge, Massachusetts, Code of Ordinances >> Title 9 - PUBLIC PEACE, MORALS AND WELFARE >> Chapter 9.04 OFFENSES AGAINST PROPERTY >>

**Chapter 9.04 OFFENSES AGAINST PROPERTY** 

### Sections:
9.04.010 Vandalism, destruction of property and other related offenses.
9.04.020 Injuring or destroying public or private property.
9.04.030 Trespassing on public property.
9.04.040 Construction of fences—Dangerous materials.
9.04.050 Defacing public property.
9.04.060 Sale of certain paints and markers.
9.04.070 Throwing objects in streets or on bridges.
9.04.080 Skateboarding Prohibited on City Property

## 9.04.010 Vandalism, destruction of property and other related offenses. 

A.   No person shall wilfully and maliciously, intentionally and without right:

   1.   Break down, injure, remove or destroy a monument erected for, or tree marked for, the purpose of designating the boundaries of a town or of a tract or lot of land, or a milestone, mileboard or guideboard erected upon a public way or railroad, or deface or alter the description of any such stone or board;

   2.   Mar or deface a building or signboard, or extinguish a light, or break, destroy or remove a lamp, lamp post, railing or post erected on a bridge, sidewalk, public way, court or passage;

   3.   Deface or otherwise injure, remove, interfere with or destroy any traffic regulating sign, light signal, marking or device lawfully erected or placed under public authority on any public way;

   4.   Or wantonly and without cause, destroy, deface, mar or injure a schoolhouse, church or other building erected or used for purposes of education or religious instruction, or for the general diffusion of knowledge, or an outbuilding, fence, well or appurtenance of such schoolhouse, church or building, or furniture, apparatus or other property belonging thereto or connected therewith;

   5.   Or wantonly and without cause, destroy, deface, mar or injure any playground apparatus or equipment located in a public park or playground;

   6.   Destroy, injure, deface or mar a dwelling house or other building, whether upon the inside or outside;

   7.   Mar or injure the wells, wainscoting or any other part of a courthouse, or any other building or room used for county business or any building belonging to the Commonwealth or any building belonging to the City or the appurtenances thereof, by cutting, writing or otherwise;

   8.   Maliciously remove, display, destroy, deface, mar or injure any monument, tablet or other device erected to mark an historic place or to commemorate an historic event.

B.   Whoever violates any provision of this section in the presence of a police officer authorized to serve criminal process and the identity of such person is unknown to the officer, such person may be arrested by such officer and detained in a safe place without a warrant until his identity is ascertained. Reasonable diligence shall be exercised by the arresting officer in ascertaining the identify of the offender and when identified he shall be released from arrest unless a warrant was issued against him. If the offender is known to the police officer, he shall seek a complaint in court against such offender.

C.   The organization(s) responsible for the distribution of posters or flyers with an intention that they be posted in violation of this section shall be responsible for the immediate removal of such posters or flyers and the names of organization(s) named on illegally posted posters or flyers shall be forwarded to the appropriate area businessmen's association so that the association may notify such organization that such acts are prohibited by City ordinance.

D.   Upon conviction under this section, it is shown that the act committed was a first offense, and if the person makes restitution to the party injured, the justice of the district court may continue the case without finding.

*(Ord. 1092 (part), 1989; Ord. 964, 1981: prior code § 13-20)*

## 9.04.020 Injuring or destroying public or private property. 

A.   No person shall, without proper authority, paint on, write on, or otherwise injure, deface, destroy or vandalize any public building or any public or private property.

B.   Any person who violates this section shall be subject to a fine of three hundred dollars.

*(Ord. 1049 § 1, 1987: prior code § 13-2)*

## 9.04.030 Trespassing on public property. 

A.   No person shall trespass on the roof of a public building or within a school building after regular school hours without the prior permission of a duly authorized public official.

B.   At least two signs shall be posted on all public buildings with not less than one inch letters, not more than ten feet, and not less than six feet from the ground, black letters on white background as follows:

**City of Cambridge**

No Trespassing and

No Defacing of this public building.

