**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| PAULA F. SOTO,<br><br>                              Plaintiff,<br><br>v.<br><br>CITY OF CAMBRIDGE,<br><br>                              Defendant. | Civil Action No. 1:13-cv-10822-JGD |

**PLAINTIFF PAULA F. SOTO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... i

TABLE OF EXHIBITS ..................................................................................................... iv

PRELIMINARY STATEMENT .........................................................................................1

SUMMARY OF UNCONTESTED FACTS ........................................................................1

    A.    The Parties ..........................................................................................1

    B.    Soto's Noncommercial Leafleting Activity ................................................2

    C.    The City's Asserted Policy of Prohibiting Noncommercial Leafleting Activity ......................................................................................2

    D.    The City's History of Prohibiting Noncommercial Leafleting Activity ..................................................................................................3

STANDARD OF REVIEW ................................................................................................4

ARGUMENT ...................................................................................................................4

    I.    THE CITY'S POLICY AND ENFORCEMENT OF PROHIBITING THE DISTRIBUTION OF NONCOMMERCIAL LEAFLETS ON PARKED AUTOMOBILES ON PUBLIC STREETS VIOLATES MS. SOTO'S RIGHTS UNDER THE FIRST AMENDMENT, 42 U.S.C § 1983, AND ARTICLE XVI OF THE MASSACHUSETTS DECLARATION OF RIGHTS. ....................................................................................................5

    A.    Soto's leafleting activity constitutes noncommercial speech and receives greater First Amendment protection than commercial speech.................................................................................................5

    B.    Prohibiting Soto's noncommercial leafleting activity is an unconstitutional "time, place, and manner" restriction..............................7

        1.    The City's enforcement policy does not further a substantial interest........................................................................8

            (a)    The City's justification for its policy is not supported by either the local ordinance or state law on which it relies .....9

                (i)    The plain text of the Defacement Ordinance does not prohibit leafleting parked vehicles...................10

                (ii)    The plain text of the Defacement Statute does not prohibit leafleting parked vehicles.........................11

            (b)    City's officials acknowledge that the Defacement Ordinance and Statute do not apply to Ms. Soto's conduct.13

2.      The City's enforcement policy is not narrowly tailored to advance the interest asserted...........................................................14

3.      The City's enforcement policy does not provide ample alternative channels of communication for Soto to convey her message. ..................................................................................15

CONCLUSION...................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970)...............................................................................................4

*Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*,
   515 U.S. 687 (1995).............................................................................................12

*Central Hudson Gas & Elec. Co. v. Pub. Serv. Comm. of New York*,
   447 U.S. 557 (1980)...............................................................................................6

*Farmers Ins. Exch. v. RNK, Inc.*,
   632 F.3d 777 (1st Cir. 2011).................................................................................4

*Heffron v. Intl. Soc'y for Krishna Consciousness, Inc.*,
   452 U.S. 640 (1981)...............................................................................................7

*Horina v. The City of Granite City*,
   538 F.3d 624 (7th Cir. 2008) ....................................................................... passim

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ..................................................................... passim

*Krantz v. City of Fort Smith*,
   160 F.3d 1214 (8th Cir. 1999) ..................................................................5, 7, 9, 14

*Lovell v. Griffin*,
   303 U.S. 444 (1938)...............................................................................................6

*Martin v. City of Struthers*,
   319 U.S. 141 (1943)...............................................................................................7

*Metromedia Inc. v. City of San Diego*,
   453 U.S. 490 (1981)............................................................................................6, 7

*Ohralik v. Ohio State Bar Ass'n*,
   436 U.S. 447 (1978)...............................................................................................6

*Ramsey v. City of Pittsburgh*,
   764 F. Supp. 2d 728 (W.D. Pa. 2011).........................................................5, 7, 14

*Robinson v. Town of Kent*,
   835 F. Supp. 2d 1 (S.D.N.Y. 2011) ............................................................5, 7, 8

*Schneider v. State of New Jersey*,
   308 U.S. 147 (1939)...............................................................................................7

*Sullivan v. City of Augusta,*
  511 F.3d 16 (1st Cir. 2007) ...................................................................................14

*Traditionalist Am. Knights of the KKK v. City of Cape Girardeau, Mo,*
  897 F. Supp. 2d 897 (E.D. Mo. 2012) ................................................................5, 7

*United States v. Grace,*
  461 U.S. 171 (1983) ...........................................................................................6, 7

*Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.,*
  425 U.S. 748 (1976) ...............................................................................................6

*West v. American Tel. and Tel. Co.,*
  311 U.S. 223 (1940) ...............................................................................................9

STATE CASES

*Anheuser-Busch, Inc. v. Alcoholic Beverages Control Comm'n,*
  75 Mass. App. Ct. 203 (2009) ...............................................................................13

*Com. v. Anderson,*
  38 Mass. App. Ct. 707 (1995) ...........................................................................9, 11

*Foss v. Com.,*
  437 Mass. 584 (2002) .............................................................................................9

