**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PAULA F. SOTO,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF CAMBRIDGE,<br><br>                    Defendant. | Civil Action No. 1:13-cv-10822-JGD |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF PAULA F. SOTO'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Paula F. Soto ("Ms. Soto") respectfully submits this Statement of Undisputed Material Facts In Support of Soto's Motion for Summary Judgment. The following facts are not in dispute.

**I.    The Parties**

1.    The City is a municipal corporation in Middlesex County, Massachusetts. Defendant City of Cambridge's ("the City") Answer to Soto's First Amended Complaint ("City's Answer"), Sept. 17, 2014, at ¶ 2.

2.    Ms. Soto is a resident of Cambridge, Massachusetts. First Amended Complaint ("Am. Compl."), Sept. 3, 2014, at ¶ 1.

3.    Ms. Soto is the founder of UPandOUT, an organization created to raise awareness about important political and social issues that Soto believes are not adequately addressed by the mainstream media. Am. Compl. at ¶ 8.

4.    UPandOUT is not a registered 501(c)(3), has no paid staff, and does not generate any revenue. Declaration of Kevin S. Prussia ("Prussia Decl."), Exhibit A (Soto's Responses to

the City's Requests for Production of Documents ("Soto's Responses to RFP"), August 12, 2014, at No. 2).

## II. Soto's Noncommercial Leafleting Activity

5. Through UPandOUT, Ms. Soto organizes a free monthly film series that is held in the community room of her apartment building, an affordable housing complex. Am. Compl. at ¶ 8.

6. The film screenings attract an audience of 20-40 individuals every month. Am. Compl. at ¶ 9.

7. Ms. Soto pays for the costs of the film screenings primarily through her own limited financial means. Am. Compl. at ¶ 9.

8. The primary way that Ms. Soto promotes the film screenings is by distributing flyers on cars parked on public streets in the City of Cambridge. Am. Compl. at ¶ 10.

9. Ms. Soto's leaflets not only inform the community about the monthly film series, but also provide passersby and car owners with educational information about relevant political and social issues. Am. Compl. at ¶ 12, Ex. 3 (Free Film Series Flyer).

10. The number of flyers Ms. Soto distributes varies from month to month, and in some months Ms. Soto has distributed approximately 1200-1400 flyers. Prussia Decl., Exhibit B (Soto's Responses to the City's Requests for Admission ("Soto's Responses to RFA"), January 15, 2015, at No. 12).

11. To supplement the primary means by which Ms. Soto invites the community to her film screenings, Ms. Soto also puts flyers in the windows of local businesses that give her permission to do so, uses email distribution lists and websites, and posts flyers on bulletin boards in parks. Prussia Decl., Exhibit B (Soto's Responses to City's RFA at Nos. 14-17).

12. In the seven years that Ms. Soto has been involved with UPandOUT, she has found that leafleting parked cars is the most effective way to advertise the film screenings to a wide range of individuals not limited to solely local residents. Am. Compl. at ¶ 11.

13. Ms. Soto believes that distributing flyers on parked vehicles communicates information about the sincerity of her message that is not readily inferred by the public from the use of communications that require access to internet, radio, or irregularly located bulletin boards. *See* Prussia Decl., Exhibit B (Soto's Responses to City's RFA at ¶ 10).

14. For Ms. Soto, leafleting cars parked on public streets is the only method by which she can reach members of the community that do not have access to the internet and radio. Prussia Decl., Exhibit C (Soto's Statement Submitted to the Cambridge City Council dated May 5, 2014).

15. Ms. Soto has not knowingly distributed a flyer on an automobile after an owner has asked her not to do so. Prussia Decl., Exhibit B (Soto's Responses to City's RFA at No. 11).

**III.    The City's Policy of Restricting Soto's Noncommercial Leafleting**

16. On December 12, 2011, Ms. Soto was distributing flyers about the free monthly film screenings on parked cars in her neighborhood when she was approached by a City of Cambridge police officer. Am. Compl. at ¶ 15.

