# EXHIBIT D

# WILMERHALE

**Richard A. Johnston**

+1 617 526 6282(t)
+1 617 526 5000(f)
richard.johnston@wilmerhale.com

February 21, 2013

Nancy E. Glowa
City Solicitor
Cambridge City Hall
795 Massachusetts Avenue
Cambridge, MA 02139

Re: Placement of Leaflets on Parked Automobiles and City of Cambridge Ordinance, § 9.04.050 and Mass. Gen. Laws ch. 266, § 126

Dear Ms. Glowa :

I write regarding Cambridge's policy, based on its interpretation of City of Cambridge Ordinance, § 9.04.050 and Mass. Gen. Laws ch. 266, § 126, to prohibit the placement of leaflets on parked automobiles. Along with the American Civil Liberties Union of Massachusetts ("ACLUM"), my law firm represents Cambridge resident Paula F. Soto. Ms. Soto is the founder of an organization created to raise awareness and understanding about a variety of important political and social issues. To pursue this goal, the organization screens films in the community room of Ms. Soto's apartment building, an affordable housing complex. The screenings are free to the public and Ms. Soto pays for all of the costs associated with these events through her own limited financial means. In order to effectively promote the film screenings, Ms. Soto leaflets parked automobiles on public streets.

On December 12, 2011, Ms. Soto was leafleting parked automobiles in her neighborhood when she was approached by a Cambridge police officer. The officer told her that she could not put leaflets on automobiles, that she needed a permit to leaflet, and that her actions constituted littering. Ms. Soto promptly ceased leafleting that day as a result of the Cambridge police officer's directive.

The next day, Ms. Soto contacted ACLUM for assistance in dealing with the City about her encounter with the Cambridge police. In early January, an ACLUM attorney contacted the then-City Solicitor, Donald A. Drisdell, to raise concerns about the police stopping Ms. Soto from continuing to flyer. Mr. Drisdell responded by email on January 11, 2012, sending the ACLUM attorney a copy of a letter written nearly two decades earlier, in 1994, which addressed the placement of commercial advertising on car windows ("Opinion Letter"). In that Opinion Letter, a previous City Solicitor advised the City Manager that it was illegal for a business in Harvard Square to place advertisements on parked automobiles. The Opinion Letter purported to rely on Mass. Gen. Laws ch. 266, § 126 and City of Cambridge Ordinance, § 9.04.050, both of which govern the defacement of public or private property. Mr. Drisdell also stated in the email that the City was willing to reconsider its legal opinion in light of court decisions issued after the 1994 Opinion Letter. Although he and you were provided with legal authorities holding that

WILMERHALE

Nancy E. Glowa
February 21, 2013
Page 2

policies which prohibit placing leaflets on car windshields violate the First Amendment, subsequently, in May 2012, you informed ACLUM that the City stands by its policy and will continue to enforce it in Cambridge.

    We disagree with the City's position. First, neither the defacement statute nor the City ordinance apply to the conduct in question because they do not explicitly prohibit objects from being placed on automobiles, nor do they purport to apply to activities constituting the exercise of speech protected by the First Amendment.

    Second, the City's policy against leafleting parked cars is unconstitutional. Even when local ordinances have prohibited placing leaflets on car windshields, the majority of circuit courts to have addressed this issue have held that such ordinances violate the First Amendment. We therefore have strong grounds to assert that the City's interpretation of both the statute and local law, and its policy of forbidding the placement of Ms. Soto's flyers on car windshields, violate her First Amendment rights. See Klein v. City of San Clemente, 584 F.3d 1196, 1202-05 (9th Cir. 2009) (finding that an "across-the-board ban on placing leaflets on the windshields of empty vehicles parked on public streets" was not narrowly tailored to advance city's significant interests in preventing litter or protecting private property); Horina v. City of Granite City, 538 F.3d 624, 635-36 (7th Cir. 2008) (holding that an ordinance prohibiting the distribution of handbills on parked vehicles on public streets failed to survive constitutional scrutiny in part because it failed to leave open adequate alternative channels of communication); Krantz v. City of Fort Smith, 160 F.3d 1214, 1221 (8th Cir. 1999) (finding that an ordinance prohibiting placement of "any handbill on any unattended vehicle, regardless of whether the driver, owner or an occupant might wish to receive the handbill" suppressed "considerably more speech than is necessary to serve the stated governmental purpose").

