# EXHIBIT

# A

Thaila Sundaresan
WilmerHale
60 State Street, Boston, MA 02109

### Talking Points for May 18, 2014 Ordinance Committee Meeting – for the record

- Good evening. My name is Thaila Sundaresan and I am an attorney at WilmerHale. WilmerHale and the American Civil Liberties Union of Massachusetts jointly represent PF Soto in her lawsuit against the City of Cambridge.

- As you know, Ms. Soto is a long-term Cambridge resident who founded a small volunteer group called UpandOUT, that raises awareness about important social and political causes that are not discussed in mainstream media.

- One of the group's key activities is a free documentary film screening that Ms. Soto hosts in the community room of her apartment building every month. Ms. Soto promotes these screenings by placing leaflets on parked cars. Other methods of outreach—such as mailings or person to person handouts—are expensive, time consuming, and not within Ms. Soto's means.

- On December 12, 2011, Ms. Soto was leafleting cars when she was stopped by a Cambridge police officer. He told her that she could not leaflet cars and that she was littering.

- After this encounter, Ms. Soto contacted the ACLU, who then reached out to the City to try and resolve this matter **without resorting to litigation**. The ACLU sent the City several court decisions that have **struck down** similar city ordinances that have prohibited leafleting. But the City insisted that it had an ordinance against such leafleting and that it would continue to enforce it against our client. It was only then that Ms. Soto reluctantly filed her lawsuit.

- As you all heard at the May 5th City Council meeting, Ms. Soto has significant support from the local community for her work. At that last meeting, 14 people spoke on her behalf and discussed the valuable public service that Ms. Soto provides with her film screenings. Not a single person spoke against her activities. Many recognized the importance of the First Amendment and its protection for peaceful expression.

- The Ordinance in question is entitled Defacing Public Property 9.04.050. The language, in relevant part, reads, "No person shall post or attach . . . any handbill, poster, advertisement or notice of any kind on public property. . . or on private property without the consent of the owner or occupant thereof." Note that the Ordinance does not explicitly prohibit objects from being placed on cars.

- We ask that the Ordinance Committee consider three potential options for resolving this matter:

- **First**, the Committee can simply determine that this Ordinance does not apply to Ms. Soto's leafleting. The dictionary definition of "defacing" property is to "ruin the surface or mar the appearance of something." Other cities that have defacement ordinances have

Thaila Sundaresan
WilmerHale
60 State Street, Boston, MA 02109

applied them in situations when the action in question results in a **permanent** alteration of property. For example, a defacement ordinance in Los Angeles uses words like "paint" "mark" and "write" because the ordinance's concern is with activities like graffiti, which permanently alter property. *See* Los Angeles Municipal Code § 28.04.

- The Cambridge Defacement Ordinance uses language such as "post" and "attach" which are also words that connote permanence. The legal definition of "post" is to "affix", which means to "add to, or fasten on **permanently.**" *See Black's Law Dictionary* 712 (9th ed. 2009).

- Ms. Soto's leaflets do not permanently alter property. The flyers can be removed from a car windshield as easily as they can be placed, and the car will look just the same as it did before. Leafleting is thus very different from activities like painting or writing, which result in a permanent defacement. The simplest solution is for the Ordinance Committee to determine that the Cambridge Ordinance does not apply to the type of leafleting that Ms. Soto engages in and to train police officers to that effect. Laws are frequently interpreted in a way to avoid serious constitutional issues.

- The <u>second</u> option is to repeal the Ordinance. Three US Circuit Courts of Appeal have struck down similar ordinances that have banned putting leaflets on car windshields as a violation of the First Amendment. These cases have held that the protection of private property is not a sufficiently substantial government interest to justify an across-the-board ban on placing leaflets on car windshields. These courts have also held that other avenues of communication, such as in person solicitation or door-to-door-leafleting, are not adequate alternatives because they are burdensome and resource-intensive. One US Circuit Court of Appeal has upheld such a ban, but the weight of authority is against such restrictions on expression.

- In addition, there are other ways for people to avoid such leaflets. For example, people can simply put a sign on their dashboard saying no leaflets, similar to a no solicitation sign on one's front door or adding one's phone number to a Do Not Call List. The Supreme Court has repeatedly held that "No Solicitation" signs are adequate protections for residents to bar solicitors. If "No Solicitation" signs are adequate protections for residences, they are ample protection for car owners to prevent unwanted solicitation. Accordingly, the Seventh and Ninth Circuits have adopted this approach for leafleting on parked cars.

- The <u>third</u> option is one that Councilmember McGovern raised at the May 5th City Council meeting, about whether the Ordinance could be amended to prohibit commercial speech only.

- Over 20 years ago, the then-Cambridge City Solicitor wrote an opinion letter explaining that placing **commercial** flyers on car windshields was prohibited under the Ordinance. Until now, the Ordinance has never been interpreted to apply to non-commercial leafleting.

ActiveUS 129256785v.1

Thaila Sundaresan
WilmerHale
60 State Street, Boston, MA 02109

- Ms. Soto's leaflets indisputably do not constitute commercial speech. She does not earn any money from her activities. Her film screenings are free to the public. In fact, considering the cost of making leaflets and purchasing refreshments and raffle prizes for the film screenings, Ms. Soto actually **loses money** every month from her activities.

- The courts that have struck down similar leafleting ordinances have not made any particular distinction between commercial and non-commercial speech, and we believe that making such a distinction would further complicate matters. However, if the Council wants to make such a distinction, the Council could amend the Ordinance by adding the word "commercial" – as in "No person shall post or attach....any **commercial** handbill, poster, advertisement or notice of any kind . . . " This would be a simple fix, although the Council should be aware that even commercial speech has significant First Amendment protection.

- The final point I want to make is that we have asked the City to suspend enforcement of the Ordinance while this suit is pending and while the City Council is reviewing the Ordinance. Unfortunately, the City has refused to do. We therefore ask the Ordinance Committee to resolve this matter as soon as possible so that Ms. Soto can leaflet without fear of getting fined or stopped by a police officer for exercising her constitutionally protected rights.

- Thank you for your consideration.