# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____

PAULA F. SOTO,
      Plaintiff,


v.                                      C.A. No. 13-10822-JGD


CITY OF CAMBRIDGE,
      Defendant.
_____

## DEFENDANT CITY OF CAMBRIDGE'S RESPONSE TO PLAINTIFF PAULA F. SOTO'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF PAULA F. SOTO'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT CITY OF CAMBRIDGE'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant City of Cambridge (the "City") respectfully submits this Response to Plaintiff Paula F. Soto's Statement of Material Facts in Support of Plaintiff Paula F. Soto's Motion for Summary Judgment and Defendant City of Cambridge's Statement of Material Facts in Support of its Motion for Summary Judgment.

## I.      The Parties

1.      The City is a municipal corporation in Middlesex County, Massachusetts. Defendant City of Cambridge's ("the City") Answer to Soto's First Amended Complaint ("City's Answer"), Sept. 17, 2014, at ¶ 2.

CITY'S RESPONSE TO NO. 1:

Undisputed.

2.      Ms. Soto is a resident of Cambridge, Massachusetts.  First Amended Complaint ("Am. Compl."), Sept. 3, 2014, at ¶ 1.

CITY'S RESPONSE TO NO. 2:

Undisputed.

3.      Ms. Soto is the founder of UPandOUT, an organization created to raise awareness about important political and social issues that Soto believes are not adequately addressed by the mainstream media.  Am. Compl. at ¶ 8.

CITY'S RESPONSE TO NO. 3:

Undisputed.

4.      UPandOUT is not a registered 501(c)(3), has no paid staff, and does not generate any revenue.  Declaration of Kevin S. Prussia ("Prussia Decl."), Exhibit A (Soto's Responses to the City's Requests for Production of Documents ("Soto's Responses to RFP"), August 12, 2014, at No. 2).

CITY'S RESPONSE TO NO. 4:

Undisputed.

## II.    Soto's Noncommercial Leafleting Activity

5.      Through UPandOUT, Ms. Soto organizes a free monthly film series that is held in the community room of her apartment building, an affordable housing complex.  Am. Compl. at ¶ 8.

CITY'S RESPONSE TO NO. 5:

Undisputed.

6.      The film screenings attract an audience of 20-40 individuals every month.  Am. Compl. at ¶ 9.

CITY'S RESPONSE TO NO. 6:

      Undisputed.

7.     Ms. Soto pays for the costs of the film screenings primarily through her own limited financial means.  Am. Compl. at ¶ 9.

CITY'S RESPONSE TO NO. 7:

Undisputed.

8.     The primary way that Ms. Soto promotes the film screenings is by distributing flyers on cars parked on public streets in the City of Cambridge.  Am. Compl. at ¶ 10.

CITY'S RESPONSE TO NO. 8:

Undisputed.

9.     Ms. Soto's leaflets not only inform the community about the monthly film series, but also provide passersby and car owners with educational information about relevant political and social issues.  Am. Compl. at ¶ 12, Ex. 3 (Free Film Series Flyer).

CITY'S RESPONSE TO NO. 9:

**Disputed**.  Soto's intent in posting flyers to cars is not to deliver them to car owners. Declaration of Samuel A. Aylesworth ("Aylesworth Decl."), Exhibit D document Bates No. SOTO 400 that was produced by the Plaintiff Paula F. Soto in response to the City's Requests for the Production of Documents, dated August 12, 2014, (Soto December 15, 2011 Email).

10.    The number of flyers Ms. Soto distributes varies from month to month, and in some months Ms. Soto has distributed approximately 1200-1400 flyers.  Prussia Decl., Exhibit B (Soto's Responses to the City's Requests for Admission ("Soto's Responses to RFA"), January 15, 2015, at No. 12).

CITY'S RESPONSE TO NO. 10:

Undisputed.

11.     To supplement the primary means by which Ms. Soto invites the community to her film screenings, Ms. Soto also puts flyers in the windows of local businesses that give her permission to do so, uses email distribution lists and websites, and posts flyers on bulletin boards in parks. Prussia Decl., Exhibit B (Soto's Responses to City's RFA at Nos. 14-17).

CITY'S RESPONSE TO NO. 11:

Undisputed.

12.     In the seven years that Ms. Soto has been involved with UPandOUT, she has found that leafleting parked cars is the most effective way to advertise the film screenings to a wide range of individuals not limited to solely local residents.  Am. Compl. at ¶ 11.

