# EXHIBIT

## B



C. C. 106

# City of Cambridge

## Ordinance Committee Members
**Vice Mayor Benzan, Co-Chair**
**Councillor Carlone, Co-Chair**
**Councillor Cheung**
**Councillor Kelley**
**Councillor Mazen**
**Councillor McGovern**
**Councillor Simmons**
**Councillor Toomey**
**Mayor Maher**

## In City Council June 30, 2014

## Meeting Type
- Public hearing

## Meeting Purpose
- The Ordinance Committee will discuss revisions to the Cambridge Municipal Code Section 9.04.050 (A) Defacing public property of Chapter 9.04 entitled "Offenses Against Property".

## Meeting Details
- **Date and Time:** Wednesday, June 18, 2014 at 5:48 PM
- **Location:** Sullivan Chamber

## Attendees
- **Present**

  Vice Mayor Benzan, Co-Chair, Councillor Carlone, Co-Chair, Councillor Mazen, Councillor Toomey, Richard Rossi, City Manager, Deputy Superintendent of Police Jack Albert, Deputy Superintendent of Police Joe Wilson, Nancy Glow, City Solicitor, Mike Connolly, Aide to Councillor Carlone and Donna P. Lopez, City Clerk.

## Other Attendees

John Hawkinson, 84 Mass. Avenue, Bill Cunningham, 6 Newtowne Court, Thaila Sundaresan, Wilmer Hale, 60 State Street, Boston, MA, Stephen Helfer, 3 Crawford Street, Paula F. Soto, 243 Broadway, Tsuki Hoshijima, 60 State Street, Boston, MA and James Williamson, 1000 Jackson Place.

## Minutes
- Vice Mayor Benzan convened the meeting at 5:48 PM and stated the purpose.

5

• He stated that the meeting is being recorded with audio and visual devices. He stated that the City Staff will be the heard first.

Vice Mayor Benzan requested a brief background. City Solicitor Nancy Glowa stated that this ordinance was referred to the Ordinance Committee to review whether the ordinance should be amended regarding the leafleting of cars. There is a pending law suit. The question before the City Council is whether the City Council would like to amend the ordinance to regulate this activity or any other activity. A copy of the ordinance is attached (ATTACHMENT A).

Vice Mayor Benzan asked the City Council for their comments.

Councillor Carlone asked Ms. Glowa if this could be viewed as a public service announcing movies. How does freedom of speech interface here? Ms. Glowa stated that it is not appropriate to interpret the legality of the ordinance at this time.

Councillor Mazen stated that he feels that the City Council wants to amend the ordinance. If amended posting and attaching is different than placing. If a leaflet is on a windshield or on a doorstop he felt that this ordinance does not apply. He asked if the language needs to be changed.

Councillor Toomey asked for clarification. He asked if posters include political literature. Councillor Mazen stated that he thinks political literature is excluded.

Ms.Glowa stated that if the ordinance is unclear and you want to include or exclude activities to be regulated by the ordinance it is proper to do so. Ms. Glowa stated that historically there were a lot of postings on public and private property including utility poles and this was the background of the enactment of the ordinance.

Councillor Mazen stated that he is not interpreting the ordinance. He is not sure that the ordinance should be amended to include free speech or to allow posting of certain things and leave out the issue of freedom of speech. It is better to discuss how it is affixed. City Manager Rossi stated that if the City Council clarified the ordinance it is better for the police to enforce. The Police are trying to enforce the ordinance.

Councillor Mazen stated that he wanted a conversation about the implementation of the ordinance.

Vice Mayor Benzan stated that the City Council needs guidance about how best to amend this ordinance. He wanted to understand the intent of implementation of the ordinance. He is hearing that the ordinance was proposed to prevent the postings on poles, etc. If the intention was to prohibit leafleting on cars this should be stated in the ordinance. Ms. Glowa responded that once an ordinance is enacted it must be enforced and this is the job of the Police Department. She further stated that if the City Council gives direction on how they want to amend the ordinance the Law Department will provide the language and any legal advice needed.