Violators will be prosecuted to the

full extent of the law.

**City Manager**

C.   Any person who violates any provision of this section shall be subject to a fine of not more than one hundred dollars for the first offense, not more than two hundred dollars for the second offense and not more than three hundred dollars for subsequent offenses.

*(Ord. 1049 § 2, 1987: prior code § 13-3)*

## 9.04.040 Construction of fences—Dangerous materials.

No person shall erect or maintain anywhere in the City a fence equipped with or having razor wire or razor ribbon. Nor shall any person erect or maintain a fence equipped with or having barbed wire, spikes or other dangerous materials, or any electric charge sufficient to cause shock, within ten feet of the ground level.

*(Ord. 1009, 1984: prior code § 13-17A)*

## 9.04.050 Defacing public property.

A.   No person shall post or attach, or directly or indirectly cause to be posted or attached in any manner, any handbill, poster, advertisement or notice of any kind on public property except by permission of the City Manager or his designee, or on private property without the consent of the owner or occupant thereof.

B.   Any handbill or sign found posted or otherwise affixed on any public property contrary to the provisions of this section may be removed by the Police Department or the Department of Public Works or the Inspectional Services Department.

C.   The person or persons responsible for causing the unlawful posting of any notice described herein will be liable for the cost of removal and for the penalties described below. Persons liable under this section include, but are not limited to, any individual, corporation, partnership or other organization whose advertisement, message or information appears on the unlawfully posted notice.

D.   Any person who violates this section shall be subject to a fine of three hundred dollars. Each illegally posted notice, advertisement, poster or sign shall be considered a separate violation of this section, and a separate offense shall be deemed committed on each day during or on which a violation of this section occurs or continues.

E.   As an alternative to the penalty set forth in subsection D, whoever violates any provision of this section shall be penalized by a noncriminal disposition as provided in G.L., c. 40, §21D. For purposes of this section, the following officials shall be enforcing persons: Cambridge Police Officers and designated staff of the Cambridge Department of Public Works and the Inspectional Services Department.

Then noncriminal penalty for the first violation of this section shall be twenty-five dollars; for the second violation, one hundred dollars; and for the third and all subsequent violations, two hundred dollars.

*(Ord. 1138, 1992)*

## 9.04.060 Sale of certain paints and markers.

A.   No person shall, within the City, sell, display, expose or keep for sale any aerosol spray paint can, or any marker containing a fluid which is not water soluble and which has a point, brush, applicator or other writing surface in excess of one-half inch, unless at the point of display or sale there is posted a sign with letters not less than one and one-half inches in height bearing the following words:

Sale of spray paint and broad indelible markers to persons under eighteen and the unlawful purchase or possession of paints and such markers by persons under eighteen is punishable by a three hundred dollar fine, nor shall any person sell or deliver any aerosol spray paint, or any marker containing a fluid which is not water soluble and which has a point, brush, applicator or other writing surface in excess of one-half inch to any person under eighteen years of age or to any person of whatever age who refuses to submit for inspection if requested a driver's license, liquor purchase identification or other identification to establish the age of such person, nor shall any person being under the age of eighteen purchase, conceal or remove from the premises such items; providing, that nothing in this section shall prevent the parent, guardian, employer or teacher of such a minor person from delivering such items to a minor intending the same to be lawfully used.

B.   Any person who violates this section shall be subject to a fine of three hundred dollars.

*(Ord. 1049 § 3, 1987: prior code § 13-21)*

## 9.04.070 Throwing objects in streets or on bridges.

No person shall play ball or throw a stone or other missile in any street, or upon or from any bridge.

*(Prior code § 13-16)*

## 9.04.080 Skateboarding Prohibited on City Property

A.   "Skateboard" is defined for purposes of this ordinance as a non-motorized vehicle consisting of a long footboard between two sets of wheels, with steering controlled by weight distribution.