*Morrison v. Lennett,*
  415 Mass. 857 (1993) ...........................................................................................12

*Sisson v. Lhowe,*
  460 Mass. 705 (2011) ...........................................................................................10

CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I ..................................................................................... passim

FEDERAL STATUTES

42 U.S.C. § 1983 .........................................................................................................4, 5

FEDERAL RULES

Fed. R. Civ. P. 56 .......................................................................................................1, 4

STATE STATUTES

Mass. Gen. Laws Chapter 266 § 120 .........................................................................15

Mass. Gen. Laws Chapter 266 § 126 .................................................................. passim

Mass. Gen. Laws Chapter 270 § 16 ...............................................................................15

**LOCAL ORDINANCES**

CAMBRIDGE, M.A., CODE § 9.04.050 ............................................................... passim

CAMBRIDGE, M.A., CODE § 8.24.170 ...................................................................15

CAMBRIDGE, M.A., CODE § 9.04.030 ...................................................................15

**STATE RULES**

Massachusetts. Rule 56.1 .............................................................................................1

**OTHER AUTHORITIES**

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) .............................................. passim

# TABLE OF EXHIBITS

## Declaration of Kevin S. Prussia dated March 16, 2015

Exhibit A        Soto's Responses to Defendant City of Cambridge's Requests for
                 Production of Documents dated August 12, 2014

Exhibit B        Soto's Responses to the City's Requests for Admission dated
                 January 15, 2015

Exhibit C        Soto's Statement Submitted to the Cambridge City Council dated
                 May 5, 2014

Exhibit D        Letter from City Clerk to City Solicitor dated May 15, 1992,
                 Bates COC 7 – 9

Exhibit E        Text of pre-1992 City Council Ordinance 9.04.050, Bates COC 5

Exhibit F        City's 30(b)(6) Designee Deposition Transcript

Exhibit G        Letter from City Manager to City Council dated March 16, 1996,
                 Bates COC  41

Exhibit H        Screenshot of Cambridge City Council's Website as of March 15,
                 2015

Exhibit I        Minutes from the Cambridge City Council's Ordinance
                 Committee Meeting dated June 18, 2014, Bates COC 447-48

Exhibit J        Best Deposition Transcript

Exhibit K        City's Responses to Soto's Requests for Production of
                 Documents dated August 4, 2014

Exhibit L        City's Response to Soto's Request for Production of Documents
                 No. 7, Bates No. COC 114-71

Exhibit M        City's Response to Soto's Request for Production of Documents
                 No. 7, Bates No. COC 172-351

Exhibit N        Excerpts from Webster's Third New International Dictionary
                 (2002).

Pursuant to Fed. R. Civ. P. 56, Plaintiff Paula F. Soto ("Ms. Soto") respectfully submits this memorandum of law in support of her motion for summary judgment with respect to the Defendant City of Cambridge's (the "City") interference with Ms. Soto's First Amendment activity.

## PRELIMINARY STATEMENT

The City of Cambridge has a policy of prohibiting the placement of noncommercial leaflets on parked automobiles.  The City allows its police officers to stop and prevent people from placing noncommercial flyers on cars, and maintains that its enforcement policy against such leafleting activity is valid.  Ms. Soto has been stopped by the City police from placing flyers in this way and has feared arrest and criminal prosecution if she continues.  The City has refused to notify its police officers to stop enforcing this policy.  The City's actions have interfered with Ms. Soto's rights under the First Amendment of the United States Constitution and under Article XVI of the Massachusetts Declaration of Rights.

The City lacks any sufficient basis for this interference with Ms. Soto's protected First Amendment rights.  As acknowledged by the City's own officials, the local ordinance and state law on which it relies to justify its policy do not in fact apply to Ms. Soto's leafleting activity.  Further, the City's lack of enforcement of its policy demonstrates that it has no real or substantial interest in prohibiting Ms. Soto's placement of flyers on parked cars.  For these reasons, and those set forth below and in the supporting materials filed herewith, Ms. Soto is entitled to summary judgment as a matter of law.

## SUMMARY OF UNCONTESTED FACTS

### A.    The Parties

Ms. Soto is a resident of Cambridge, Massachusetts.  Rule 56.1 Statement of Material Facts ("SMF") ¶ 2.  She is the founder of UPandOUT, a volunteer organization created to raise

1

awareness about important political and social issues that Ms. Soto believes are not adequately addressed by the mainstream media.  SMF ¶ 3.  UPandOUT is not a registered 501(c)(3) company, has no paid staff, and does not generate any revenue.  SMF ¶ 4.

The City is a municipal corporation in Middlesex County, Massachusetts.  SMF ¶ 1.