17. The officer informed her that she could not place leaflets on parked cars. Am. Compl. at ¶ 15.

18. The officer also informed her that her actions constituted littering. Am. Compl. at ¶ 15.

19. As a result, Ms. Soto ceased leafleting that day for a period of time as a result of her conversation with the police officer. Am. Compl. at ¶ 16.

20. On December 13, 2011, Ms. Soto contacted the American Civil Liberties Union of Massachusetts ("ACLUM") about her encounter with the Cambridge police. Am. Compl. at ¶ 17.

21. In early January of 2012, an ACLUM attorney contacted the then-Cambridge City Solicitor to inform him that a Cambridge police officer had ordered an individual to cease placing leaflets on parked automobiles. Am. Compl. at ¶ 17.

22. ACLUM informed the then-Cambridge City Solicitor that this order was unconstitutional. Am. Compl. at ¶ 17.

23. The City Solicitor responded that he would investigate the matter. Am. Compl. ¶ at 17.

### A. The City's 1994 Opinion Letter

24. On January 12, 2012, the City Solicitor supported the police officer's enforcement against Ms. Soto's conduct by sending ACLUM a letter written in 1994 by the former City Solicitor, with the subject heading, "Re: Placement of Commercial Advertising on Car Windows." ("1994 Opinion Letter"). Am. Compl. at ¶ 18, Ex. 4 (1994 Opinion Letter).

25. Specifically, the 1994 Opinion Letter addressed the legality of placing *commercial* flyers on parked cars, as evidenced by the subject heading of the letter, and was written in response to a former City Councilor's inquiry about the "legality of a *business* in Harvard Square placing *advertisements* on parked cars." Am. Compl. at Ex. 4 (1994 Opinion Letter) (emphasis added).

26. The 1994 Opinion Letter relied on Cambridge City Ordinance § 9.04.050, which governs the *defacement* of public or private property ("Defacement Ordinance"). Am. Compl. at Exs. 1 (Defacement Ordinance Text) and 4 (1994 Opinion Letter).

27.     The 1994 Opinion Letter also cited Mass. Gen. Laws ch. 266 § 126, which governs the *defacement* of public or private property.  Am. Compl. at Exs. 2 (Defacement Statute Text) and 4 (1994 Opinion Letter).

28.     The former City Solicitor explained in the 1994 Opinion Letter that "the primary legal issue raised by laws restricting the distribution of advertisements is the free speech guarantee of the First Amendment of the U.S. Constitution." Am. Compl., Ex. 4 (1994 Opinion Letter) at 3.

29.     The 1994 Opinion Letter did not address the placement of *noncommercial* flyers on parked cars.  Am. Compl. at Ex. 4 (1994 Opinion Letter).

### B.    Enactment History of the Defacement Ordinance

30.     In 1992, the City Council amended and adopted the present text of the Defacement Ordinance.  Prussia Decl., Exhibit D (Letter from City Clerk to City Solicitor, dated May 15, 1992, Bates COC 7 – 9).

31.     Prior to May 1992, the text of the Defacement Ordinance stated: "No person shall paint or draw any words or figures, or post any written or printed matter, upon the property of any person, without the consent of the owner or occupant thereof, nor upon any property of the City, without the consent of the City Manager."  Prussia Decl., Exhibit E (Text of pre-1992 City Council Ordinance 9.04.050, Bates COC 5).

32.     The City's 1992 amendment to the Defacement Ordinance struck out the prior language and inserted new text that reads: "No person shall post or attach, or directly or indirectly cause to be posted or attached in any manner, any handbill, poster, advertisement or notice of any kind on public property, except by permission of the City Manager or his designee, or on private property without the consent of the owner or occupant thereof."  Prussia Decl., Exhibit D (Letter from City Clerk to City Solicitor, dated May 15, 1992 at Bates COC 8).

33. The Defacement Ordinance was amended in 1992 in order to curb visual blight, littering and defacement in the City. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 25:14-28:21).

34. In particular, the City was concerned with the "***posting*** of flyers in undesignated spaces." Prussia Decl., Exhibit G (Letter from City Manager to City Council, dated March 16, 1996, Bates COC 41) (emphasis added).