    Ms. Soto would like to avoid pursuing litigation but can agree to do so only if Cambridge states in writing by March 8, 2013 that it has abandoned its current policy of forbidding the placement of flyers on car windshields. If the City refuses to change its position, then we will go forward with filing our complaint. A copy is enclosed for your reference. Please feel free to contact me at 617-526-6282 if you would like to discuss the matter further.

Best regards,

*[signature]*

Richard A. Johnston

Enclosure

WILMERHALE

Nancy E. Glowa
February 21, 2013
Page 3

cc: Kevin S. Prussia, Esq.
    Thaila K. Sundaresan, Esq.
    Julia M. Ong, Esq.
    Matthew R. Segal, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAULA F. SOTO, ) | **DRAFT** |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: xxx |
| ) | |
| CITY OF CAMBRIDGE, ) | |
| ) | |
| Defendant. ) | |

# COMPLAINT

## INTRODUCTION

This action is brought by Paula Frances Soto ("Soto"), a Cambridge resident, to challenge a City of Cambridge policy that interferes with and restricts her public leafleting on political and social issues. Soto, a political and social activist, distributes leaflets on parked automobiles on public streets to advise the Cambridge community about significant issues that in her view are not adequately addressed in the mainstream media, and to invite participation at monthly film screenings to discuss those issues. Cambridge, through its police and law departments, has told Soto that she will be subject to arrest unless she stops placing leaflets for her film screenings on parked automobiles. The City has a policy of prohibiting such leafleting, which it claims is based on a 20-year-old letter written by a former City Solicitor which addressed solely commercial leafleting.

Soto brings this action under 42 U.S.C. § 1983 for violation of her First Amendment rights to the United States Constitution and under Article XVI of the Massachusetts

Declaration of Rights to challenge the City's interference with her right to freedom of expression. She requests this Court to follow the majority of other federal courts that have found similar restrictions on leafleting activity to be an unconstitutional restriction of speech under the First Amendment. *See, e.g., Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009); *Horina v. The City of Granite City*, 538 F.3d 624 (7th Cir. 2008); *Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir. 1999); *Robinson v. Town of Kent*, 835 F.Supp.2d 1 (S.D.N.Y. 2011); *Ramsey v. City of Pittsburgh*, 764 F.Supp.2d 728 (W.D. Pa. 2011); *Traditionalist American Knights of the KKK v. City of Cape Girardeau*, 2012 WL 4464868 (E.D. Mo. Sept. 27, 2012).

## PARTIES

1. Plaintiff Soto is a resident of Cambridge, Massachusetts.

2. Defendant City of Cambridge is a municipal corporation in Middlesex County, Massachusetts.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 42 U.S.C. § 1983 over Soto's claims of a deprivation, carried out under color of state law, of a federal constitutional right.

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Soto's civil action arising under the Constitution of the United States.

5. In addition, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Soto's cause of action arising under the Massachusetts Constitution.

6. The Court may grant declaratory and injunctive relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*, and 42 U.S.C. § 1983.

7. Venue lies in this District because a substantial part of the acts or omissions giving rise to Soto's claims occurred in the City of Cambridge. 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

8. Soto is the founder of UPandOUT, an organization created to raise awareness and understanding about a variety of important political and social issues that Soto believes are not being adequately addressed by the mainstream media. Soto, through UPandOUT, organizes and hosts a free film series on the third Thursday of every month. These films range in subject matter. For example, past films have included Death of a Nation: The Timor Conspiracy (about the Indonesian military occupation of East Timor), Lumumba (about the roles of the United States and Belgium in the assassination of Patrice Lumumba, the first legally elected prime minister of the Democratic Republic of the Congo), Our Daily Bread (about industrial food production and high-tech farming) and Burning The Future (about rising global warming emissions as a result of alleged "clean coal" technology).