CITY'S RESPONSE TO NO. 12:

**Objection**. Opinions of lay witnesses are not admissible.

13.     Ms. Soto believes that distributing flyers on parked vehicles communicates information about the sincerity of her message that is not readily inferred by the public from the use of communications that require access to internet, radio, or irregularly located bulletin boards. *See* Prussia Decl., Exhibit B (Soto's Responses to City's RFA at ¶ 10).

CITY'S RESPONSE TO NO. 13:

**Objection**. Opinions of lay witnesses are not admissible.

14.     For Ms. Soto, leafleting cars parked on public streets is the only method by which she can reach members of the community that do not have access to the internet and radio. Prussia Decl., Exhibit C (Soto's Statement Submitted to the Cambridge City Council dated May 5, 2014).

CITY'S RESPONSE TO NO. 14:

4

**Disputed**. The Plaintiff puts flyers in the windows of local businesses that give her permission to do so and posts flyers on bulletin boards in parks. Prussia Decl., <u>Exhibit B</u> (Soto's Responses to City's RFA at Nos. 14-17). The Plaintiff also has attempted to leaflet individuals on the sidewalks of the public ways. Aylesworth Decl., <u>Exhibit D</u> document Bates No. SOTO 400 that was produced by the Plaintiff Paula F. Soto in response to the City's Requests for the Production of Documents, dated August 12, 2014, (Soto December 15, 2011 Email).

15.     Ms. Soto has not knowingly distributed a flyer on an automobile after an owner has asked her not to do so.  Prussia Decl., <u>Exhibit B</u> (Soto's Responses to City's RFA at No. 11).

CITY'S RESPONSE TO NO. 15:

Undisputed.

### III.   The City's Policy of Restricting Soto's Noncommercial Leafleting

16.     On December 12, 2011, Ms. Soto was distributing flyers about the free monthly film screenings on parked cars in her neighborhood when she was approached by a City of Cambridge police officer.  Am. Compl. at ¶ 15.

CITY'S RESPONSE TO NO. 16:

Undisputed.

17.     The officer informed her that she could not place leaflets on parked cars.  Am. Compl. at ¶ 15.

CITY'S RESPONSE TO NO. 17:

**Objection**. The declarant's statement is hearsay and is therefore inadmissible.

18.     The officer also informed her that her actions constituted littering.  Am. Compl. at ¶ 15.

CITY'S RESPONSE TO NO. 18:

**Objection**. The declarant's statement is hearsay and is therefore inadmissible.

19.     As a result, Ms. Soto ceased leafleting that day for a period of time as a result of her conversation with the police officer.  Am. Compl. at ¶ 16.

CITY'S RESPONSE TO NO. 19:

**Disputed**. The Plaintiff also has attempted to leaflet individuals on the sidewalks of the public ways. Aylesworth Decl., Exhibit D document Bates No. SOTO 400 that was produced by the Plaintiff Paula F. Soto in response to the City's Requests for the Production of Documents, dated August 12, 2014, (Soto December 15, 2011 Email).

20.     On December 13, 2011, Ms. Soto contacted the American Civil Liberties Union of Massachusetts ("ACLUM") about her encounter with the Cambridge police.  Am. Compl. at ¶ 17.

CITY'S RESPONSE TO NO. 20:

Undisputed.

21.     In early January of 2012, an ACLUM attorney contacted the then-Cambridge City Solicitor to inform him that a Cambridge police officer had ordered an individual to cease placing leaflets on parked automobiles.  Am. Compl. at ¶ 17.

CITY'S RESPONSE TO NO. 21:

**Objection**. The declarant's statement is hearsay and is therefore inadmissible.

22.     ACLUM informed the then-Cambridge City Solicitor that this order was unconstitutional.  Am. Compl. at ¶ 17.

CITY'S RESPONSE TO NO. 22:

**Objection**. The declarant's statement is hearsay and is therefore inadmissible.

23.     The City Solicitor responded that he would investigate the matter.  Am. Compl. ¶ at 17.

CITY'S RESPONSE TO NO. 23:

**Objection**. The declarant's statement is hearsay and is therefore inadmissible.

A.      **The City's 1994 Opinion Letter**

24.      On January 12, 2012, the City Solicitor supported the police officer's

enforcement against Ms. Soto's conduct by sending ACLUM a letter written in 1994 by the

former City Solicitor, with the subject heading, "Re: Placement of Commercial Advertising on

Car Windows." ("1994 Opinion Letter").  Am. Compl. at ¶ 18, Ex. 4 (1994 Opinion Letter).