Vice Mayor Benzan stated that with the pending litigation he does not feel he can ask the questions that he wants to ask. There are important questions to be asked on this matter. His colleagues believe in the First Amendment and when freedom of speech is at issue he wants to

understand why it is important to enforce this activity and why it is not laid out in the ordinance. Ms. Glowa stated that the legislative intent may be in the record of the City Clerk's minutes. This is a presumptively valid law and it will be enforced. There is no provision that the police may not enforce the ordinance.

Mr. Rossi stated that it would be best to go back and research the records. There were incidents that paraphernalia was glued to poles. In Cambridgeport things were nailed to poles. We do not want our police to decide what a good is or a bad ordinance. They have to enforce all the ordinances. If the City Council feels it is too broad or too restrictive you can change the ordinance. You may want to revisit the history of this ordinance. *Subsequent to the meeting research was done for the 1992 Ordinance. On January 31, 1992 a communication was received from Carl Barron, Putnam Furniture, complaining of the litter associated with posting of flyers. He asked the city to resolve this matter. On March 26, 1992 the proposed amendment to the Municipal Code appeared as an Agenda Item. On March 26, 1992 the proposed ordinance was passed to a second reading by the City Council. On May 11, 1992 the ordinance was passed to be ordained by vote of 7 - 0 - 2.*

Councillor Toomey stated that he was on the City Council in 1992 when it enacted. The public was outraged about the posting of handbills on trees and poles. The city was unsightly. Postings were put up and not taken down. If we return to those days the City Council will hear from resident who are not happy about this. He urged his colleagues to look to see why the ordinance was brought in. He would not vote to repeal this ordinance.

Councillor Carlone stated that he was breaking the law when he tried to post something. He stated it makes sense not to post things on trees and poles. He is talking about refinement, not repeal. This could be refined to say that community-oriented meetings could be posted in select locations. Kiosks in the City at main intersections could be sites to post this type of thing. Some people put things on windshields. Dana Park and Sennott Park may be key points.

Mr. Rossi stated that there have been cases, in community interest; if the ordinance process was followed a cardboard sign would be tied to a tree, as long as the procedures in the ordinance were followed. He spoke about the community bulletin board around the city. If done properly and in accordance with the ordinance it can be done. The City Manager has given approval for a posting for community meetings. It is put up and then removed.

Vice Mayor Benzan asked about putting a poster up for a lost dog and if he posted this in the neighborhood and asked for a reward, how would it be handled. He asked the police for their input in this situation. What would police do if the police station is called? Deputy Superintendent Wilson stated that if a complaint was received for a violation of the ordinance demanding that the police take action he would call the person who posted the poster and explain the ordinance. Vice Mayor Benzan asked the time frame if the owner of the lost dog got permission from the City Manager. Mr. Rossi responded that if the request were put in writing and if the public promises not to use staples, glue or nails location it would be approved. It only takes a matter of day.

Vice Mayor Benzan asked how many complaints the police have received. Deputy Superintendent Wilson stated that responses were based on calls from citizens. Deputy Superintendent Albert

stated that he had a complaint at the Hilary Clinton book signing where postings were put up and he asked them to be taken down.

Vice Mayor Benzan stated that this is dealing with posting on cars and it is not addressed in the ordinance. He asked Councillor Toomey if the issue of posting on cars was discussed in 1992. Councillor Toomey stated that there were   all types of free advertisements posted and it became so cumbersome and such an eyesore for the city. This was a litter issue.

Councillor Mazen agreed that the ordinance not be repealed not knowing what happened in 1992. He stated that all art communities have postings. He wants to believe there is a solution for public posting, but wants to stay away from the freedom of speech zones. There should be more bulletin boards in the city. He wants to amend 9.04.0 A to move productively. Should language be formulated about community literature that does not cause a litter problem?