B.   "Skateboarding" is defined as one or more people being on a skateboard while the skateboard is moving.

C.   Skateboarding is hereby prohibited on City property, except that skateboarding shall be permitted in city-owned and designated skateboard parks or other areas designated by the City.

D.   Each violator of this ordinance may be fined up to fifty ($50.00) dollars for each offense. Enforcement of this section may be by non-criminal disposition as provided by M.G.L. c.40, §21D. Police officers shall be the enforcement personnel.

*(1278, Added, 08/02/2004)*

# Exhibit 2



THE 188TH GENERAL COURT OF
THE COMMONWEALTH OF MASSACHUSETTS

Home  Glossary  FAQs

site search

Options    GO

| Massachusetts Laws | Bills | State Budget | People | Committees | Educate & Engage | Events | MyLegislature |

## Massachusetts Laws

Massachusetts Constitution

General Laws

Session Laws

Rules

## General Laws

Print Page

| PART IV | CRIMES, PUNISHMENTS AND PROCEEDINGS IN CRIMINAL CASES | |
| --- | --- | --- |
| | | PREV  NEXT |
| TITLE I | CRIMES AND PUNISHMENTS | |
| | | NEXT |
| CHAPTER 266 | CRIMES AGAINST PROPERTY | |
| | | PREV  NEXT |
| Section 126 | Natural scenery; penalty for defacement | |
| | | PREV  NEXT |

Section 126. Whoever paints, or puts upon, or in any manner affixes to, any fence, structure, pole, rock or other object which is public property or the property of another, whether within or without the limits of the highway, any words, device, trade mark, advertisement or notice which is not required by law to be posted thereon, without first obtaining the written consent of the municipal or public officer in charge thereof or the owner or tenant of such property, shall, upon complaint of such municipal or public officer, or of such owner or tenant, be punished by a fine of not less than ten nor more than one hundred dollars, and in addition shall forfeit to the use of the public or private owner of such property or the tenant thereof the cost of removing or obliterating such defacement to be recovered in an action of tort. Any word, device, trade mark, advertisement or notice which has been painted, put up or affixed within the limits of a highway in violation of this section shall be considered a public nuisance, and may be forthwith removed or obliterated and abated by any person.

Show / Hide Site Map

Mass.gov | Site Map | Site Policy | Webmaster

Copyright © 2014 The General Court, All Rights Reserved

# Exhibit 3





**July 5th**

# BLOODY THURSDAY

They fought
for the
union
but
gave all
for each other

**FREE**  **Refreshments**  **Door prizes**

# UPandOUT 3rd Thursdays, free film series

# Showing
## Thursday, July 19

**6:40pm** doors open

**7pm** film starts promptly

243 Broadway, Cambridge
corner of Broadway & Windsor, entrance on Windsor



Next up, Aug 16: *Burning the Future: Coal in America*
(the devastating impact of our addiction to coal)

## Bloody Thursday                     [60 min]

**S y n o p s i s**

*Bloody Thursday* tells the story of how West Coast dockworkers overcame huge obstacles to form their union, the ILWU.

Set in the midst of the Great Depression, the film shows how longshoremen were fighting for their rights at the same time that most of their families weren't sure where their next meal would come from. The odds were stacked against the longshoremen.

Mainstream newspaper publishers, fearful of unionization efforts at their own papers, launched brutal attacks against the dockworkers and drove public sympathy against them. In addition, politicians and the police openly used their resources to side with the shipping companies against the striking dockworkers.

*Bloody Thursday* tells the human stories of the dockworkers who stood up against these odds and changed the course of American labor history.