### B.      Soto's Noncommercial Leafleting Activity

For seven years, Ms. Soto has held free monthly film screenings in the community room of her apartment building, an affordable housing complex.  SMF ¶¶ 5, 12.  On average, the film screenings attract an audience of 20-40 individuals every month.  SMF ¶ 6.  Ms. Soto pays for the costs of the film screenings, including the promotion of the screenings, through her own limited financial means.  SMF ¶ 7.  The primary way that Ms. Soto promotes the film screenings is by distributing flyers; and specifically, by placing flyers on cars parked on public streets in the City of Cambridge (*i.e.,* "leafleting").  SMF ¶ 8.  Occasionally, Ms. Soto supplements her leafleting activity by posting flyers in the windows of local businesses that give her permission to do so, using email distribution lists and websites, and posting flyers on bulletin boards in parks.  SMF ¶ 11.  Leafleting parked cars, however, is the most effective way for Ms. Soto to promote the free film screenings to a wide range of individuals.  SMF ¶ 12.

### C.      The City's Asserted Policy of Prohibiting Noncommercial Leafleting Activity

On December 12, 2011, Ms. Soto was distributing flyers on parked cars in her neighborhood when she was approached by a City of Cambridge police officer, who informed her that she was littering and that she could not place leaflets on cars.  SMF ¶¶ 16-18.  The next day, Ms. Soto contacted the American Civil Liberties Union of Massachusetts ("ACLUM") about her encounter with the Cambridge police.  SMF ¶ 20.  ACLUM informed the-then City Solicitor that prohibiting Ms. Soto's leafleting activity is unconstitutional.  SMF ¶ 22.  The City supported the police officer's enforcement against Ms. Soto's leafleting activity by sending

ACLUM a letter written in 1994 by the former City Solicitor, with the subject heading, "Re: Placement of **Commercial Advertising** on Car Windows" ("1994 Opinion Letter"). SMF ¶ 24 (emphasis added). In the 1994 Opinion Letter, in response to a former City Councilor's inquiry, the former City Solicitor advised the City Manager that it was illegal for a business in Harvard Square to place advertisements on parked cars. *See* SMF ¶ 25. The 1994 Opinion Letter did not address the placement of noncommercial flyers on parked cars. SMF ¶ 29. The 1994 Opinion Letter relied on City Ordinance § 9.04.050, which governs the **defacement** of public or private property ("Defacement Ordinance"), and Mass. Gen. Laws ch. 266 § 126, which governs the **defacement** of public or private property ("Defacement Statute"). SMF ¶¶ 26-27. Neither the Defacement Ordinance nor the Defacement Statute explicitly prohibit leaflets from being placed on automobiles. SMF ¶¶ 53, 56. Nonetheless, the City maintains that both the Defacement Ordinance and Defacement Statute apply to Ms. Soto's conduct and "[are] presumptively valid and as such the City is required to enforce [both laws against Ms. Soto's conduct]." SMF ¶¶ 40, 43-44. As a result, Ms. Soto ceased leafleting for a period of time following her encounter with the City police on December 12, 2011. SMF ¶ 19. Although she continues to distribute leaflets, she fears she will be criminally punished or fined, and feels in danger of being stopped by the police every time she engages in these actions. SMF ¶ 45.

D.      **The City's History of Prohibiting Noncommercial Leafleting Activity**

Despite the City's stated policy of prohibiting the placement of flyers on parked automobiles, the City has **never** issued a citation or a fine to any individual or business for placing leaflets on parked cars pursuant to the Defacement Ordinance or the Defacement Statute. SMF ¶¶ 62-65. That is because the City lacks any adequate basis or any substantial justification to support its stated policy. Indeed, the Compliance Officer for the City has testified that the Defacement Ordinance does not expressly prohibit placing leaflets on cars. SMF ¶ 70. The

City's sole basis for enforcing its policy that prohibits Ms. Soto from placing flyers on parked

cars is based solely on its determination that the 1994 Opinion Letter—which does not address

placement of noncommercial flyers on parked cars, and the City and state laws cited therein—

applies to Ms. Soto's conduct.  SMF ¶¶ 50-51.

## STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a

reasonable jury could resolve the point in the favor of the non-moving party."  *Farmers Ins.*

*Exch. v. RNK, Inc*., 632 F.3d 777, 782 (1st Cir. 2011) (citation omitted); *see also Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 158-159 (1970) ("[T]he inferences to be drawn from the underlying

facts contained in (the moving party's) materials must be viewed in the light most favorable to

the party opposing the motion.").  "A fact is material if it has the potential of determining the

outcome of the litigation."  *Farmers Ins. Exch.*, 632 F.3d at 782 (citation omitted).  Because no

genuine issue as to any material fact remains, this Court should grant Soto's motion for summary

judgment.