35. The visual blight that the Defacement Ordinance was meant to prohibit was caused by posters "attached to trees, utility poles, any public property, [and] buildings . . . ." Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 31:1-4).

36. At the time the City amended the Defacement Ordinance in 1992, posters were "actually being glued to utility poles and actually nailed to trees . . . ." Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 31:5-11).

37. The City's present interest in enforcing the Defacement Ordinance continues to be directed at curbing visual blight caused by leaflets posted throughout the City. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 114:4-13; 146: 2-12).

38. Such conduct that is prohibited under the Defacement Ordinance includes circumstances where people tape, staple, or glue fliers and signs to trees, utility poles, buildings, ornaments along the streets, and newspaper dispensers on sidewalks. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 56:3-23).

**C. The City's Enforcement of the Defacement Ordinance and Statute Against Soto's Noncommercial Leafleting**

39. On February 21, 2013, in an effort to resolve the matter prior to filing suit, counsel for Ms. Soto sent a letter to the current City Solicitor providing references to court decisions that the City's interpretation of both the Defacement Ordinance and Defacement Statute violates Ms. Soto's First Amendment rights. Am. Compl. at ¶ 26.

40. On March 13, 2013, the City Solicitor sent a letter to counsel maintaining the City's position that "its ordinance is presumptively valid and as such the City is required to enforce it." Am. Compl. at Ex. 5 (Letter from City Solicitor Glowa to WH).

41. On August 26, 2014 Ms. Soto's counsel filed a Notice of Possible Constitutional Question under Fed. R. Civ. 5.1, and provided a courtesy copy to the Massachusetts Attorney General's Office. Notice of Possible Constitutional Question, August 26, 2014, ECF No. 34; Letter from Thaila Sundaresan, October 2, 2014, ECF No. 42, at Ex.1 (Letter from Attorney General's Office).

42. The Attorney General's Office sent a letter to Ms. Soto's counsel on September, 29, 2014 in which it declined to intervene in the litigation, despite the fact that Ms. Soto challenges the City's enforcement of the Defacement Statute. Letter from Sundaresan at Ex. 1 (Letter from Attorney General's Office).

43. The City contends that the Defacement Ordinance is presumptively valid as a matter of law and that the City's enforcement of the Defacement Ordinance is lawful. City's Answer at pp. 8-9.

44. The City contends that the Defacement Statute is presumptively valid as a matter of law and that the City's enforcement of the Defacement Statute is lawful. City's Answer at pp. 8-9.

45. Based on the City's continued position that its policy of enforcing the Defacement Ordinance and Defacement Statute against Ms. Soto's conduct of placing flyers on parked cars is lawful, Ms. Soto has a reasonable apprehension that the City will punish her if she carries on her leafleting activities. Am. Compl. at ¶¶ 39, 53.

46. The City's purported interest in enforcing the Defacement Statute is to "control [] defacement of property, altering of property, or placement of articles on person's property or public property [without] permission to do so." Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 148:4-11).

47. The City contends that the Defacement Ordinance as applied and on its face is constitutional and does not violate Soto's First Amendment rights under the Federal Constitution or her rights under the Massachusetts Declaration of Rights. City's Answer at p. 9.

48. The City contends that the Defacement Statute as applied and on its face is constitutional and does not violate Soto's First Amendment rights under the Federal Constitution or her rights under the Massachusetts Declaration of Rights. City's Answer at p. 9.

49. The City contends that Soto's flyers are "advertisements" and constitute commercial speech. City's Answer at p. 9.

50. The City's sole basis for determining that Soto's leafleting violates the Defacement Ordinance is the City's 1994 Opinion Letter. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 57:8–59:11).

51. The City's sole basis for determining that Soto's leafleting violates the Defacement Statute is the City's 1994 Opinion Letter. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 122:5-123:9).

**IV.   The City's Interpretation of The Defacement Ordinance and Defacement Statute**

52. The Defacement Ordinance prohibits the "post[ing]" or "attach[ing]" of "any handbill, poster, advertisement or notice . . . on private property" without the consent of the owner or occupant. Am. Compl. at Ex. 1 (Defacement Ordinance Text).