9. The films are screened in the community room of Soto's apartment building, an affordable housing complex. The screenings are free to the public, and attract an audience that can range from 20 – 40 individuals every month. Soto pays for all of the costs associated with these events through her own limited financial means.

10. The primary way that Soto promotes the film screenings is by leafleting automobiles parked on public streets in the City of Cambridge, typically during the week leading up to the screening.

11. In the six years that Soto has been involved in organizing the monthly film series, she has found that leafleting parked neighborhood automobiles is the most effective way to advertise the film screenings to a wide range of individuals not limited to solely local residents.

12. The leaflets not only inform the community about the monthly film series, but provide educational information about relevant political and social issues.

13. An example of one of Soto's leaflets is attached as <u>Exhibit A.</u>

14. Soto leaflets hundreds of parked automobiles every month for the purpose of promoting the monthly film series and educating the community about political and social issues. Soto limits her leafleting to parked automobiles on public streets, and does not leaflet automobiles on driveways or other private property.

15. On December 12, 2011, Soto was leafleting parked automobiles in her neighborhood when she was approached by a City of Cambridge police officer. The officer told her that she could not put leaflets on automobiles, that she needed a permit to leaflet, and that her actions constituted littering.

16. Soto ceased leafleting that day as a result of her conversation with the police officer.

17. The next day, Soto contacted the American Civil Liberties Union of Massachusetts ("ACLUM") about her encounter with the Cambridge police. In early January, an ACLUM attorney contacted the then-Cambridge City Solicitor and informed him that the organization had been contacted by an individual who had been ordered by a police officer to stop placing leaflets on parked automobiles. ACLUM suggested that this order was

unconstitutional, with many courts having so ruled, and asked that the police be told to stop giving orders like that. The City Solicitor noted that he would investigate the matter.

18. On January 11, 2012, the City Solicitor responded by sending ACLUM a letter written nearly two decades earlier, in 1994, which had the subject heading: "Re: Placement of *Commercial Advertising* on Car Windows." (emphasis added) ("Opinion Letter"). In that Opinion Letter, a former City Solicitor advised the City Manager that it was illegal for a business in Harvard Square to place advertisements on parked automobiles.

19. The Opinion Letter purported to rely on Mass. Gen. Laws ch. 266, § 126, which governs the "defacement" of public or private property (the "Defacement Statute"). With respect to any "object which is public property or the property of another," the Defacement Statute prohibits "paint[ing]," "put[ting] upon," or "affix[ing]" "any . . . advertising or notice which is not required by law to be posted" without first obtaining the consent of the property owner. The offense is punishable by a fine of up to one hundred dollars, and the offender is also subject to a tort action for "the cost of removing or obliterating such defacement."

20. The Defacement Statute does not define "object" or "property," does not say what kinds of conduct constitute "putting upon" or "affixation," and does not explicitly prohibit objects from being placed on parked automobiles. Nor does the statute purport to apply to activities constituting the exercise of free speech.

21. The Opinion Letter also cited a City of Cambridge Ordinance, § 9.04.050, which governs the defacement of public or private property (the "Defacement Ordinance"). The Defacement Ordinance prohibits the "post[ing]" or "attach[ing]" of "any handbill, poster, advertisement or notice . . . on private property" without the consent of the owner or occupant.

- 5 -

The offense is punishable by a fine up to $300 per illegal advertisement, or if punished by noncriminal ticketing, $25 for the first violation, $100 for the second violation, and $200 for the third and subsequent violations.

22. The Defacement Ordinance does not define "handbill," "poster," "advertisement," "notice of any kind," or "private property," does not say what conduct constitutes "posting" or "attaching," and does not explicitly prohibit objects from being placed on automobiles. Nor does it purport to apply to activities constituting the exercise of protected speech.