CITY'S RESPONSE TO NO. 24:

Undisputed.

25.      Specifically, the 1994 Opinion Letter addressed the legality of placing

*commercial* flyers on parked cars, as evidenced by the subject heading of the letter, and was

written in response to a former City Councilor's inquiry about the "legality of a *business* in

Harvard Square placing *advertisements* on parked cars." Am. Compl. at Ex. 4 (1994 Opinion

Letter) (emphasis added).

CITY'S RESPONSE TO NO. 25:

Undisputed.

26.      The 1994 Opinion Letter relied on Cambridge City Ordinance § 9.04.050, which

governs the *defacement* of public or private property ("Defacement Ordinance").  Am. Compl.

at Exs. 1 (Defacement Ordinance Text) and 4 (1994 Opinion Letter).

CITY'S RESPONSE TO NO. 26:

Undisputed.

27.     The 1994 Opinion Letter also cited Mass. Gen. Laws ch. 266 § 126, which governs the ***defacement*** of public or private property.  Am. Compl. at Exs. 2 (Defacement Statute Text) and 4 (1994 Opinion Letter).

CITY'S RESPONSE TO NO. 27:

Undisputed.

28.     The former City Solicitor explained in the 1994 Opinion Letter that "the primary legal issue raised by laws restricting the distribution of advertisements is the free speech guarantee of the First Amendment of the U.S. Constitution." Am. Compl., Ex. 4 (1994 Opinion Letter) at 3.

CITY'S RESPONSE TO NO. 28:

Undisputed.

29.     The 1994 Opinion Letter did not address the placement of *noncommercial* flyers on parked cars.  Am. Compl. at Ex. 4 (1994 Opinion Letter).

CITY'S RESPONSE TO NO. 29:

**Disputed**. The "placement" has equal applicability to commercial and noncommercial fliers.

**B.      Enactment History of the Defacement Ordinance**

30.     In 1992, the City Council amended and adopted the present text of the Defacement Ordinance.  Prussia Decl., Exhibit D (Letter from City Clerk to City Solicitor, dated May 15, 1992, Bates COC 7 – 9).

CITY'S RESPONSE TO NO. 30:

**Disputed**. The City Council amended and adopted the present text of the Ordinance on May 18, 2015. Aylesworth Decl., Exhibit B (Amended Ordinance).

8

31.     Prior to May 1992, the text of the Defacement Ordinance stated: "No person shall paint or draw any words or figures, or post any written or printed matter, upon the property of any person, without the consent of the owner or occupant thereof, nor upon any property of the City, without the consent of the City Manager."  Prussia Decl., <u>Exhibit E</u> (Text of pre-1992 City Council Ordinance 9.04.050, Bates COC 5).

<u>CITY'S RESPONSE TO NO. 31</u>:

Undisputed.

32.     The City's 1992 amendment to the Defacement Ordinance struck out the prior language and inserted new text that reads: "No person shall post or attach, or directly or indirectly cause to be posted or attached in any manner, any handbill, poster, advertisement or notice of any kind on public property, except by permission of the City Manager or his designee, or on private property without the consent of the owner or occupant thereof."  Prussia Decl., <u>Exhibit D</u> (Letter from City Clerk to City Solicitor, dated May 15, 1992 at Bates COC 8).

<u>CITY'S RESPONSE TO NO. 32</u>:

**Disputed**. The City Council amended and adopted the present text of the Ordinance on May 18, 2015. Aylesworth Decl., <u>Exhibit A</u> (Amended Ordinance).

33.     The Defacement Ordinance was amended in 1992 in order to curb visual blight, littering and defacement in the City.  Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 25:14-28:21).

<u>CITY'S RESPONSE TO NO. 33</u>:

**Disputed**. The document cited by the Plaintiff does not state the proposition she asserts. The Ordinance was amended in 1992 because the previous version required someone to witness

the placement or leaving a post or a handbill or any material on public property or private property. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 26:18-27:14).

34.     In particular, the City was concerned with the "***posting*** of flyers in undesignated spaces."  Prussia Decl., <u>Exhibit G</u> (Letter from City Manager to City Council, dated March 16, 1996, Bates COC 41) (emphasis added).

CITY'S RESPONSE TO NO. 34:

**Disputed**. The letter from the City Manager to the City Council is dated March 16, 1992.

35.     The visual blight that the Defacement Ordinance was meant to prohibit was caused by posters "attached to trees, utility poles, any public property, [and] buildings . . . ." Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 31:1-4).