Councillor Toomey stated the issue of the squares could be addressed to have kiosks and to allow posting. He did not want trees or light poles used for posting. If the City wanted to install kiosks this may be a solution.

Vice Mayor Benzan asked since enactment of the ordinance how many challenges have there been. Ms. Glowa responded the one that is pending.

Councillor Carlone suggested a long term solution for kiosks at key locations and that the Central Square Business Association ("CSBA") act as an overseer to clean up. He suggested that the person who posts be responsible to remove the posting and that the posting have the name and address of the person posting. He stated that there must be rules about inappropriate content.

Vice Mayor Benzan stated that from a public safety perspective he would rather the police enforce laws that pose a threat to people. In this case we have an order that is clear to some and not to others. This challenge is that leafleting cannot be placed on cars. If it is unconstitutional to put leaflets on cars then an alternative should be made. His concern is to develop good policy to refine the ordinance. He will ask if there are similar challenges and whether they were upheld in court. He feels that this puts him in an awkward position because he cannot ask these questions. He does not feel he can ask for guidance in this.   Ms. Glowa stated that this case is pending in federal district court. There is no consensus in the courts if this is constitutional or not. Ms. Glowa stated that the Law Department stands ready to assist the City Council. She suggested that the City Council focus on the policy that the City Council would like to enact. She would provide advice on any approach or if the City Council wants to convene an Executive Session to discuss pending litigation that would also be permissible.

Councillor Mazen stated that the City Council is being asked to change the ordinance. If leafleting cars is permitted what impact does this have? We do want to protect free speech. This should be allowed and what is the cost and can the cost be mitigated. Mr. Rossi stated that this would cause the police to say that this is not allowed and the City would be responsible to keep the streets clean. This is a tough question to ask. This is a policy decision that the City Council has to make and the police may not be able to enforce. Some people may feel that a car is private property. If the ordinance is amended in that way the police will not enforce. Councillor Mazen stated that if the avenue of free speech is opened, maybe this needs to be explored and the litter issue may outweigh the ordinance. Mr. Rossi stated that an ordinance could be enacted with a

sunset clause and the law will end on a certain date and then reenact versus a permanent ordinance.

Vice Mayor Benzan stated that he is not sure that there is interest to prohibit this free speech to keep the streets clean.  Prohibiting leafleting of cars is to prevent littering and he is not sure that this is compelling to prevent free speech.  Mr. Rossi commented that litter is a byproduct of posting.  It is not the most compelling reason to amend.  He would be interested in the legality and whether this is a burden or not.  Street festivals cause litter and the city accepts this.  He would look at what is legal and how are the constituents in the community reacting to the ordinance.

Councillor Carlone stated he does remember the litter; it is night and day and much better now.  It is compelling to him to create community.  Criteria and regulations can be established.  He stated that 8 1/2 X 11 posters on poles that needs to be removed is less paper than leafleting.  The ordinance can be amended to focus on the arts and community.  He encouraged considering the combined proposal.  Councillor Toomey asked who will regulate what can go on poles.  Councillor Carlone stated that posting can be done with permission.  Ms. Glowa stated that with the permission of City Manager notices can be placed on public property.  Mr. Rossi gave examples of yard sales, postings where all businesses and residents are invited.  The City would give permission to community groups to do this.

Councillor Toomey stated that if the City Council wants to repeal the ordinance - repeal it.  Councillor Mazen stated that he does not want to repeal the ordinance.  He wants an addendum to address the issue.  What type of posting is okay and is there a way to not overly burden the city.  How does the public balance cost and benefits?  The kiosk takes care of the litter and we can move past the question.

Vice Mayor Benzan stated that the issues are complicated and when curtailing free speech it needs to be viewed carefully.  He spoke about the need to decide what can be posted.  He hoped to go into executive session to discuss this more.  Any decision made must take into account the public good and benefit.

At 6:55 P.M. public comment began.