"*This strike is the best thing that ever happened to San Francisco. We have lost millions on the waterfront in the last few months. But it's a good investment, a marvelous investment. It's solving the labor problem for years to come. Mark my words. When this nonsense is out of the way and the men have been driven back to their jobs, we won't have to worry about them anymore.*" ~William H. Crocker, prominent SF banker

"*An Injury to One is an Injury to All*" Rallying cry of the Wobblies [IWW], and the name of a sculpture at the corner of Mission & Steuart Streets, San Francisco

Film screenings: 243 Broadway, Cambridge          UPandOUT.org          617-864-3322

# Exhibit 4



# CITY OF CAMBRIDGE

Office of the City Solicitor
City Hall
795 Massachusetts Avenue
Cambridge, Massachusetts 02139

Tel. (617) 349-4121
Fax. (617) 349-4134

Russell B. Higley
City Solicitor

Donald A. Drisdell
Deputy City Solicitor

Michael C. Costello
Assistant City Solicitor

Birge Albright
Legal Counsel

Gail S. Gabriel
Legal Counsel

Diane Wynshaw-Boris
Legal Counsel

Laura H. Yager
Legal Counsel

Linda A. Stamper
Legal Counsel

Arthur J. Goldberg
Legal Counsel

February 3, 1994

Robert W. Healy
City Manager
City Hall
Cambridge, MA    02139

Re:  Placement of Commercial Advertising on Car Windows

Dear Mr. Healy:

In a letter dated December 16, 1993 (copy attached), City Councillor Francis Duehay asked about the legality of a business in Harvard Square placing advertisements on parked cars.  The practice is illegal.  Massachusetts General Laws, Chapter 266, section 126 provides in pertinent part:

> Whoever...in any manner affixes to any...object which is...the property of another, whether within or without the limits of the highway, any...advertisement or notice which is not required by law to be posted thereon, without first obtaining the written consent of...the owner...of such property, shall, upon complaint of such...owner...be punished by a fine of not less than ten nor more than one hundred dollars....

Although automobiles are not specifically mentioned in this statute, they appear to be included within the language "any object which is the property of another, whether within or without the limits of the highway."  Generally, state laws are enforced by the Police Department and the District Attorney's office.

2

Code of Ordinance §9.04.050 is similar to G.L.c.266, s.126. It provides that:

> A.   No person shall post or attach, or directly or indirectly cause to be posted or attached in any manner, any handbill, poster, advertisement or notice of any kind...on private property without the consent of the owner or occupant thereof....

> C.   The person or persons responsible for causing the unlawful posting of any notice described herein will be liable for the cost of removal and for the penalties described below.

The penalties described in paragraphs D. and E. are $300 per illegal advertisement, or if punished by noncriminal ticketing, $25 for the first violation, $100 for the second violation, and $200 for the third and all subsequent violations.   Again, automobiles are not specifically mentioned, but could be included within the term "private property."

The primary legal issue raised by laws restricting the distribution of advertisements is the free speech guarantee of the First Amendment to the U.S. Constitution.   Commercial speech, such as advertising, is protected by the First Amendment.   <u>John Donnelly & Sons, Inc. v. Outdoor Advertising Board</u>, 369 Mass. 206 (1975). However, commercial speech may be limited by reasonable time, place, and manner restrictions that further a significant governmental interest.   <u>Massachusetts Fair Share, Inc. v. Town of Rockland</u>, 610 F.Supp. 682 (1985).   If a reasonable advertising restriction does not affect speech based on its content, if it is narrowly drawn, and alternative means of communication are available, the restriction is likely to be valid.   "For example, an ordinance that prohibits the placing of handbills in any

3

automobile, yard, or porch without the consent of the owner may be valid."  7 McQuillin, <u>Municipal Corporations</u>, §24.393.

Please contact me if I can be of further assistance.


Very truly yours,


Russell B. Higley


cc.  Councillor Francis Duehay

## 112 § 73

**PROFESSIONS AND OCCUPATIONS**

Note 1

ments by amendments. Com. v. S.S.
Kresge Co. (1929) 168 N.E. 558, 267 Mass.
145.