## ARGUMENT

The City's stated policy of prohibiting the distribution of noncommercial leaflets on

parked vehicles on public streets is a violation of Ms. Soto's First Amendment and Article XVI

rights.  Specifically, the City's interpretation and enforcement of the Defacement Ordinance

against Ms. Soto's leafleting activity violates her rights under the First Amendment, 42 U.S.C. §

1983, and Article XVI of the Massachusetts Declaration of Rights.  *See* Am. Compl. at Counts 1

and 2.  Similarly, the City's interpretation and enforcement of the Defacement Statute against

Ms. Soto's leafleting activity violates her rights under the First Amendment, 42 U.S.C. § 1983, and Article XVI of the Massachusetts Declaration of Rights.  *See* Am. Compl. at Counts 3 and 4. Ms. Soto seeks summary judgment on all four counts.  Although the City relies upon a local ordinance and state statute as support for its asserted policy prohibiting Ms. Soto's leafleting activity, neither texts of the enactments support the City's unconstitutional policy.  As a consequence, the Court does not need to strike down either law because no such law applies to Ms. Soto's conduct.  Rather, the City's unconstitutional interpretation of these enactments and its enforcement policy of prohibiting Ms. Soto's leafleting activity must be struck down.

I.     **THE CITY'S POLICY AND ENFORCEMENT OF PROHIBITING THE DISTRIBUTION OF NONCOMMERCIAL LEAFLETS ON PARKED AUTOMOBILES ON PUBLIC STREETS VIOLATES MS. SOTO'S RIGHTS UNDER THE FIRST AMENDMENT, 42 U.S.C § 1983, AND ARTICLE XVI OF THE MASSACHUSETTS DECLARATION OF RIGHTS.**

Ms. Soto is entitled to summary judgment as a matter of law because her leafleting activity is protected by the First Amendment and the City lacks any substantial justification to support its policy to prohibit such conduct.  *See, e.g.*, *Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009); *Horina v. The City of Granite City*, 538 F.3d 624 (7th Cir. 2008); *Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir. 1999); *Traditionalist Am. Knights of the KKK v. City of Cape Girardeau, Mo*, 897 F. Supp. 2d 897 (E.D. Mo. 2012); *Ramsey v. City of Pittsburgh*, 764 F. Supp. 2d 728 (W.D. Pa. 2011); *Robinson v. Town of Kent*, 835 F. Supp. 2d 1 (S.D.N.Y. 2011).

A.     **Soto's leafleting activity constitutes noncommercial speech and receives greater First Amendment protection than commercial speech.**

The City's complete ban on Soto's noncommercial leafleting activity is a violation of her First Amendment rights.  The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. CONST. amend. I.  The government may only place reasonable restrictions on speech that are consistent with the First Amendment.  *Horina*, 538

F.3d at 631 (citing *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 809-10

(1984)).  The Supreme Court has recognized that some forms of expression are more valuable

than others, and thus, enjoy greater First Amendment protection.  *Ohralik v. Ohio State Bar*

*Ass'n*, 436 U.S. 447, 456 (1978).  Specifically, the Supreme Court distinguishes between

commercial and noncommercial speech, and affords greater First Amendment protection to the

latter because noncommercial speech is not allowed to be "forbidden."  *Metromedia Inc. v. City*

*of San Diego*, 453 U.S. 490, 506 (1981).  The Supreme Court relies on a "commonsense

distinction between [commercial speech] . . . and other varieties of speech."  *Ohralik*, 436 U.S. at

455-56.  Commercial speech "does no more than propose a commercial transaction" or is

"related solely to the economic interests of the speaker and its audience," whereas

noncommercial speech is an "exposition of ideas."  *Virginia Pharmacy Bd. v. Virginia Citizens*

*Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (citations omitted); *see also Central Hudson*

*Gas & Elec. Co. v. Pub. Serv. Comm. of New York*, 447 U.S. 557, 561 (1980).

Ms. Soto's flyers inviting Cambridge residents to attend free monthly film screenings is

an expressive activity involving noncommercial speech protected by the First Amendment.  *See*

*United States v. Grace*, 461 U.S. 171, 177 (1983); *see* SMF ¶ 9.  "[Leafleting or] hand-billing is

both a method of communication that has a long and venerable history that predates the birth of

this nation, and is a form of [noncommercial] speech that is protected under the First and

Fourteenth Amendments."  *Horina*, 538 F.3d at 631 (citing *Lovell v. Griffin*, 303 U.S. 444, 452

(1938)).  Ms. Soto pays for the costs associated with the film screenings out of her limited

financial means.  SMF ¶ 7.  Her incentive for distributing flyers is her desire to promote socially

and politically conscious film screenings.  *See* SMF ¶¶ 9, 12.  Accordingly, her flyers neither

propose a commercial transaction nor promote an economic interest.  Ms. Soto's leafleting

activity undoubtedly constitutes noncommercial speech and, as a result, deserves greater First

Amendment protection than commercial speech. *See Metromedia Inc.*, 453 U.S. at 506.

### B.      Prohibiting Soto's noncommercial leafleting activity is an unconstitutional "time, place, and manner" restriction.

The government's ability to regulate noncommercial leafleting is limited, and courts

place the "burden . . . on the government to show the validity of its asserted interests and absence

of less intrusive alternatives." *Heffron v. Intl. Soc'y for Krishna Consciousness, Inc.*, 452 U.S.