53. The City concedes that the Defacement Ordinance does not explicitly prohibit leaflets from being placed on automobiles. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 58:15-21); *see* Am. Compl. at Ex. 1 (Defacement Ordinance Text).

54. According to the City, the terms "post" and "attach" as they are used in the Defacement Ordinance means to affix or place an advertisement, a handbill or a poster advertisement onto an object with the use of an adhesive, such as glue, tape, or staples, so that the paper will remain on the object. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 54:19–55:15).

55. The Defacement Statute prohibits, with respect to any "object which is public property or the property of another," "paint[ing]," "put[ting] upon" or "affix[ing] "any . . . advertising or notice which is not required by law to be posted" without first obtaining the consent of the property owner. Am. Compl. at Ex. 2 (Defacement Statute Text).

56. The City concedes that the Defacement Statute does not explicitly prohibit leaflets from being placed on automobiles. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 122:22-123:3); *see* Am. Compl. at Ex. 2 (Defacement Statute Text).

57. According to the City, "put[ting] upon" as it is used in the Defacement Statute means to affix an object to property with an adhesive of fastener. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 121:4-122:4).

58. The City Council is the policy setting arm of the City that provides input and analysis on major policy issues impacting the City. Prussia Decl., Exhibit H (Screenshot of Cambridge City Council's Website as of March 15, 2015).

59. During a public City Council Ordinance Committee meeting on June 18, 2014, a member of the City Council stated that "the City Council wants to amend the ordinance [because] if a leaflet is on a windshield or a doorstep . . . [the Defacement Ordinance] does not

apply." Prussia Decl., Exhibit I (June 18, 2014 City Council Meeting Minutes at Bates COC 448).

60. At the conclusion of the June 18, 2014 Ordinance Committee Meeting, the Ordinance Committee voted to refer the matter for review to the full City Council to decide whether the Defacement Ordinance should be repealed, amended to clarify that leafleting is not prohibited, or deemed not to apply to noncommercial leafleting. Prussia Decl., Exhibit I (June 18, 2014 City Council Meeting Minutes at Bates COC 452).

61. When asked by the City Council whether the Defacement Ordinance interferes with freedom of speech, the City Solicitor stated that "it is not appropriate to interpret the legality of the ordinance at this time." Prussia Decl., Exhibit I (June 18, 2014 City Council Meeting Minutes at Bates COC 448).

**V. The City's Lax Enforcement of the Defacement Statute and Defacement Ordinance Against Individuals Who Place Flyers on Parked Cars**

62. The City has failed to show that it has ever issued a citation to any individual or business for placing leaflets on parked cars pursuant to the Defacement Ordinance. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 67:17-22).

63. The City has never issued a fine to any individual or business for placing leaflets on parked cars pursuant to the Defacement Ordinance. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 68:15-18).

64. The City has failed to show that it has ever issued a citation to any individual or business for placing leaflets on parked cars pursuant to the Defacement Statute. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 128:4-130; 154:23-156:8).

65. The City has never issued a fine to any individual or business for placing leaflets on parked cars pursuant to the Defacement Statute. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 130:17-20).

66. Since 2002, the Cambridge Police Department has received 27 complaints regarding leafleting, at an average rate of 2-3 complaints per year. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 63:17-64:22, 155:23-156:8).

67. Vincent Best is a Compliance Officer for the City of Cambridge's Public Works Department. Prussia Decl., <u>Exhibit J</u> (Deposition of Vincent Best Tr. ("Compliance Officer Dep."), September 24, 2014, at 10:18–12:10); Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 52:15-22).

68. The City Compliance Officer is the only City employee responsible for enforcing the Defacement Ordinance. Prussia Decl., <u>Exhibit J</u> (Compliance Officer Tr. 53:12-54:4); Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. at 24:8-15).

69. As the sole employee responsible for enforcing the City Ordinance, the City Compliance Officer understands when the Defacement Ordinance applies. Prussia Decl., <u>Exhibit F</u> (City's (30)(b)(6) Tr. 62:11-23).

70. According to the City Compliance Officer, the Defacement Ordinance does not apply to leaflets placed on parked cars. Prussia Decl., <u>Exhibit J</u> (Compliance Officer Tr. 26:22 – 28:4).