23. The scope of the Opinion Letter was limited to addressing the placement of *commercial advertising* on automobiles, as evidenced by the subject heading of the letter.

24. Along with sending the Opinion Letter to ACLUM, the City Solicitor also stated by email that the City would reconsider its legal opinion in light of court decisions issued after the 1994 Opinion Letter.

25. Despite receiving from ACLUM references to numerous court decisions since 1994 holding that it is a violation of the First Amendment to prohibit individuals from leafleting automobiles, in subsequent discussions with ACLUM a new acting City Solicitor informed ACLUM in May 2012 that the City stood by its policy and would continue to enforce it in Cambridge. In so doing, the City has ratified the actions of its police officer who threatened Soto when he stopped her from placing leaflets on parked automobiles.

26. The City's threat to continue enforcing its prohibition on the placement of leaflets on parked automobiles interferes unnecessarily with Soto's First Amendment rights because such leafleting is an efficient and cost-effective method of reaching a large number of persons living in, or found in, the City. No comparable alternative exists.

27. The City's policy has unconstitutionally chilled, and will continue to chill, advocacy by Soto and other members of UPandOUT. They have suffered ongoing irreparable injury because they reasonably fear that they will be arrested or fined if they distribute leaflets, and feel in danger of being stopped by the police every time that they engage in these actions.

28. Soto and other members of UPandOUT have been and are being harmed by the violation of their constitutional rights caused by the Cambridge policy and practice.

29. Upon information and belief, no other municipality in the Commonwealth of Massachusetts has interpreted the Defacement Statute as prohibiting the placement of political leaflets on parked automobiles, nor has any other municipality in Massachusetts enforced a city ordinance prohibiting such conduct.

## COUNT 1: Cambridge's Blanket Prohibition on Placing Non-Commercial Leaflets on Parked Cars Violates The First Amendment To The United States Constitution

### (42 U.S.C. § 1983 and First Amendment)

30. Soto repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

31. The City of Cambridge's policy of prohibiting the placement of non-commercial leaflets on parked automobiles violates Soto's right to free speech under the First Amendment to the United States Constitution.

32. The City's policy is allegedly based on a nearly 20-year old Opinion Letter, which addresses only the "placement of *commercial advertising* on car windows." (emphasis added). Even if the City's ban on the placement of commercial advertising on car windows is itself

- 7 -

constitutional—a point that Soto does not concede—its extension of that ban to non-commercial leafleting is still unconstitutional. Soto's leaflets concern political and social issues, and are indisputably non-commercial in nature. Given that non-commercial speech receives the greatest level of First Amendment protection, Cambridge's ban on placing non-commercial leaflets on parked cars violates Soto's First Amendment rights.

33. In addition, neither the Defacement Statute nor the Defacement Ordinance apply to the conduct in question because they do not explicitly prohibit objects from being placed on automobiles, nor do they purport to apply to activities constituting the exercise of speech protected by the First Amendment.

34. To the extent that the Defacement Statute and Defacement Ordinance are interpreted to apply and prohibit and/or criminalize Soto's exercise of free speech, they would be unconstitutional on their face and as applied to Soto.

### COUNT 2: Cambridge's Blanket Prohibition on Placing Non-Commercial Leaflets on Parked Cars Violates the Free Speech Guarantee of Article XVI of the Massachusetts Declaration of Rights

35. Soto repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

36. The City of Cambridge's policy of prohibiting the placement of non-commercial leaflets on parked automobiles violates Soto's right to free speech under Article XVI of the Massachusetts Declaration of Rights.

37. The City's policy is allegedly based on a nearly 20-year old Opinion Letter, which is inapplicable to the facts at hand because it solely addressed the "placement of *commercial*

*advertising* on car windows." (emphasis added). Even if the City's ban on the placement of commercial advertising on car windows is itself constitutional – a point that Soto does not concede – its extension of that ban to non-commercial leafleting is still unconstitutional. Soto's leaflets concern political and social issues, and are indisputably non-commercial in nature. Therefore, Cambridge's policy does not apply to Soto's non-commercial leafleting.