CITY'S RESPONSE TO NO. 35:

**Disputed**. The visual blight that the Ordinance was meant to address was the placement of handbills and advertisements on public and private property. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 27:15-24; 28:1-9; 29:19-30:1; 30:13-19). The posting of flyers on motor vehicles was among the issues that caused visual blight. Aylesworth Decl., Exhibit "B" (Minutes of June 18, 2014 Ordinance Committee Hearing).

36.     At the time the City amended the Defacement Ordinance in 1992, posters were "actually being glued to utility poles and actually nailed to trees . . . ."  Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 31:5-11).

CITY'S RESPONSE TO NO. 36:

Undisputed.

37.     The City's present interest in enforcing the Defacement Ordinance continues to be directed at curbing visual blight caused by leaflets posted throughout the City.  Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 114:4-13; 146: 2-12).

CITY'S RESPONSE TO NO. 37:

Undisputed.

38.     Such conduct that is prohibited under the Defacement Ordinance includes circumstances where people tape, staple, or glue fliers and signs to trees, utility poles, buildings, ornaments along the streets, and newspaper dispensers on sidewalks.  Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 56:3-23).

CITY'S RESPONSE TO NO. 38:

Undisputed.

C.      **The City's Enforcement of the Defacement Ordinance and Statute Against Soto's Noncommercial Leafleting**

39.     On February 21, 2013, in an effort to resolve the matter prior to filing suit, counsel for Ms. Soto sent a letter to the current City Solicitor providing references to court decisions that the City's interpretation of both the Defacement Ordinance and Defacement Statute violates Ms. Soto's First Amendment rights.  Am. Compl. at ¶ 26.

CITY'S RESPONSE TO NO. 39:

**Objection**. The Plaintiff's assertions as to the applicability of those court decisions as they may or may not relate to the Plaintiff's conduct is merely legal argument and is not a "fact." The City does not dispute receipt of the February 21, 2013 but disputes that the court decisions cited therein support the allegation that the City's interpretation of the Ordinance and Statute violates the Plaintiff's rights.

40.     On March 13, 2013, the City Solicitor sent a letter to counsel maintaining the City's position that "its ordinance is presumptively valid and as such the City is required to enforce it."  Am. Compl. at Ex. 5 (Letter from City Solicitor Glowa to WH).

CITY'S RESPONSE TO NO. 40:

Undisputed.

41.     On August 26, 2014 Ms. Soto's counsel filed a Notice of Possible Constitutional Question under Fed. R. Civ. 5.1, and provided a courtesy copy to the Massachusetts Attorney General's Office.  Notice of Possible Constitutional Question, August 26, 2014, ECF No. 34; Letter from Thaila Sundaresan, October 2, 2014, ECF No. 42, at Ex.1 (Letter from Attorney General's Office).

CITY'S RESPONSE TO NO. 41:

Undisputed.

42.     The Attorney General's Office sent a letter to Ms. Soto's counsel on September, 29, 2014 in which it declined to intervene in the litigation, despite the fact that Ms. Soto challenges the City's enforcement of the Defacement Statute.  Letter from Sundaresan at Ex. 1 (Letter from Attorney General's Office).

CITY'S RESPONSE TO NO. 42:

Undisputed.

43.     The City contends that the Defacement Ordinance is presumptively valid as a matter of law and that the City's enforcement of the Defacement Ordinance is lawful.  City's Answer at pp. 8-9.

CITY'S RESPONSE TO NO. 43:

Undisputed.

44.     The City contends that the Defacement Statute is presumptively valid as a matter of law and that the City's enforcement of the Defacement Statute is lawful.  City's Answer at pp. 8-9.

CITY'S RESPONSE TO NO. 44:

Undisputed.

45.     Based on the City's continued position that its policy of enforcing the Defacement Ordinance and Defacement Statute against Ms. Soto's conduct of placing flyers on parked cars is lawful, Ms. Soto has a reasonable apprehension that the City will punish her if she carries on her leafleting activities.  Am. Compl. at ¶¶ 39, 53.

CITY'S RESPONSE TO NO. 45:

**Disputed**. The Plaintiff's actions do not evidence a reasonable apprehension that the City will punish her if she carries on her leafletting activities. Plaintiff engaged in leafleting activities later the same day she was advised of the prohibition of posting flyers on motor vehicles. Aylesworth Decl., Exhibit "D". In addition, Plaintiff admitted that she has continued to place 1,200 to 1,400 flyers on cars since she filed this lawsuit. Prussia Decl., Exhibit B (Soto's Responses to RFA), January 15, 2015, at No. 12).