Thalia Sundaresan, Attorney at WilmerHale who stated that WilmerHale and the ACLU jointly represent Paula Soto.   She submitted written testimony **(ATTACHMENT B)**.  She explained that Ms. Soto was stopped by a police officer on December 12, 2011 while she was leafleting cars and told that she could not leaflet cars and that she was littering.  The ACLU reached out to the city to resolve the matter without litigation.  The ACLU sent the city several court decisions that struck down similar city ordinances prohibiting leafleting.  She stated that Ms. Soto has public support for her work where she hosts free documentary film screening at the community room of her apartment building every month.  She stated that the language in the ordinance does not prohibit objects being placed on cars.  She offered three possible solutions and requested the City Council to consider them.  She stated that the language in the ordinance denotes "permanency."  Since Ms. Soto's leaflets can be removed and does not permanently deface property the simplest solution would be that the ordinance does not apply to this type of leafleting and to train police officers to this.  The second solution is to repeal this ordinance.  The third option is to amend the ordinance to prohibit commercial leaflets.  She stated that former City Solicitor wrote an opinion

5

that posting commercial flyers o n cars was prohibited by the ordinance. The ordinance has not been applied to non-commercial leafleting. No person should post a commercial leaflet. She stated that the city has refused to suspend the ordinance until the suit is settled and now ask the Ordinance Committee to resolve the matter so that Ms. Soto can leaflet without fear of being fined or stopped by a police officer.

PF Soto, 243 Broadway stated that littering is everywhere. She has never seen her flyers on the street. She is a citizen of Cambridge and a larger world. Her government is responsible for horrendous abuses. She would prefer not doing what she is doing. This is shortsighted and what goes on at the national level impact the local level. She spoke about propaganda. This is why she does what she does. She has a rich emotional and social life. What the US does has an impact on the whole world. She suggested keeping ordinance as is but include education.

James Williamson, 1000 Jackson Place stated that PF Soto's works should be cherished. She is under resourced and maybe she could have an advertisement in the subway. He wanted the city to help Ms. Soto publicize her work. He stated that information should be included about the timing for permission by the City Manager. All the City Council would be in violation of this ordinance for the political paraphernalia. He thinks that the ordinance is unconstitutional as written. He spoke about selective enforcement. He stated that he attended a meeting that was posted on a lamp pole which was posted by Senator Jehlen. He spoke about the lobbying of the Yellow Pages. He considered this more problematic than the leafleting. He spoke about the BZA signs go up on private property and are not taken down. He spoke about the bus shelters being used as public billboards. He favored the public kiosks.

John Hawkinson, 84 Mass. Avenue, stated that as a matter of process he wanted the public comment portion opened early. He wanted to understand the criminal penalty and non criminal penalties. Judge Deen expressed interest in seeing the documentation of this meeting and this is relevant to the pending suit. You cannot just look at the language. The practice needs to be look at. He wanted the City Council to look at the freedom of speech issue.

Vice Mayor Benzan asked what the pleasure of the City Council is.

Councillor Mazen thanked Ms. Soto. He agrees with her work and applauds it. He was swayed most by the majority of the circuit courts. What do we tell people when the nuisance is on the windshield? Nuisance is not an excuse. He suggested option one and three from public comment. The ordinance may not apply to leafleting. This is the most expedient way to go forward.

Vice Mayor Benzan asked what the pleasure of the City Council is to amend the ordinance.

Councillor Mazen stated that he wanted the language in section 9.04.050 (A) to not apply to leaflets, but prohibits commercial leafleting.

Councillor Toomey preferred repealing the ordinance. He felt that you cannot differentiate between commercial and non-commercial leafleting. He stated that he preferred repeal, but would not vote to repeal the ordinance.

Councillor Carlone stated that he understands the potential and one could say elements of the public good and benefits can be posted through a process with specification.

Councillor Mazen spoke on leafleting in a specific way and it is a form of protected free speech. This may open this up for further challenge.  What was suggested sounded fair and legally required.