**2. Deceased or incapacitated optometrists**

Optometrist who maintained a principal
optometry office and a branch office at his
personal residence could be engaged by de-
ceased residence, widow to conduct her de-
ceased optometrist's widow to conduct her
late husband's practice on a part-time basis
despite rule of board of registration in op-
tometry that an optometrist shall not estab-
lish an office other than his principal office,
except the one office approved by the
board and located in his personal residence.
Op.Atty.Gen., March 12, 1974, p. 114.

**3. Opticians**

Fitting of contact lenses to the human
eye constitutes the practice of optometry
and therefore to opticians by statute.
Op.Atty.Gen., June 9, 1955, p. 386.

**4. Physicians and surgeons**

In Martin v. Board of Registra-
tion in Medicine (1938) 15 N.E.2d 476, 300
Mass. 426, the court said: "It is difficult to
believe that the Legislature regarded op-
tometry, carefully defined in this statute, as
a part of the practice of medicine under
previous statutes, when in authorizing per-
sons to practise optometry the Legislature
itself declared that it did not authorize them
to practise medicine "in any sense." The
exception of physicians from the operation
of the new act would seem to have been
due, not to the belief that "optometry" as

there defined was "medicine," but to
belief that there was no necessity for regu-
lating qualified physicians who practiced in
the field of optometry."

In the case of McMurdo v. Getter
(1937) 10 N.E.2d 139, 298 Mass. 363,
said: "One who has ... acquired the assur-
ance of an optometric practice by the de-
ceased spouse of a registered practi-
tioner ..." Section 73. Another is that the
person of a registered optometrist in op-
charge of, or practise optometry in, the op-
tical department conducted by such person
... Section 73. The servant employed in
case of McMurdo was not registered op-
... he was a registered optometrist employed
etrist. It is true that a physician may ...
tise optometry. Section 73. But this ...
comes to the end of the first sentence, deleted the re-
art of the first sentence, which ...
lature may rationally have felt that a ...
physician who would accept employment ...
an optical department would not be far ...
narrow field of optometry, ...
exception by obtaining registration ...
optometrist. Section 73. ...
practising optometry without right ...

A registered physician may prac-
tometry without being examined ...
censed as an optometrist or subject to ...
tions applicable to others who practise ...
tometry.   Op.Atty.Gen., Feb. 10, ...
37.

---

## § 73A. Advertising restrictions; violations; penalties

Persons may advertise the sale price of eyeglasses, contact lenses,
eyeglass frames provided they shall not include in any newspaper,
display sign or other advertisements of a character
tending to deceive or mislead the public, or any statement which in
way misrepresents any material or service or credit terms, any
statement containing the words "free examination of eyes" "free
vice", "free consultation", "consultation without obligation", or
other words or phrases of similar import which convey the impression
that eyes are examined free. Any advertisement offering contact
eyeglasses, or eyeglass frames at a fixed price shall include a state
which indicates that said price does not include eye examination
professional services. Such statement shall indicate whether or
includes lens and, if so, the type of lens, single vision, bi-focal or tri
and the strength thereof, low, medium or high.

Whoever violates any provision of this section shall be punished
first offense by a fine of not less than fifty dollars nor more than

244

---

## OPTOMETRISTS

## 112 § 73A

Note 1

dollars or by imprisonment for not more than three months, or
belief that there was a subsequent offense by a fine of not less than two
and for a subsequent offense by a fine of not less than two
dollars nor more than five hundred dollars or by imprisonment
not less than three nor more than six months, or both.

Added by St.1937, c. 287, § 1.   Amended by St.1976, c. 91.

### Historical Note

St.1937, c. 287, § 1 was approved May 11,
... of the first sentence, deleted the re-
shall not include eye glasses, contact lenses
... of the first sentence, which reads
... frames at a fixed price shall include
... a fixed price, either alone or in
... with professional services, or
statement advertising a frame
... at a fixed price, either alone or in
... with professional services, or
statement advertising a frame
... to the effect that said price is
... frame or mounting only and does
... include lenses, eye examination or pro-

fessional services, is included in said adver-
tisement, if the advertisement is written or
printed, in words or print as legible and not
less than one half the size of the words or
print used for said price, or any statement
... lens or ... advertising a
... or any statement which refers inaccu-
... to the goods, prices, values, credit
terms, policies or services of any competi-
... frame or mounting only and set out
which read: "A price shall be construed as
being fixed, within the meaning of this sec-
tion, although the words 'and up' or 'as low
as' or words of similar import are used in
... this sentence as the present second para-
graph.