640, 658 (1981) (Brennan, J., concurring in part and dissenting in part). When the government

fails to meet its burden, the Supreme Court has repeatedly invalidated restrictions on leafleting

and related activity. *Grace*, 461 U.S. at 183-84 (1983); *Martin v. City of Struthers*, 319 U.S.

141, 149 (1943); *Schneider v. State of New Jersey*, 308 U.S. 147, 163–64 (1939); *Horina*, 538

F.3d at 634 (2008).

In the context of content-neutral restrictions on leafleting cars parked on public streets,

courts require the government to prove the reasonableness of these restrictions under a "time,

place, and manner" analysis. *Klein*, 584 F.3d at 1200-01; *Horina*, 538 F.3d at 631-32; *Jobe*, 409

F.3d at 266; *Krantz*, 160 F.3d at 1219; *Traditionalist Am. Knights of the KKK*, 897 F. Supp. 2d at

827; *Ramsey*, 764 F. Supp. 2d at 732; *Robinson*, 835 F. Supp. 2d at 5-6.[1] Under the time, place,

and manner analysis, the City must prove that its restriction on noncommercial leafleting: (1)

targets a substantial government interest, (2) is narrowly tailored to meet that interest, and (3)

---

[1] Although the courts agree that "time, place, and manner" analysis applies to government restrictions on leafleting parked cars, the courts arrive at this conclusion by different routes. *Compare Krantz*, 160 F.3d at 1219 (evaluating the government's restriction under "time, place, and manner" analysis because leafleting cars parked on public streets implicates the public forum doctrine); *with Klein*, 584 F.3d at 1201 n.2 (explaining that "time, place, and manner" analysis should be applied either under the public forum doctrine or because leafleting cars is an expressive activity) *and Horina*, 538 F.3d at 632-33 (concluding that "time, place, and manner" analysis is appropriate even though leafleting cars parked on public streets does not implicate the public forum doctrine).

leaves open ample alternative channels of communication for Ms. Soto to convey her message. *See Klein*, 584 F.3d at 1201.  The City cannot meet its burden on any prong.

**1.      *The City's enforcement policy does not further a substantial interest.***

*First*, the City has failed to meet its burden of establishing that noncommerical leafleting causes any public harm.  "[M]erely invoking [an] interest[] . . . is insufficient" to satisfy the first prong of time, place, and manner analysis.  *Klein*, 584 F.3d at 1202 (citation omitted).  The City must come forward with evidence that there is some actual need—as opposed to a made up one—that would justify the interest.  *Id.*  Here, the City asserts that its interest in enforcing its policy of prohibiting noncommercial leafleting is to respond to visual blight and littering caused by leaflets posted throughout the City.  SMF ¶¶ 33-37.  Assuming that preventing visual blight falls within the category of recognized substantial government interests—and Ms. Soto does not concede that it does—the City has failed to produce any evidence establishing that leafleting parked cars on public streets actually causes blight.  Indeed, the City admits the Defacement Ordinance was amended to address visual blight that was caused by ***posters*** "attached to trees, utility poles, any public property, [and] buildings . . . ."  SMF ¶¶ 34-35; *see also Horina*, 538 F.3d at 632 ("[W]e cannot accept Granite City's assertion that it can rely on mere common sense to show that [the ordinance] is needed to combat [the city's asserted claims that hand-billing causes litter, intrusion, trespass, or harassment]").

*Second*, the City has failed to meet its burden of establishing that its policy of prohibiting noncommercial leafleting on cars parked on public streets furthers its purported interest in avoiding visual blight.  *Horina*, 538 F.3d at 634 (explaining that the government must provide "something showing that the restriction actually serves a government interest"); *see also Robinson*, 835 F. Supp. 2d at 6 ("The Town has failed to set forth sufficient documentary or testimonial evidence to show that its interest in reducing litter [and] enhancing town aesthetics . .

8

. justifies the restrictions."). Here, the City has **never once** issued a citation or fined any person or business for placing leaflets on parked cars on a public street. SMF ¶¶ 62-65. The City's one-time enforcement against Ms. Soto is indicative of the lack of nexus between the targeted conduct and any asserted interest. *See Krantz*, 160 F.3d at 1214 ("[T]he defendants have not established a factual basis for concluding that a cause-and-fact relationship actually exists between [leafleting] and the [substantial interests]"); *see also* SMF ¶¶ 37-38.

> (a)    *The City's justification for its policy is not supported by either the local ordinance or state law on which it relies*

Further, the City's justification for its policy is not supported by the texts of either the Defacement Ordinance or Statute. In fact, the City's claimed interest in prohibiting the placement of leaflets on parked cars is so weak that neither the City nor state legislature has enacted any laws prohibiting the specific conduct under question. Thus, the City incorrectly relies upon two laws that are inapplicable to Ms. Soto's conduct.