71. When the City Compliance Officer sees leaflets on parked cars, he does not issue a citation, warning or notify anyone regarding the placement of these leaflets. Prussia Decl., <u>Exhibit J</u> (Compliance Officer Tr. 29:7-19, 30:17-23).

72. The City Compliance Officer is unaware of any other employee in the Public Works Department who has issued a citation or a warning to anyone for violating the Defacement Ordinance due to placing flyers on parked cars.  Prussia Decl., Exhibit J (Compliance Officer Tr. 30:24 – 31:10).

73. According to the City Compliance Officer, the Defacement Ordinance applies only to leaflets illegally placed on news racks, poles, trees, park bulletins, utility poles, and benches.  Prussia Decl., Exhibit J (Compliance Officer Tr. 23:17 – 26:21).

74. The City Compliance Officer explained that the Defacement Ordinance prevents "the posting of signs on public property."  Prussia Decl., Exhibit J (Compliance Officer Tr. 23:17-24).

75. In practice, the City does not enforce the Ordinance against people who place flyers on parked cars.  Prussia Decl., Exhibit J (Compliance Officer Tr. 29:7-19, 30:17-23); *see* Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 67:17-22).

76. In response to Soto's document requests, the City produced all documents concerning every instance in which the City has enforced or threatened to enforce the Ordinance. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 152:5-16, 155:17-156:7); *see* Exhibit K (City's Responses to Soto's Requests for Production of Documents ("City's Responses to RFPs"), August 4, 2014, at No. 7).

77. In response to Soto's request for every instance in which the City enforced or threatened to enforce the Defacement Ordinance, the City produced the following category of documents: (1) emails in which the City Compliance Officer notified individuals who used an adhesive or other bonding agent to post flyers on poles, benches, park bulletins, news racks, trees, and/or utility poles that they violated the Defacement Ordinance, (2) police incident reports

that involved individuals who taped, glued, or stapled posters to buildings, trees, and other objects; (3) police incident reports regarding individuals who trespassed onto private property to post flyers on buildings and residences or to place commercial leaflets on cars parked on private lots; and (4) police incident reports concerning either harassment or suspicious activity that indirectly involved the distribution or posting of leaflets.  Prussia Decl., Exhibit L (Bates No. COC 114-171 ("Police Reports")), Exhibit M (Bates No. COC 172-351 ("Compliance Officer Emails")).

78.    The City also produced documents that concerned individuals or businesses posting flyers secured by an adhesive onto City property or trespassing onto private parking lots to distribute flyers on parked cars.  Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 92:10-22, 96:4-20, 99:2-24, 103:1-21); *see e.g.,* Prussia Decl., Exhibit L (Police Reports at Bates COC 126-27, 136-37, 148-49, 152-53, ), Exhibit M (Compliance Office Emails at Bates COC 178-79).

79.    The City has failed to provide an example in which the Defacement Ordinance or the Defacement Statute was enforced against an individual for placing a flyer on a car parked on a public street.  *See* Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 58:15-18, 67:17-22, 128:4-130; 154:23-156:8).

80.    The City has not provided an example in which it enforced the Defacement Statute in any context.  Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 128-130).

Dated: March 16, 2015                    Respectfully submitted,

*/s/ Julia M. Ong*_____
Kevin S. Prussia (BBO #666813)
Thaila K. Sundaresan (BBO #683616)
Julia M. Ong (BBO #685014)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Of Counsel:
Matthew R. Segal (BBO #654489)
AMERICAN CIVIL LIBERTIES UNION
OF MASSACHUSETTS
211 Congress Street, 3rd Floor
Boston, MA 02110
Telephone: (617) 482-3170
Facsimile: (617) 451-0009
msegal@aclu.org

*Attorneys for Plaintiff*
*Paula F. Soto*

**CERTIFICATE OF SERVICE**

     I, Julia M. Ong, hereby certify that a true and correct copy of the above document was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 16th day of March, 2015.

                                                             _/s/ Julia M. Ong_____
                                                             Julia M. Ong