38. In addition, neither the Defacement Statute nor the Defacement Ordinance apply to the conduct in question because they do not explicitly prohibit objects from being placed on automobiles, nor do they purport to apply to activities constituting the exercise of speech protected by the First Amendment.

39. To the extent that the Defacement Statute and Defacement Ordinance are interpreted to apply and prohibit and/or criminalize Soto's exercise of free speech, they would be unconstitutional on their face and as applied to Soto.

40. Soto has no adequate remedy at law.

## CLAIM FOR RELIEF

WHEREFORE Soto requests this Court:

41. Enter declaratory judgment pursuant to 42 U.S.C. § 1983, finding that the City's policy and practice of forbidding the placing of non-commercial leaflets on parked automobiles to violate the First Amendment and Article XVI of the Massachusetts Declaration of Rights.

42. Issue preliminary and permanent injunctions enjoining the City from enforcing a prohibition on placing non-commercial leaflets on parked automobiles;

43. Award Soto nominal damages for violation of her constitutional rights;

44.     Award Soto her costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

45.     Award Soto such other relief as the Court deems just and proper.

Dated: _____, 2013                    Respectfully submitted,

                                                       WILMER CUTLER PICKERING
                                                       HALE AND DORR LLP

---

Richard A. Johnston (BBO# 253420)
Kevin S. Prussia (BBO# 666813)
Thaila K. Sundaresan (BBO# 683616)
Julia Ong (BBO#658014)
WILMER CUTLER PICKERING
 HALE AND DORR, LLP
60 State Street
Boston, MA  02109
Telephone:  617-526-6000
Facsimile:  617-526-5000
richard.johnston@wilmerhale.com
kevin.prussia@wilmerhale.com
thaila.sundaresan@wilmerhale.com
julia.ong@wilmerhale.com


AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS

---

Matthew R. Segal (BBO# 654489)
AMERICAN CIVIL LIBERTIES UNION
 OF MASSACHUSETTS
211 Congress Street, 3rd Floor
Boston, MA  02110
Telephone:  617-482-3170
Facsimile:  617-451-0009
msegal@aclum.org

- 11 -

**EXHIBIT A**



**FREE**  **Refreshments**  **Door prizes**

## UPandOUT 3rd Thursdays, free film series

## Showing

**Thursday, July 19**

**6:40pm** doors open
**7pm** film starts promptly

243 Broadway, Cambridge
corner of Broadway & Windsor, entrance on Windsor



Next up, Aug 16: *Burning the Future: Coal in America*
(the devastating impact of our addiction to coal)

### Bloody Thursday                    [60 min]

**Synopsis**

*Bloody Thursday* tells the story of how West Coast dockworkers overcame huge obstacles to form their union, the ILWU.

Set in the midst of the Great Depression, the film shows how longshoremen were fighting for their rights at the same time that most of their families weren't sure where their next meal would come from. The odds were stacked against the longshoremen.

Mainstream newspaper publishers, fearful of unionization efforts at their own papers, launched brutal attacks against the dockworkers and drove public sympathy against them. In addition, politicians and the police openly used their resources to side with the shipping companies against the striking dockworkers.

Bloody Thursday tells the human stories of the dockworkers who stood up against these odds and changed the course of American labor history.

"This strike is the best thing that ever happened to San Francisco. We have lost millions on the waterfront in the last few months. But it's a good investment, a marvelous investment. It's solving the labor problem for years to come. Mark my words. When this nonsense is out of the way and the men have been driven back to their jobs, we won't have to worry about them anymore." ~William H. Crocker, prominent SF banker

"*An Injury to One is an Injury to All*" Rallying cry of the Wobblies [IWW], and the name of a sculpture at the corner of Mission & Steuart Streets, San Francisco

Film screenings: 243 Broadway, Cambridge          UPandOUT.org          617-864-3322