46.     The City's purported interest in enforcing the Defacement Statute is to "control []
defacement of property, altering of property, or placement of articles on person's property or
public property [without] permission to do so."  Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr.
148:4-11).

CITY'S RESPONSE TO NO. 46:

Undisputed.

47.     The City contends that the Defacement Ordinance as applied and on its face is
constitutional and does not violate Soto's First Amendment rights under the Federal Constitution
or her rights under the Massachusetts Declaration of Rights.  City's Answer at p. 9.

CITY'S RESPONSE TO NO. 47:

Undisputed.

48.     The City contends that the Defacement Statute as applied and on its face is
constitutional and does not violate Soto's First Amendment rights under the Federal Constitution
or her rights under the Massachusetts Declaration of Rights.  City's Answer at p. 9.

CITY'S RESPONSE TO NO. 48:

Undisputed.

49.     The City contends that Soto's flyers are "advertisements" and constitute
commercial speech.  City's Answer at p. 9.

CITY'S RESPONSE TO NO. 49:

**Disputed**. The City agrees that the Plaintiff's flyers do not constitute commercial speech.
<u>See</u> Amended Answer at ¶ 38.

50.     The City's sole basis for determining that Soto's leafleting violates the
Defacement Ordinance is the City's 1994 Opinion Letter.  Prussia Decl., <u>Exhibit F</u> (City's

30(b)(6) Tr. 57:8–59:11).

CITY'S RESPONSE TO NO. 50:

**Disputed**. The Plaintiff factual assertion mischaracterizes the testimony cited. The 1994

Opinion Letter informed the City's position that the Ordinance prohibited the posting of flyers

on cars.  Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 59:6-11).

51.     The City's sole basis for determining that Soto's leafleting violates the

Defacement Statute is the City's 1994 Opinion Letter.  Prussia Decl., Exhibit F (City's 30(b)(6)

Tr. 122:5-123:9).

CITY'S RESPONSE TO NO. 51:

**Disputed**. The Plaintiff factual assertion mischaracterizes the testimony cited. The 1994

Opinion Letter informed the City's position that the Statute prohibited the posting of flyers on

cars. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 123:4-9).

**IV.     The City's Interpretation of The Defacement Ordinance and Defacement Statute**

52.     The Defacement Ordinance prohibits the "post[ing]" or "attach[ing]" of "any

handbill, poster, advertisement or notice . . . on private property" without the consent of the

owner or occupant.  Am. Compl. at Ex. 1 (Defacement Ordinance Text).

CITY'S RESPONSE TO NO. 52:

Undisputed.

53.     The City concedes that the Defacement Ordinance does not explicitly prohibit

leaflets from being placed on automobiles.  Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 58:15-

21); *see* Am. Compl. at Ex. 1 (Defacement Ordinance Text).

CITY'S RESPONSE TO NO. 53:

**Disputed**. The City does not concede that the Ordinance does not explicitly prohibit leaflets from being placed on automobiles. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 58:1-13). The City agrees that the words "automobiles" or "leaflet" do not appear in the text of the Ordinance. Aylesworth Decl., <u>Exhibit A</u> (Amended Ordinance).

54.     According to the City, the terms "post" and "attach" as they are used in the Defacement Ordinance means to affix or place an advertisement, a handbill or a poster advertisement onto an object with the use of an adhesive, such as glue, tape, or staples, so that the paper will remain on the object.  Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 54:19–55:15).

CITY'S RESPONSE TO NO. 54:

**Disputed**. The Plaintiff factual assertion mischaracterizes the testimony cited. The term "attach" means "placing an advertisement, a handbill, or poster advertisement onto a fixed object." Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 54:19-55:5).

55.     The Defacement Statute prohibits, with respect to any "object which is public property or the property of another,"  "paint[ing]," "put[ting] upon" or "affix[ing] "any . . . advertising or notice which is not required by law to be posted" without first obtaining the consent of the property owner.  Am. Compl. at Ex. 2 (Defacement Statute Text).

CITY'S RESPONSE TO NO. 55:

Undisputed.

56.     The City concedes that the Defacement Statute does not explicitly prohibit leaflets from being placed on automobiles.  Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 122:22-123:3); *see* Am. Compl. at Ex. 2 (Defacement Statute Text).