Vice Mayor Benzan stated that he wanted to refer the ordinance to an executive session to discuss the options presented, the case law and the legislative intent information.  Ms.Glowa stated that under the Open Meeting Law the body can discuss pending litigation in Executive Session of discussion of the pending litigation in open session would be detrimental to the City's legal position.  She stated that the court is awaiting the action of the City Council.

Vice Mayor Benzan made the following motion:

**ORDERED:  That the matter of revisions to the Cambridge Municipal Code Section 9.04.050 (A) Defacing Public Property be referred to the full City Council  to discuss the three options below and to further request that the City Manager be and hereby is requested to direct the City Solicitor to provide language and guidance as to how the City Council could amend the ordinance based on the following options:**

1. **Ordinance does not apply leafleting;**
2. **Repeal the ordinance; and**
3. **Ordinance prohibits commercial leaflets.**

The motion carried on a voice vote of four members.

Vice Mayor Benzan  thanked all attendees.

## Adjournment
On motion of Councillor Carlone the hearing adjourned at 7:29 PM.

For the Committee,

Vice Mayor Dennis Benzan, Co-Chair

Councillor Dennis Carlone, Co-Chair
Ordinance Committee

*Attachment A*

## Chapter 9.04

## OFFENSES AGAINST PROPERTY

**Sections:**

9.04.010    Vandalism, destruction of property and other related offenses.
9.04.020    Injuring or destroying public or private property.
9.04.030    Trespassing on public property.
9.04.040    Construction of fences--Dangerous materials.
9.04.050    Defacing public property.
9.04.060    Sale of certain paints and markers.
9.04.070    Throwing objects in streets or on bridges.
9.04.080    Skateboarding Prohibited on City Property

**Section 9.04.010      Vandalism, destruction of property and other related offenses.**

A.      No person shall willfully and maliciously, intentionally and without right:

1.      Break down, injure, remove or destroy a monument erected for, or tree marked for, the purpose of designating the boundaries of a town or of a tract or lot of land, or a milestone, mileboard or guideboard erected upon a public way or railroad, or deface or alter the description of any such stone or board;

2.      Mar or deface a building or signboard, or extinguish a light, or break, destroy or remove a lamp, lamp post, railing or post erected on a bridge, sidewalk, public way, court or passage;

3.      Deface or otherwise injure, remove, interfere with or destroy any traffic regulating sign, light signal, marking or device lawfully erected or placed under public authority on any public way;

4.      Or wantonly and without cause, destroy, deface, mar or injure a schoolhouse, church or other building erected or used for purposes of education or religious instruction, or

for the general diffusion of knowledge, or an outbuilding, fence, well or appurtenance of such schoolhouse, church or building, or furniture, apparatus or other property belonging thereto or connected therewith;

5.      Or wantonly and without cause, destroy, deface, mar or injure any playground apparatus or equipment located in a public park or playground;

6.      Destroy, injure, deface or mar a dwelling house or other building, whether upon the inside or outside;

7.      Mar or injure the wells, wainscoting or any other part of a courthouse, or any other building or room used for county business or any building belonging to the Commonwealth or any building belonging to the City or the appurtenances thereof, by cutting, writing or otherwise;

8.      Maliciously remove, display, destroy, deface, mar or injure any monument, tablet or other device erected to mark an historic place or to commemorate an historic event.

B.      Whoever violates any provision of this section in the presence of a police officer authorized to serve criminal process and the identity of such person is unknown to the officer, such person may be arrested by such officer and detained in a safe place without a warrant until his identity is ascertained. Reasonable diligence shall be exercised by the arresting officer in ascertaining the identity of the offender and when identified he shall be released from arrest unless a warrant was issued against him. If the offender is known to the police officer, he shall seek a complaint in court against such offender.