St.1976, c. 91, was approved April 30,
1976. Emergency declaration by the Gover-
nor was filed May 4, 1976.

### Cross References

Physicians and Surgeons ⇔10.
C.J.S. Physicians and Surgeons §§ 31 to
37.

Physicians and Surgeons ⇔10.
M.F.S. vol. 36, Alperin and Chase,
§ 333.

Comment. Regulation of medical devices, see

Optometry, board membership, practice
and trade name, see Friedman v. Rogers,
infra.

### Library References

### United States Supreme Court

1979, 99 S.Ct. 887, 440 U.S. 1, 59 L.Ed.2d
100.

### Notes of Decisions

continuing practice of generally undersell-
ing competitors were constitutional as
measures in interest of public health and
... for the frame or mounting only and did
not include lenses, eye examination or pro-

The requirement of this section that one
advertising a frame or mounting for glasses
at a fixed price shall state that the price
was for the frame or mounting only and did
not include lenses, eye examination or pro-
... exercise of police power.
Com. v. Ferris (1940) 25 N.E.2d 378, 305
Mass. 233.

245



# CITY OF CAMBRIDGE

MASSACHUSETTS 02139 • 617-349-4280
FAX 617-349-4287

Councillor Francis H. Duehay
26 LOWELL STREET
CAMBRIDGE, MASSACHUSETTS 02138
617-547-0271

December 16, 1993

City Manager Robert W. Healy
Cambridge City Hall
Cambridge MA  02139

Dear Bob:

A constituent who lives on Massachusetts Avenue near the
Cambridge Common has brought to my attention the following
situation.  Vision House, 7 JFK Street, Harvard Square
repeatedly distributes its flyers advertising its products on
car windows parked on public streets.  This has not been done
occasionally but often.  This citizen has called Vision House
asking them to stop this practice, but the company maintains
they must do this to enhance their business.

My question is this.  Is there any law or regulation
dealing with placing advertisements like this on people's
cars?  If there is no such regulation or law, could we adopt
one?  What legal problems are involved in this matter?

I enclose a copy of one of the flyers.  There are many
people, according to my contact, who seek relief from this
noxious practice and who are prepared to petition the city to
that effect.

Sincerely yours,

Francis H. Duehay

# Exhibit 5

*Nancy E. Glowa*
*City Solicitor*

*Arthur J. Goldberg*
*Deputy City Solicitor*

*Vali Buland*
*First Assistant City Solicitor*



*Assistant City Solicitors*

*Paul S. Kawai*
*Elizabeth A. Lashway*
*Samuel A. Aylesworth*
*Amy L. Witts*

# CITY OF CAMBRIDGE

Office of the City Solicitor
795 Massachusetts Avenue
Cambridge, Massachusetts 02139

March 13, 2013

Richard A. Johnston, Esq.
WILMERHALE
60 State Street
Boston, MA 02109

Re:   **Leafleting on Motor Vehicles**
      **Response to Threatened Challenge to Cambridge Ordinance §9.040.050**

Dear Attorney Johnston:

I am in receipt of your letter and draft Complaint dated February 21, 2013 wherein you allege that on behalf of your client, Paula F. Soto, you intend to bring a legal challenge to the constitutional validity of Cambridge Ordinance §9.040.050 that prohibits leafleting in the City of Cambridge absent authorization from the City Manager or his or her designee. Having reviewed your letter and draft Complaint the City maintains its position that its ordinance is presumptively valid and as such the City is required to enforce it.

Thank you and if you have any further questions, please feel free to contact me.

Very truly yours,

Nancy E. Glowa