The Supreme Judicial Court of Massachusetts has not interpreted the Defacement Ordinance or Defacement Statute.[2] Accordingly, this Court may interpret the enactments based on the interpretative rules of Massachusetts courts. *West v. Am. Tel. and Tel. Co.*, 311 U.S. 223, 236-37 (1940). Massachusetts courts, like this Court, consider the text as the most important source of an enactment's meaning. *Foss v. Com.*, 437 Mass. 584, 586 (2002) ("When the words of [an enactment] are clear and, when assigned their ordinary meaning, yield a workable and logical result [the Supreme Judicial Court] interprets the statute without resort to extrinsic aids . . . ."). Here, a plain reading of the texts makes clear that neither the Defacement Ordinance nor the Defacement Statute prohibits the placement of leaflets on parked vehicles, which further

---

[2] The sole Massachusetts decision interpreting the Defacement Statute suggested, in *dictum*, that a defendant could be charged under the Defacement Statute for spray painting graffiti on a stone wall. *Com. v. Anderson*, 38 Mass. App. Ct. 707, 711 (1995).

indicates that the City has no basis for its position that the Defacement Statute and Ordinance

prohibit the placement of flyers on vehicles parked on public streets.

> (i)   The plain text of the Defacement Ordinance does not
> prohibit leafleting parked vehicles.

City Ordinance § 9.04.050 (the "Defacement Ordinance") is directed to "***defacing*** public

property" (emphasis added).  To "deface," is "to destroy or mar the face or external appearance

of."  Prussia Decl., Exhibit N (WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 590

(2002)); *see also Sisson v. Lhowe*, 460 Mass. 705, 709 (2011) ("[W]e look to the ordinary

meaning of [a] term . . . employed in [an enactment], as understood from its dictionary

definition.").  The City has not provided one example where the placement of loose paper on a

parked vehicle destroyed the property.  Nor can it.

The ordinance further states:

> No person shall ***post or attach*** . . . any handbill, poster,
> advertisement or notice of any kind on public property except by
> permission of the City Manager . . . or on private property without
> the consent of the owner or occupant thereof.

CAMBRIDGE, M.A., CODE § 9.04.050 (emphasis added).

The terms "attach" and "post" are synonymous and the Defacement Ordinance does not

define them.  However, when the terms are assigned their plain and ordinary meaning, it is clear

that the Defacement Ordinance does not apply to Soto's conduct.

For example, Webster defines "attach," as to "make fast or join (as by string or glue):

bind, fasten or tie."  WEBSTER'S at 140.[3]  Likewise, Webster's defines "post" as "to affix (as a

---

[3] "Fasten" means "to cause to hold to something else: attach esp. by pinning, tying, or nailing."
WEBSTER'S at 826. *"Join"* means "to put or bring together and fasten, connect, or relate to as to
form a single unit, a whole, or a continuity." *Id.* at 1218-19. "Tie" means "to fasten, attach, bring
together, close, or restrain by means of a tie (as a line, chain, ribbon)." *Id*. at 2391.

paper or bill) to a post, wall, or other usual place for public notices." *Id*. at 1771.[4]  Accordingly, the plain meaning of the terms "attach" and "post" requires the physical act of ***fixing or binding*** an object.  The placement of flyers, *i.e.*, pieces of paper, on parked vehicles without the use of any adhesive or fastener, does not fit within the scope of the terms' plain meaning.  Accordingly, the Defacement Ordinance does not cover Ms. Soto's conduct.

(ii)    The plain text of the Defacement Statute[5] does not prohibit leafleting parked vehicles.

Like the Defacement Ordinance, the Defacement Statute, on its face, does not prohibit the placement of leaflets on parked vehicles.  As an initial matter, the statute, like the ordinance, is directed to a "penalty for ***defacement***" (emphasis added).  G.L. c. 266 § 126 ("[The violator] shall. . . forfeit . . . the cost of removing or obliterating such ***defacement***") (emphasis added).  The sole Massachusetts decision interpreting the Defacement Statute suggested, in *dictum*, that the statute covers conduct like spray painting graffiti on a stone wall.  *Com. v. Anderson*, 38 Mass. App. Ct. 707, 711 (1995).  The City does not contend that the placement of loose paper on parked vehicles is akin to spray painting graffiti on an object.  Nor can it.

The statute further states:

> Whoever paints, or puts upon, or in any manner affixes to, any fence, structure, pole, rock or other object which is public property or the property of another . . . any words, device, trademark, advertisement or notice which is not required by law to be posted thereon, without first obtaining the written consent of the municipal or public officer in charge thereof or tenant of such property shall . . . be punished by a fine of not less than ten nor more than one hundred dollars . . . .

G.L. c. 266 § 126.

---

[4] In turn, Webster's defines "affix" as "to attach physically (as by nails or glue): fasten." WEBSTER'S at 36.

[5] The Attorney General's Office has declined to intervene at this time in the matter.  SMF ¶¶ 41-42.