CITY'S RESPONSE TO NO. 56:

**Disputed**. The City does not concede that the Statute does not explicitly prohibit leaflets from being placed on automobiles. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 122:5-18). The City agrees that the words "automobiles" or "leaflet" do not appear in the text of the Statute. M.G.L. c. 266, § 126.

57.     According to the City, "put[ting] upon" as it is used in the Defacement Statute means to affix an object to property with an adhesive of fastener.  Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 121:4-122:4).

<u>CITY'S RESPONSE TO NO. 57</u>:

**Disputed**. The Plaintiff factual assertion mischaracterizes the testimony cited. The City 30(b)(6) representative testified that "putt[ting] upon" means employing any of a number of methods of holding an object in place, not only with an adhesive or fastener. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 122:1-4).

58.     The City Council is the policy setting arm of the City that provides input and analysis on major policy issues impacting the City.  Prussia Decl., <u>Exhibit H</u> (Screenshot of Cambridge City Council's Website as of March 15, 2015).

<u>CITY'S RESPONSE TO NO. 58</u>:

**Objection**. The phrase "policy setting arm" and "policy" generally is vague, confusing and immaterial and is therefore not admissible. Moreover, Plaintiff's assertion is one of law, not fact and is without legal basis as it is the City Manager that is charged with the "faithful execution of the laws of the commonwealth and [the City's] ordinances…." The City of Cambridge is governed by a Plan E form of government, pursuant to M.G.L. c. 43, § 93. M.G.L. c. 43, § 97 states that the City Council "shall have and exercise all the legislative powers of the city." However pursuant to M.G.L. c. 43, § 103, the City Manager is the "chief administrative

officer of the city and shall be responsible for the administration of all departments…" and the

City Manager is the "chief conservator of the peace within the city; to supervise the

administration of the affairs of the city; *to see that within the city the laws of the commonwealth*

*and the ordinances, resolutions and regulations of the city council are faithfully executed*; and to

make such recommendations to the city council concerning the affairs of the city as may to him

seem desirable…."

59.     During a public City Council Ordinance Committee meeting on June 18, 2014, a

member of the City Council stated that "the City Council wants to amend the ordinance

[because] if a leaflet is on a windshield or a doorstep . . . [the Defacement Ordinance] does not

apply."  Prussia Decl., Exhibit I (June 18, 2014 City Council Meeting Minutes at Bates COC

448).

CITY'S RESPONSE TO NO. 59:

Undisputed.

60.     At the conclusion of the June 18, 2014 Ordinance Committee Meeting, the

Ordinance Committee voted to refer the matter for review to the full City Council to decide

whether the Defacement Ordinance should be repealed, amended to clarify that leafleting is not

prohibited, or deemed not to apply to noncommercial leafleting.  Prussia Decl., Exhibit I (June

18, 2014 City Council Meeting Minutes at Bates COC 452).

CITY'S RESPONSE TO NO. 60:

Undisputed.

61.     When asked by the City Council whether the Defacement Ordinance interferes

with freedom of speech, the City Solicitor stated that "it is not appropriate to interpret the

legality of the ordinance at this time."  Prussia Decl., <u>Exhibit I</u> (June 18, 2014 City Council

Meeting Minutes at Bates COC 448).

CITY'S RESPONSE TO NO. 61:

**Disputed**. The Plaintiff factual assertion mischaracterizes the evidence cited. The City

Council did not ask if the Ordinance interfere with the "freedom of speech." A member of the

Ordinance Committee asked "how does freedom of speech *interface* here?" Prussia Decl.,

<u>Exhibit I</u> (June 18, 2014 City Council Meeting Minutes at Bates COC 448).

**V.      The City's Lax Enforcement of the Defacement Statute and Defacement Ordinance
         Against Individuals Who Place Flyers on Parked Cars**

62.     The City has failed to show that it has ever issued a citation to any individual or

business for placing leaflets on parked cars pursuant to the Defacement Ordinance.  Prussia

Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 67:17-22).

CITY'S RESPONSE TO NO. 62:

**Disputed**. The Plaintiff's factual assertion mischaracterizes the testimony cited. The

City's Commissioner of Police testified that he was unaware of any citations being issued during

his tenure. The City has enforced the Ordinance on numerous occasions. Prussia Decl., <u>Exhibit F</u>

(City's 30(b)(6) Tr. 65:18 – 67:16); *see also* Prussia Decl., <u>Exhibit M</u>.

63.     The City has never issued a fine to any individual or business for placing leaflets

on parked cars pursuant to the Defacement Ordinance.  Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6)

Tr. 68:15-18).