C.      The organization(s) responsible for the distribution of posters or flyers with an intention that they be posted in violation of this section shall be responsible for the immediate removal of such posters or flyers and the names of organization(s) named on illegally posted posters or flyers shall be forwarded to the appropriate area businessmen's association so that the association may notify such organization that such acts are prohibited by City ordinance.

D.      Upon conviction under this section, it is shown that the act committed was a first offense, and if the person makes restitution

to the party injured, the justice of the district court may continue the case without finding. (Ord. 1092 (part), 1989; Ord. 964, 1981: prior code § 13-20)

### Section 9.04.020       Injuring or destroying public or private property.

A.      No person shall, without proper authority, paint on, write on, or otherwise injure, deface, destroy or vandalize any public building or any public or private property.

B.      Any person who violates this section shall be subject to a fine of three hundred dollars. (Ord. 1049 § 1, 1987: prior code § 13-2)

### Section 9.04.030       Trespassing on public property.

A.      No person shall trespass on the roof of a public building or within a school building after regular school hours without the prior permission of a duly authorized public official.

B.      At least two signs shall be posted on all public buildings with not less than one inch letters, not more than ten feet, and not less than six feet from the ground, black letters on white background as follows:

**City of Cambridge**
No Trespassing and
No Defacing of this public building.
Violators will be prosecuted to the
full extent of the law.
**City Manager**

C.      Any person who violates any provision of this section shall be subject to a fine of not more than one hundred dollars for the first offense, not more than two hundred dollars for the second offense and not more than three hundred dollars for subsequent offenses. (Ord. 1049 § 2, 1987: prior code § 13-3)

### Section 9.04.040       Construction of fences--Dangerous materials.

No person shall erect or maintain anywhere in the City a fence equipped with or having razor wire or razor ribbon. Nor shall any person erect or maintain a fence equipped with

or having barbed wire, spikes or other dangerous materials, or any electric charge sufficient to cause shock, within ten feet of the ground level. (Ord. 1009, 1984: prior code § 13-17A)

### Section 9.04.050       Defacing public property.

A.      No person shall post or attach, or directly or indirectly cause to be posted or attached in any manner, any handbill, poster, advertisement or notice of any kind on public property except by permission of the City Manager or his designee, or on private property without the consent of the owner or occupant thereof.

B.      Any handbill or sign found posted or otherwise affixed on any public property contrary to the provisions of this section may be removed by the Police Department or the Department of Public Works or the Inspectional Services Department.

C.      The person or persons responsible for causing the unlawful posting of any notice described herein will be liable for the cost of removal and for the penalties described below. Persons liable under this section include, but are not limited to, any individual, corporation, partnership or other organization whose advertisement, message or information appears on the unlawfully posted notice.

D.      Any person who violates this section shall be subject to a fine of three hundred dollars. Each illegally posted notice, advertisement, poster or sign shall be considered a separate violation of this section, and a separate offense shall be deemed committed on each day during or on which a violation of this section occurs or continues.

E.      As an alternative to the penalty set forth in subsection D, whoever violates any provision of this section shall be penalized by a noncriminal disposition as provided in G.L., c. 40, §21D. For purposes of this section, the following officials shall be enforcing persons: Cambridge Police Officers and designated staff of the Cambridge Department of Public Works and the Inspectional Services Department.

Then noncriminal penalty for the first violation of this section shall be twenty-five dollars; for the second violation, one hundred

dollars; and for the third and all subsequent violations, two hundred dollars. (Ord. 1138, 1992)

### Section 9.04.060          Sale of certain paints and markers.

A.          No person shall, within the City, sell, display, expose or keep for sale any aerosol spray paint can, or any marker containing a fluid which is not water soluble and which has a point, brush, applicator or other writing surface in excess of one-half inch, unless at the point of display or sale there is posted a sign with letters not less than one and one-half inches in height bearing the following words:

Sale of spray paint and broad indelible markers to persons under eighteen and the unlawful purchase or possession of paints and such markers by persons under eighteen is punishable by a three hundred dollar fine.

nor shall any person sell or deliver any aerosol spray paint, or any marker containing a fluid which is not water soluble and which has a point, brush, applicator or other writing surface in excess of one-half inch to any person under eighteen years of age or to any person of whatever age who refuses to submit for inspection if requested a driver's license, liquor purchase identification or other identification to establish the age of such person, nor shall any person being under the age of eighteen purchase, conceal or remove from the premises such items; providing, that nothing in this section shall prevent the parent, guardian, employer or teacher of such a minor person from delivering such items to a minor intending the same to be lawfully used.