The Defacement Statute does not define "paint," "put upon," or "affix." However, the term "defacement" is used within the Defacement Statute as a general characterization of the conduct prohibited. *Id*. ("[The violator] shall. . . forfeit . . . the cost of removing or obliterating such ***defacement***") (emphasis added). Thus the definition of "defacement" must be used to guide the plain meaning analysis of "paint," "affix," and "put upon" because these acts have been described within the statute as acts of "defacement." *Id*.; *see Morrison v. Lennett*, 415 Mass. 857, 863 (1993) (accepting the principle of *noscitur a sociis* to instruct the court to interpret an ambiguous term in light of associated words or phrases in an enactment).

First, "paint[ing]" is not even arguably the same thing as placing paper on a parked vehicle. Second, and as described above, "affix[ing]" requires the use of an adhesive or fastener to secure a notice to another's property. Finally, "put upon" means "impose upon." WEBSTER'S at 1851. "Impose upon" is defined as "to encroach or infringe upon," which suggests a serious interference with property. WEBSTER'S at 1136. According to the City, "putt[ing] upon" as it is used in the Defacement Statute means to affix an object to property with an adhesive or fastener. *See* SMF ¶ 57 (City's 30(b)(6) Designee defined "puts upon" to mean "affix something to another object … with a type of adhesive."). Ms. Soto's leafleting activity does not rise to the level of imposition, and she does not affix leaflets to parked cars. *See* SMF ¶ 8.

To the extent the term "put upon" is ambiguous, any uncertainty can be resolved by looking to the context in which the terms appears. *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 694 (1995) ("[A] word is known by the company it keeps"). Here, the words "put upon" appear in the context of a statute prohibiting

"defacement"[6] and adjacent to the terms "paint" and "affix."  As described above, defacing an object by means of painting or affixing something to it connotes permanently destroying or altering property through the use of paint or an adhesive.

Accordingly, the Defacement Statute does not apply to Ms. Soto's leafleting activity because the distribution of leaflets on parked cars does not deface public or private property.

> **(b)    *City's officials acknowledge that the Defacement Ordinance and Statute do not apply to Ms. Soto's conduct.***

The City Compliance Officer—*i.e.*, the officer responsible for enforcing the City Ordinance—***has also never interpreted the Defacement Ordinance to apply to the placement of flyers on parked vehicles on a public street***.  SMF ¶¶ 67-71.  To the contrary, the Compliance Officer has interpreted the Ordinance to apply to "the posting" of flyers on news racks, poles, trees, park bulletins, utility poles, and benches.  SMF ¶¶ 73-74.  For example, the City has enforced or threatened to enforce the Ordinance against individuals or business that ***posted*** flyers ***secured by an adhesive*** onto City property.  SMF ¶¶ 77-78.  Aside from Ms. Soto, however, the City simply has ***never*** enforced the Ordinance or the Statute against people who place flyers on vehicles parked on a public street.  SMF ¶¶ 62-65, 71-72, 79-80.

Further, members of the City Council, the policy setting arm of the City, doubt that the Defacement Ordinance applies to Ms. Soto's conduct.  *See* SMF ¶ 58-59.  During a City Council Ordinance Committee meeting on June 18, 2014, a member of the City Council expressed his opinion that that "if a leaflet is on a windshield or a doorstep . . . [the Defacement Ordinance] does not apply."  SMF ¶ 59.  At the conclusion of the June 18, 2014 meeting, the City Council Ordinance Committee voted to refer the matter for review by the full City Council to decide

---

[6] *Anheuser-Busch, Inc. v. Alcoholic Beverages Control Comm'n*, 75 Mass. App. Ct. 203, 208 (2009) ("The courts are free to consult the title of an act as an aid for the application of its text.") (citation omitted)

whether the Defacement Ordinance should either be repealed, amended to clarify that leafleting

is not prohibited, or deemed not to apply to noncommercial leafleting.  SMF ¶ 60.  The City

itself concedes that the terms "post" and "attach" as they are used in the Defacement Ordinance

means to affix or place an advertisement, a handbill or a poster advertisement onto an object with

the use of an adhesive, such as glue, tape, or staples, so that the paper will remain on the object. ¶

54.  Thus, the City officials responsible for enforcing and interpreting the Defacement Ordinance

acknowledge that neither the Defacement Ordinance or Statute on which the City relies to justify

its policy apply to Ms. Soto's activity and in fact fails to support the City's enforcement against

the placement of flyers on vehicles parked on public streets.  *See Sullivan v. City of Augusta*, 511

F.3d 16, 29 (1st Cir. 2007) (concluding that the city's interpretation of the statute, as expressed in

the deputy police chief's affidavit, was authoritative because it "fit reasonably within the

language" of the ordinance and was "consistent with the City's practices as reflected in [the]

record").

    As a result, the City lacks any substantial justification to support its policy of prohibiting

placement of flyers on parked cars and it fails to prove that restricting Soto's noncommercial

leafleting activity furthers a substantial government interest.