CITY'S RESPONSE TO NO. 63:

Undisputed.

64.     The City has failed to show that it has ever issued a citation to any individual or business for placing leaflets on parked cars pursuant to the Defacement Statute.  Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 128:4-130; 154:23-156:8).

CITY'S RESPONSE TO NO. 64:

**Disputed**. The Plaintiff's factual assertion mischaracterizes the testimony cited. The City's Commissioner of Police testified that he was unaware of any citations being issued during his tenure. The City has enforced the Ordinance on numerous occasions without the issuance of a citation or a fine. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 128:4-130).

65.     The City has never issued a fine to any individual or business for placing leaflets on parked cars pursuant to the Defacement Statute.  Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 130:17-20).

CITY'S RESPONSE TO NO. 65:

Undisputed.

66.     Since 2002, the Cambridge Police Department has received 27 complaints regarding leafleting, at an average rate of 2-3 complaints per year.  Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 63:17-64:22, 155:23-156:8).

CITY'S RESPONSE TO NO. 66:

Undisputed.

67.     Vincent Best is a Compliance Officer for the City of Cambridge's Public Works Department.  Prussia Decl., Exhibit J (Deposition of Vincent Best Tr. ("Compliance Officer Dep."), September 24, 2014, at 10:18–12:10); Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 52:15-22).

CITY'S RESPONSE TO NO. 67:

Undisputed.

68.     The City Compliance Officer is the only City employee responsible for enforcing the Defacement Ordinance.  Prussia Decl., <u>Exhibit J</u> (Compliance Officer Tr. 53:12-54:4); Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. at 24:8-15).

<u>CITY'S RESPONSE TO NO. 68</u>:

**Disputed**. The City' police officers are also City employees responsible for enforcing the ordinance. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. at 40:18-23).

69.     As the sole employee responsible for enforcing the City Ordinance, the City Compliance Officer understands when the Defacement Ordinance applies.  Prussia Decl., <u>Exhibit F</u> (City's (30)(b)(6) Tr. 62:11-23).

<u>CITY'S RESPONSE TO NO. 69</u>:

**Disputed**. Mr. Best is not the City's Compliance Officer—he is a Compliance Officer for the City's Department of Public Works. Prussia Decl., <u>Exhibit J</u> Compliance Officer Tr., at 10:18–12:10); Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 52:15-22).The City' police officers are also City employees responsible for enforcing the ordinance. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. at 40:18-23).

70.     According to the City Compliance Officer, the Defacement Ordinance does not apply to leaflets placed on parked cars.  Prussia Decl., <u>Exhibit J</u> (Compliance Officer Tr. 26:22 – 28:4).

<u>CITY'S RESPONSE TO NO. 70</u>:

**Objection**. The opinion of a lay witness as to an ultimate issue in a matter is not admissible evidence. **Disputed**. The Plaintiff's factual assertion mischaracterizes the testimony cited. Mr. Best testified that he is not aware of whether the ordinance applies "in situations

21

where people place flyers on cars." Prussia Decl., <u>Exhibit J</u> (Compliance Officer Tr. 26:22 –

27:1).

71.    When the City Compliance Officer sees leaflets on parked cars, he does not issue

a citation, warning or notify anyone regarding the placement of these leaflets.  Prussia Decl.,

<u>Exhibit J</u> (Compliance Officer Tr. 29:7-19, 30:17-23).

CITY'S RESPONSE TO NO. 71:

**Disputed**. The Plaintiff's factual assertion mischaracterizes the testimony cited. Mr. Best

testified that *in the past* he has not issued a citation, warning or notification regarding the

placement of leaflets on parked cars. Prussia Decl., <u>Exhibit J</u> (Compliance Officer Tr. 29:7-19,

30:17-23).

72.    The City Compliance Officer is unaware of any other employee in the Public

Works Department who has issued a citation or a warning to anyone for violating the

Defacement Ordinance due to placing flyers on parked cars.  Prussia Decl., <u>Exhibit J</u>

(Compliance Officer Tr. 30:24 – 31:10).

CITY'S RESPONSE TO NO. 72:

Undisputed.

73.    According to the City Compliance Officer, the Defacement Ordinance applies

only to leaflets illegally placed on news racks, poles, trees, park bulletins, utility poles, and

benches.  Prussia Decl., <u>Exhibit J</u> (Compliance Officer Tr. 23:17 – 26:21).

CITY'S RESPONSE TO NO. 73:

**Objection**. The opinion of a lay witness as to an ultimate issue in a matter is not

admissible evidence.