B.          Any person who violates this section shall be subject to a fine of three hundred dollars. (Ord. 1049 § 3, 1987: prior code § 13-21)

### Section 9.04.070          Throwing objects in streets or on bridges.

No person shall play ball or throw a stone or other missile in any street, or upon or from any bridge. (Prior code § 13-16)

### Section 9.04.080          Skateboarding Prohibited on City Property

A.   "Skateboard" is defined for purposes of this ordinance as a non-motorized vehicle consisting of a long footboard between two sets of wheels, with steering controlled by weight distribution.

B.   "Skateboarding" is defined as one or more people being on a skateboard while the skateboard is moving.

C.   Skateboarding is hereby prohibited on City property, except that skateboarding shall be permitted in city-owned and designated skateboard parks or other areas designated by the City.

D.   Each violator of this ordinance may be fined up to fifty ($50.00) dollars for each offense.   Enforcement of this section may be by non-criminal disposition as provided by M.G.L. c.40, §21D.   Police officers shall be the enforcement personnel.
(1278, Added, 08/02/2004)

*Attachment B*

Thaila Sundaresan
WilmerHale
60 State Street, Boston, MA 02109

### Talking Points for May 18, 2014 Ordinance Committee Meeting – for the record

- Good evening. My name is Thaila Sundaresan and I am an attorney at WilmerHale. WilmerHale and the American Civil Liberties Union of Massachusetts jointly represent PF Soto in her lawsuit against the City of Cambridge.

- As you know, Ms. Soto is a long-term Cambridge resident who founded a small volunteer group called UpandOUT, that raises awareness about important social and political causes that are not discussed in mainstream media.

- One of the group's key activities is a free documentary film screening that Ms. Soto hosts in the community room of her apartment building every month. Ms. Soto promotes these screenings by placing leaflets on parked cars. Other methods of outreach—such as mailings or person to person handouts—are expensive, time consuming, and not within Ms. Soto's means.

- On December 12, 2011, Ms. Soto was leafleting cars when she was stopped by a Cambridge police officer. He told her that she could not leaflet cars and that she was littering.

- After this encounter, Ms. Soto contacted the ACLU, who then reached out to the City to try and resolve this matter **without resorting to litigation**. The ACLU sent the City several court decisions that have **struck down** similar city ordinances that have prohibited leafleting. But the City insisted that it had an ordinance against such leafleting and that it would continue to enforce it against our client. It was only then that Ms. Soto reluctantly filed her lawsuit.

- As you all heard at the May 5th City Council meeting, Ms. Soto has significant support from the local community for her work. At that last meeting, 14 people spoke on her behalf and discussed the valuable public service that Ms. Soto provides with her film screenings. Not a single person spoke against her activities. Many recognized the importance of the First Amendment and its protection for peaceful expression.

- The Ordinance in question is entitled Defacing Public Property 9.04.050. The language, in relevant part, reads, "No person shall post or attach . . . any handbill, poster, advertisement or notice of any kind on public property. . . or on private property without the consent of the owner or occupant thereof." Note that the Ordinance does not explicitly prohibit objects from being placed on cars.