### 2.   *The City's enforcement policy is not narrowly tailored to advance the interest asserted.*

    Not only has the City failed to prove its interpretation of both enactments furthers a

significant government interest, but also its interpretation of both enactments is not narrowly

tailored.  *See Ramsey*, 764 F. Supp. 2d at 733; *see also Krantz*, 160 F.3d at 1219-20 ("The

requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial

interest that would be achieved less effectively absent the regulation and the means chosen do

not burden substantially more speech than necessary") (citation omitted).  The City historically

14

has enforced the Defacement Ordinance and Statute to prohibit the bonding or posting of flyers and posters on buildings, poles, benches, trees, or on cars parked on private lots.  SMF ¶¶ 35-38, 46, 77-78.  However, preventing such conduct can be achieved through the enforcement of other laws.  *See e.g.,* G.L. c. 266 § 120 (statute prohibiting trespass); G.L. c. 270 § 16 (statute prohibiting littering); CAMBRIDGE, M.A., CODE § 9.04.030 (ordinance prohibiting trespass on public property); CAMBRIDGE, M.A., CODE § 8.24.170 (ordinance prohibiting littering).  As the City has alternative ways to further its purported interest in avoiding visual blight and trespassing, it has no justification for imposing a ban on Ms. Soto's noncommercial leafleting activity.  *See e.g., Horina*, 538 F.3d at 624 ("[T]he [c]ity already proscribes in some form litter, intrusion, trespass, or harassment . . . leading us to believe that the [c]ity can currently combat those problems very effectively without resorting to a broad prohibition on hand-billing.").  Therefore, the City's policy of restricting Ms. Soto's leafleting activity is not narrowly tailored to serve a substantial interest, and restricts more speech than necessary.  *Id.* at 635.

### 3. *The City's enforcement policy does not provide ample alternative channels of communication for Soto to convey her message.*

An ordinance restricting leafleting must leave open alternative means by which the speaker can convey her message.  *Id.*  The City's proposed alternative must be more than "merely theoretically available—it must be realistic as well."  *Id.*  The Seventh Circuit found that channels of communication that (1) require significantly more of the speaker's time, (2) are significantly more expensive, or (3) foreclose the speaker's ability to reach a specific audience are inadequate.  *Id.* at 635-36 (concluding that mailings and door-to-door solicitation did not leave open ample alternatives for the plaintiff to communicate with the targeted audience).

Distributing flyers on parked automobiles is the primary and most effective means by which Ms. Soto attracts the public to her socially and politically conscious free film screenings.

15

SMF ¶ 12.  To supplement her primary method of spreading her message, Ms. Soto puts flyers in the windows of local businesses that give her permission to do so, uses email distribution lists and websites, and posts flyers on bulletin boards.  SMF ¶ 11.  Ms. Soto believes, however, that distributing flyers on parked automobiles communicates information about the sincerity of her message that is not readily inferred by the public from the use of communications that require access to internet, radio, or irregularly located bulletin boards.  SMF ¶ 13.  For seven years, leafleting parked cars in public spaces throughout Cambridge has allowed Ms. Soto to reach her targeted audience, which includes individuals who do not have access to the internet or radio and who may not visit parks with bulletin boards.  SMF ¶¶ 12-14.  Additionally, other methods of outreach like mailings and hand-to-hand solicitation would be prohibitively expensive and unduly burdensome, since Ms. Soto alone finances and promotes her film screenings each month.  SMF ¶¶ 7-8.  By leafleting cars parked in public places, Ms. Soto can distribute approximately 1200-1400 flyers on her own.  SMF ¶ 10.  Ms. Soto's flyers attract an audience that can range from twenty to forty individuals, and allow her to share her message to countless passersby and car owners alike.  SMF ¶¶ 6, 9.  Ms. Soto does not have the financial means nor would she have the time to share her message to the number of people she currently reaches if her leafleting was limited to any of the City's proposed alternatives.  Accordingly, the City's restriction on Ms. Soto's leafleting activity does not leave open ample alternative channels of communication for Ms. Soto to reach her targeted audience.

## CONCLUSION

For all these reasons, Plaintiff respectfully requests that the Court grant her motion for summary judgment on Counts 1 to 4 of her Amended Complaint.

Dated: March 16, 2015

Respectfully submitted,

*/s/ Julia M. Ong*_____
Kevin S. Prussia (BBO #666813)
Thaila K. Sundaresan (BBO #683616)
Julia M. Ong (BBO #685014)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Of Counsel:
Matthew R. Segal (BBO #654489)
AMERICAN CIVIL LIBERTIES UNION
OF MASSACHUSETTS
211 Congress Street, 3rd Floor
Boston, MA 02110
Telephone: (617) 482-3170
Facsimile: (617) 451-0009
msegal@aclu.org

*Attorneys for Plaintiff*
*Paula F. Soto*

17

**CERTIFICATE OF SERVICE**

I, Julia M. Ong, hereby certify that a true and correct copy of the above document was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 16th day of March 2015.

_/s/ *Julia M. Ong*_____
Julia M. Ong