74.     The City Compliance Officer explained that the Defacement Ordinance prevents "the posting of signs on public property."  Prussia Decl., <u>Exhibit J</u> (Compliance Officer Tr. 23:17-24).

CITY'S RESPONSE TO NO. 74:

**Objection**. The opinion of a lay witness as to an ultimate issue in a matter is not admissible evidence. **Disputed**. The Ordinance does not "prevent" the posting of signs. The Ordinance speaks for itself where it prohibits the posting of signs on public property without the consent of the City Manager and on private property without the consent of the owner. Aylesworth Decl., <u>Exhibit A</u> (Amended Ordinance).

75.     In practice, the City does not enforce the Ordinance against people who place flyers on parked cars.  Prussia Decl., <u>Exhibit J</u> (Compliance Officer Tr. 29:7-19, 30:17-23); *see* Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 67:17-22).

CITY'S RESPONSE TO NO. 75:

**Disputed**. The City enforces the Ordinance against people who place flyers on parked cars. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 65:4-17).

76.     In response to Soto's document requests, the City produced all documents concerning every instance in which the City has enforced or threatened to enforce the Ordinance. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 152:5-16, 155:17-156:7); *see* <u>Exhibit K</u> (City's Responses to Soto's Requests for Production of Documents ("City's Responses to RFPs"), August 4, 2014, at No. 7).

CITY'S RESPONSE TO NO. 76:

Undisputed.

23

77.     In response to Soto's request for every instance in which the City enforced or threatened to enforce the Defacement Ordinance, the City produced the following category of documents: (1) emails in which the City Compliance Officer notified individuals who used an adhesive or other bonding agent to post flyers on poles, benches, park bulletins, news racks, trees, and/or utility poles that they violated the Defacement Ordinance, (2) police incident reports that involved individuals who taped, glued, or stapled posters to buildings, trees, and other objects; (3) police incident reports regarding individuals who trespassed onto private property to post flyers on buildings and residences or to place commercial leaflets on cars parked on private lots; and (4) police incident reports concerning either harassment or suspicious activity that indirectly involved the distribution or posting of leaflets.  Prussia Decl., Exhibit L (Bates No. COC 114-171 ("Police Reports")), Exhibit M (Bates No. COC 172-351 ("Compliance Officer Emails")).

CITY'S RESPONSE TO NO. 77:

Undisputed.

78.     The City also produced documents that concerned individuals or businesses posting flyers secured by an adhesive onto City property or trespassing onto private parking lots to distribute flyers on parked cars.  Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 92:10-22, 96:4-20, 99:2-24, 103:1-21); *see e.g.,* Prussia Decl., Exhibit L (Police Reports at Bates COC 126-27, 136-37, 148-49, 152-53, ), Exhibit M (Compliance Office Emails at Bates COC 178-79).

CITY'S RESPONSE TO NO. 78:

Undisputed.

79.     The City has failed to provide an example in which the Defacement Ordinance or the Defacement Statute was enforced against an individual for placing a flyer on a car parked on

a public street.  *See* Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 58:15-18, 67:17-22, 128:4-130; 154:23-156:8).

<u>CITY'S RESPONSE TO NO. 79</u>:

**Disputed**. The Plaintiff's factual assertion mischaracterizes the testimony cited. The City has enforced the Ordinance and Statute by informing individuals that they are in violation with those law without issuing citations or fines to those individuals. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 130:1-10).

80.     The City has not provided an example in which it enforced the Defacement Statute in any context.  Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 128-130).

<u>CITY'S RESPONSE TO NO. 80</u>:

**Disputed**. The Plaintiff's factual assertion mischaracterizes the testimony cited. The City has enforced the Statute be informing individuals that they are in violation with those law without issuing citations or fines those individuals. Prussia Decl., <u>Exhibit F</u> (City's 30(b)(6) Tr. 130:1-10).

<div style="margin-left: 40%;">

Respectfully submitted,

Defendant,
CITY OF CAMBRIDGE
By its Attorney,


/s/ Samuel A. Aylesworth_____
Samuel A. Aylesworth (BBO #645057)
Asst. City Solicitor
Law Department – City Hall
795 Massachusetts Avenue
Cambridge, MA 02139
(617) 349-4121
saylesworth@cambridgema.gov

</div>

DATED:     May 29, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be mailed to those indicated on the NEF as non-registered participants on or before May 29, 2015.


/s/ Samuel A. Aylesworth