- We ask that the Ordinance Committee consider three potential options for resolving this matter:

- **First**, the Committee can simply determine that this Ordinance does not apply to Ms. Soto's leafleting. The dictionary definition of "defacing" property is to "ruin the surface or mar the appearance of something." Other cities that have defacement ordinances have

Thaila Sundaresan
WilmerHale
60 State Street, Boston, MA 02109

applied them in situations when the action in question results in a **permanent** alteration of property. For example, a defacement ordinance in Los Angeles uses words like "paint" "mark" and "write" because the ordinance's concern is with activities like graffiti, which permanently alter property. *See Los Angeles Municipal Code* § 28.04.

- The Cambridge Defacement Ordinance uses language such as "post" and "attach" which are also words that connote permanence. The legal definition of "post" is to "affix", which means to "add to, or fasten on **permanently**." *See Black's Law Dictionary* 712 (9th ed. 2009).

- Ms. Soto's leaflets do not permanently alter property. The flyers can be removed from a car windshield as easily as they can be placed, and the car will look just the same as it did before. Leafleting is thus very different from activities like painting or writing, which result in a permanent defacement. The simplest solution is for the Ordinance Committee to determine that the Cambridge Ordinance does not apply to the type of leafleting that Ms. Soto engages in and to train police officers to that effect. Laws are frequently interpreted in a way to avoid serious constitutional issues.

- The **second** option is to repeal the Ordinance. Three US Circuit Courts of Appeal have struck down similar ordinances that have banned putting leaflets on car windshields as a violation of the First Amendment. These cases have held that the protection of private property is not a sufficiently substantial government interest to justify an across-the-board ban on placing leaflets on car windshields. These courts have also held that other avenues of communication, such as in person solicitation or door-to-door-leafleting, are not adequate alternatives because they are burdensome and resource-intensive. One US Circuit Court of Appeal has upheld such a ban, but the weight of authority is against such restrictions on expression.

- In addition, there are other ways for people to avoid such leaflets. For example, people can simply put a sign on their dashboard saying no leaflets, similar to a no solicitation sign on one's front door or adding one's phone number to a Do Not Call List. The Supreme Court has repeatedly held that "No Solicitation" signs are adequate protections for residents to bar solicitors. If "No Solicitation" signs are adequate protections for residences, they are ample protection for car owners to prevent unwanted solicitation. Accordingly, the Seventh and Ninth Circuits have adopted this approach for leafleting on parked cars.

- The **third** option is one that Councilmember McGovern raised at the May 5th City Council meeting, about whether the Ordinance could be amended to prohibit commercial speech only.

- Over 20 years ago, the then-Cambridge City Solicitor wrote an opinion letter explaining that placing **commercial** flyers on car windshields was prohibited under the Ordinance. Until now, the Ordinance has never been interpreted to apply to non-commercial leafleting.

ActiveUS 129256785v.1

Thaila Sundaresan
WilmerHale
60 State Street, Boston, MA 02109

- Ms. Soto's leaflets indisputably do not constitute commercial speech. She does not earn any money from her activities. Her film screenings are free to the public. In fact, considering the cost of making leaflets and purchasing refreshments and raffle prizes for the film screenings, Ms. Soto actually **loses money** every month from her activities.

- The courts that have struck down similar leafleting ordinances have not made any particular distinction between commercial and non-commercial speech, and we believe that making such a distinction would further complicate matters. However, if the Council wants to make such a distinction, the Council could amend the Ordinance by adding the word "commercial" – as in "No person shall post or attach….any **commercial** handbill, poster, advertisement or notice of any kind . . . " This would be a simple fix, although the Council should be aware that even commercial speech has significant First Amendment protection.

- The final point I want to make is that we have asked the City to suspend enforcement of the Ordinance while this suit is pending and while the City Council is reviewing the Ordinance. Unfortunately, the City has refused to do. We therefore ask the Ordinance Committee to resolve this matter as soon as possible so that Ms. Soto can leaflet without fear of getting fined or stopped by a police officer for exercising her constitutionally protected rights.

- Thank you for your consideration.

MAY 2 8 2015

CERTIFIED COPY

*Donna P. Lopez*
City Clerk

ActiveUS 129256785v.1