**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

PAULA F. SOTO,
Plaintiff,

v. C.A. No. 13-10822-JGD

CITY OF CAMBRIDGE,
Defendant.

**DEFENDANT CITY OF CAMBRIDGE'S OPPOSITION TO PLAINTIFF PAULA F. SOTO'S MOTION FOR SUMMARY JUDGMENT.**[1]

PRELIMINARY STATEMENT

The City of Cambridge (the "City") has a policy of enforcing the laws of the City of Cambridge and the laws of the Commonwealth of Massachusetts. But this lawsuit is not really about a "policy" inasmuch as it is about the validity of a City ordinance that has been amended and a state statute that the City has no power to amend or repeal. These laws are presumed to be valid until and unless they are declared invalid by a court of competent jurisdiction. Pursuant to these laws, specifically M.G.L. c. 266, § 126 (the "Statute") and City of Cambridge Ordinance Chapter 9.04 (the "Ordinance"), the act of placing fliers on parked motor vehicles is a prohibited activity.[2] These laws do not run afoul of the First Amendment to the United States Constitution or Article XVI of the Massachusetts Declaration of Rights, as they further significant governmental

[1] The City reserves its rights at any trial of this matter to dispute any facts that have been asserted by the Plaintiff Paula F. Soto in her Statement of Undisputed Material Facts in Support of Plaintiff Paula F. Soto's Motion for Summary Judgment. Any "undisputed" facts in the City's Response to Plaintiff's Statement of Material Facts are undisputed only for the purpose of the present motion.

[2] Chapter 9.04 was amended on May 18, 2015. Chapter 9.04.050 governing public property was amended and a new Chapter 9.04.051 was enacted governing private property. The latter was amended only to prohibit the placement of commercial speech on private property. Declaration of Samuel A. Aylesworth ("Aylesworth Decl."), Exhibit A.

interests, they are narrowly tailored, and leave available ample alternative channels of communication.

At the outset it is important to note that this is a matter of first impression in the First Circuit. The federal circuits are not in unanimity on the validity of regulating the placement of fliers on cars parked in the public way and each of the cases cited by Soto are distinguishable on the facts and the law as set forth below.

The Ordinance and Statute further the significant governmental interest of preventing visual blight, which has been recognized by the United States Supreme Court and various federal circuit courts of appeal as a valid exercise of a municipality's police powers. These laws also further a significant governmental interest in protecting private property rights as recognized by the federal courts. Jobe v. City of Catlettsburg, 409 F.3d 261, 268 (6th Cir. 2005).

Soto incorrectly asserts that this valid exercise of the City's police powers impermissibly infringes upon her rights under the First Amendment of the United States Constitution and under Article XVI of the Massachusetts Declaration of Rights.[3] The legislative history and testimony of City officials demonstrate that there is a nexus between the posting of fliers on motor vehicles and the significant governmental interest in abating visual blight in the City. The enforcement of these laws is also narrowly tailored to the act of posting materials on private property, not to the act of "handbilling" or "leafleting" as that has been defined by the Supreme Court. Importantly Soto's conduct of placing materials on private property is not "handbilling" or "leafleting" as defined by the Court. The City's enforcement of these laws is narrowly tailored to achieve the governmental

[3] Although the Massachusetts Supreme Judicial Court ("SJC") has held in context of a local measure prohibiting nude dancing that Article 16 of the Massachusetts Declaration of Rights may provide greater rights than those afforded under the First Amendment, Soto has not identified or argued whether that applies here. Mendoza v. Licensing Board of Fall River, 444 Mass. 188, 201(2005). The SJC has generally held that the rights available under the First Amendment and Article 16 are "comparable." First National Bank v. Attorney General, 362 Mass. 570, 586 (1972).

interest of preventing visual blight. Finally, there are ample alternative channels of communication, including "handbilling" or "leafletting" in the areas where Soto's prohibited conduct took place. For these reasons, and those set forth below and in the supporting materials filed herewith, Soto's motion for summary judgment should be denied as the City is entitled to judgment as a matter of law because the challenged Statute and Ordinance are constitutional.

## SUMMARY OF MATERIAL FACTS

The relevant facts underlying this case are set forth in the City's Local Rule 56.1 Defendant City's Response To Plaintiff Paula F. Soto's Statement Of Material Facts In Support Of Plaintiff Paula F. Soto's Motion For Summary Judgment and Defendant City's Further Statement Of Material Facts, filed herewith ("SMF").

## STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any show that there is no genuine issue as to any material fact and that the moving party if entitled to judgment as a matter of law. Fed.R.Civ.P. Rule 56(a). In ruling on a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014).

## ARGUMENT

### I. THE CITY AMENDED ITS ORDINANCE AND THEREFORE SOTO'S CLAIM THAT IT IS CONSTITUTIONAL AS APPLIED IS MOOT.

As noted, *supra*, the City amended the Ordinance to no longer apply to non-commercial speech posted on private property. After discovery the City concluded that Soto's fliers do not constitute commercial speech and therefore Soto's conduct is no longer prohibited under the Ordinance, as amended. As a result the constitutionality of the Ordinance is no longer an issue in

this case. Soto cloaks her challenge to the constitutionality of the Ordinance as a claim that the City has an unconstitutional policy based in part on the City's alleged misinterpretation of the Ordinance and the Statute. To the extent that Soto continues to challenge the City's policy based on its interpretation of the plain meaning of the Statute, the City offers the following arguments.[4]

## II. THE CITY'S POLICY OF ENFORCING THE ORDINANCE AND THE STATUTE AS APPLIED TO SOTO'S CONDUCT IS CONSTITUTIONAL.

### A. The Ordinance and the Statute are Content-Neutral.

It has been clear since the Supreme Court's earliest decisions concerning the freedom of speech that the government may sometimes curtail speech when necessary to advance a significant and legitimate state interest. See Schenck v. United States, 249 U.S. 47, 52 (1919). There are some purported interests—such as the desire to suppress support for a minority party or an unpopular cause, or to exclude the expression of certain points of view from the marketplace of ideas—that are so plainly illegitimate that they would obviously not pass constitutional muster. See Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 804 (1984) ("Taxpayers for Vincent"). The general principle that has emerged from this line of cases is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others. See Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 65 (1983). Soto makes no claim that the City's policy of enforcing the Ordinance or Statute in this case was designed to suppress certain ideas that the City finds distasteful or that these laws have been applied to Soto because of the views she expresses. Moreover, the texts of the Ordinance and Statute are neutral concerning any speaker's point of view.

[4] The City has also filed a Motion under Rule 19(a) for joinder to add the Commonwealth as a party defendant to this action. If the Court proceeds thusly, the necessity of the Commonwealth to defend the statute takes on added importance.

Therefore the appropriate framework for reviewing viewpoint-neutral regulations of this kind is whether the law (1) serves a significant government interest, (2) is narrowly tailored to serve that government interest and (3) whether it leaves open ample alternative channels of communication. See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). Under this level of "intermediate" scrutiny, a law need not be the "least restrictive" means of achieving the government's interest, so long as the interest "would be achieved less effectively absent the regulation." Id. at 798-99. As set forth herein, the City's policy of enforcing the Ordinance and the Statute as applied to Soto's speech meet each requirement of the intermediate scrutiny analysis.

B. The City's Enforcement of the Ordinance and Statute Furthers Significant Governmental Interests.

1. *The City Has A Significant Interest In Reducing Visual Blight*.

It is well settled that the government may legitimately exercise its police powers to advance aesthetic values. See Taxpayers for Vincent, at 805. "The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary." See Berman v. Parker, 348 U.S. 26, 33 (1954). In Kovacs v. Cooper, 336 U.S. 77 (1949), the Court rejected the notion that a city is powerless to protect its citizens from unwanted exposure to certain methods of expression which may legitimately be deemed a public nuisance. In upholding an ordinance that prohibited loud and raucous sound trucks, the Court held that the city had a substantial interest in protecting its citizens from unwelcome noise. Id. at 86-87. In Lehman v. City of Shaker Heights, 418 U.S. 298, 302-304 (1974) the Court upheld the city's prohibition of political advertising on its buses, stating that he city was entitled to protect unwilling viewers against intrusive advertising that may interfere with the city's goal of making its buses "rapid, convenient, pleasant, and inexpensive." In Metromedia, Inc. v. San Diego, 453 U.S. 490, 507-508-510 (1981) the Court held that the city's prohibition of certain forms of outdoor billboards

was constitutional where the city's interest in avoiding visual clutter was sufficient to justify a content-neutral prohibition against the use of billboards; the city's interest in its appearance was deemed to be a substantial governmental goal. In Taxpayers for Vincent, the Supreme Court held that a municipality's interest in prohibiting political speech from public property was a significant government interest; the Court wrote that the municipality's interest in "attempting to preserve [or improve] the quality of urban life is one that must be accorded high respect." Taxpayers for Vincent, at 807.

Soto asserts that it is not within the constitutional power of the City to attempt to improve its appearance ("[a]ssuming that preventing visual blight falls within the category of recognized substantial government interests—and Ms. Soto does not concede this") Soto's Memorandum at p. 8. Yet the Supreme Court, and a number of federal circuit courts of appeal cited by Soto have clearly held that the prevention of visual blight is a significant governmental interest in the context of free speech regulation. Municipalities have a "weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression." Taxpayers for Vincent, at 806. In Jobe v. City of Catlettsburg, 409 F.3d. 261, 268 (6th Cir. 2005), the Sixth Circuit held that visual blight produced by fliers on motor vehicles was a significant governmental interest. See also, Krantz v. City of Fort Smith et al., 160 F. 3d 1214, 1221 (1999)("Nor do we disagree with [City Defendants'] assertion that they may, consistent with prevailing constitutional standards, protect legitimate aesthetic and safety interests…."); Horina v. City of Granite City, Illinois, 538 F.3d 624, 633 (7th Cir. 2008)("We have no quarrel with Granite City's claim that the prevention of litter, intrusion, trespass, and harassment is a substantial government interest."). There is little doubt that visual blight is a significant governmental interest.

a. *The Posting of Fliers on Motor Vehicles is a Source of Visual Blight.*

Some federal courts have held that a municipality has the burden of demonstrating that there is evidence of its significant governmental interest, Horina v. City of Granite City, Illinois, 538 F.3d 624, 633 (7th Cir. 2008), while others have held that "in view of the common-sense explanations for these types of laws, they do not invariably require proof that the problem has occurred in the past." Jobe v. Catlettsburg, 409 F.3d 261, 269 (6th Cir. 2005). In the context of free speech regulation generally, the Supreme Court in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 51 (1986) tempered the level of proof that a municipality must demonstrate when it held that

> the First Amendment does not require a city, before enacting an ordinance, to conduct new studies or produce evidence independent of that already generated in other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.

In Horina, the Seventh Circuit held that an ordinance restricting the distribution of handbills was not a reasonable "time, place and manner" restriction because Granite City failed to put forth *any* evidence for the proffered justification for the speech restriction. ("Here, the experienced district judge correctly concluded that Granite City failed to proffer any evidence showing that handbilling caused litter, intrusion, trespass, or harassment in the City.") Id. at 634.

Even if Soto is correct that "merely asserting an interest is insufficient" to meet the City's burden of demonstrating the existence of a significant governmental interest—which the City does not concede—the legislative history relating to the 1992 amendment of the Ordinance in this case is more than mere assertion and comports with the Seventh Circuit's holding in Horina. That the City can adduce evidence of the justification for the enforcement of the City's policy makes the circumstances in this case distinguishable from the holding in Horina.

The only current City Councilor who served on the City Council in 1992 testified at the Ordinance Committee hearing on June 18, 2014 that public outrage about the posting of fliers

prompted the amendment of the Ordinance in 1992. Aylesworth Decl., Exhibit B (City of Cambridge Ordinance Committee June 18, 2014) Bates COC 449. The profligate posting of fliers in the City made the City "unsightly." Id. The City Councilor also testified that the Ordinance was amended in 1992 to redress not only the posting of fliers on buildings and utility poles, but also cars. Aylesworth Decl., Exhibit B (City of Cambridge Ordinance Committee June 18, 2014) Bates COC 449. In considering whether to amend or repeal the Ordinance, the other City Councilors were urged to remember why the Ordinance was amended in 1992. Id. All of these fliers created "an eyesore for the city." Id.

This testimony is corroborated by the testimony of the City's Police Commissioner Robert C. Haas, the City's Rule 30(b)(6) representative. Commissioner Haas testified that "there was a great deal of anger over the appearance of the Squares, due to the handbills and advertisements that were being posted throughout the business district." Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 30:13-19).

Without legal support for her position Soto argues that the City's purported significant governmental interest is undermined by the lack of any previous instances where the City issued a fine or citation for violations of the Ordinance or the Statute. Soto's Memorandum at p. 8-9. But as Commissioner Haas testified, it was not out of the ordinary for the City's Police Department to issue warnings in an effort to educate the public rather than issue citations or fines for violations of the Statute or Ordinance. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 50:23-51:15); Prussia Decl., Exhibit G (Letter from City Manager to City Council dated March 16, 1992, Bates COC 41).This does not compel the conclusion advanced by Soto that the City does not consider this a significant governmental interest. The setting of priorities for the deployment of law enforcement resources is purely a matter of municipal policy. City of Worcester v. Labor Relations Com'n, 438

Mass. 177, 182 (2002) ("For example, while it may in the past have been common practice for police officers to ignore cases of domestic violence, preferring to treat the subject as a private dispute to be resolved by social service agencies, municipal authorities retained the discretion to adopt a policy of active police intervention in domestic violence case.")

*b. The Prohibition of Posting Fliers on Motor Vehicles Furthers the City's Interest in Prohibiting Visual Blight.*

Soto incorrectly argues that there is no "factual basis for concluding that a cause-and-fact relationship actually exists between" the prohibited conduct and the City's significant governmental interest in preventing visual blight. As the legislative history and testimony above demonstrate, the problems of visual blight in Cambridge were not solely the result of postings only on utility poles, buildings, park benches or privately-owned buildings, but also included parked cars too. Aylesworth Decl., Exhibit B (City of Cambridge Ordinance Committee June 18, 2014) Bates COC 449. Again, to satisfy this burden the City does not need to "produce a panoply of empirical studies, testimony, police records or reported injuries." Horina v. City of Granite City, Illinois, 538 F.3d 624, 633 (7th Cir. 2008), it only needs to proffer some evidence demonstrating that there is a justification for the significant governmental interest. As the Supreme Court held in Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) a law need not be the "least restrictive" means of achieving the government's interest, so long as the interest "would be achieved less effectively absent the regulation." Id. at 798-99. Here, the enforcement of the Ordinance and the Statute as applied to Soto and others represents a "means of achieving the government's interest" that would be achieved less effectively absent" this policy of enforcement.

c. *The City's justification for its policy of restricting posting fliers parked on motor vehicles is based on the plain language of the Statute and the Ordinance.*

The text of both the Statute and the Ordinance (although as amended, the Ordinance does not apply to Soto's conduct) support the City's policy of enforcing these clearly applicable laws. Both laws clearly prohibit placing fliers under a windshield wiper of a parked motor vehicle.[5]

*i. The Statute.*

M.G.L. c. 266, § 126 reads:

> Whoever paints, or puts upon, or in any manner affixes to, any fence, structure, pole, rock or other object which is public property or the property of another, whether within or without the limits of the highway, any words, device, trade mark, advertisement or notice which is not required by law to be posted thereon, without first obtaining the written consent of the municipal or public officer in charge thereof or the owner or tenant of such property, shall, upon complaint of such municipal or public officer, or of such owner or tenant, be punished by a fine of not less than ten nor more than one hundred dollars, and in addition shall forfeit to the use of the public or private owner of such property or the tenant thereof the cost of removing or obliterating such defacement to be recovered in an action of tort.

There can be no real question about the plain meaning of what "put upon, or in any manner affix" means. As Soto correctly cites, a court should look at the plain meaning of the words contained in the statute. Foss v. Com., 437 Mass. 584, 586 (2002) ("When the words of [an enactment] are clear and, when assigned their ordinary meaning, yield a workable and logical result [the Supreme Judicial Court] interprets the statute without resort to extrinsic aids….")

Soto mischaracterizes the testimony of Commissioner Haas to support her assertion that "[a]ccording to the City, "put[ting] upon" as it is used in the Defacement Statute means to affix an object to property with an adhesive or fastener. SMF ¶ 57. In fact, the City does not assert that position in any shape or form. Soto attempts to support this bald assertion by reference to Commissioner Haas' testimony where he stated that putting upon *could* mean using adhesive in the context of attaching something to "fence or a structure or a pole" (but not to a parked car).

Q: Typically how are things affixed to a fence or a structure or a pole?

[5] Presumably, Soto's purpose in advancing these arguments is to avoid having to make facial challenges to these laws because she cannot sustain that burden here.

A: It could be nailed, it could be stapled, it could be taped or it could be glued.
Q: Okay. But so there's usually some type of adhesive?
A: Or some object to hold it in place, yes. Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 121:21-122:4).[6]

To support this claim, there is no admission or statement that Soto can properly refer to.

There is no ambiguity about the meaning of the phrase "put upon." It clearly means what the words in common parlance mean—to place an object upon another object, attaching or affixing it in some fashion. That is what Soto did with her fliers by placing them under the windshield wiper of parked cars and the City's interpretation of the Statute was reasonable and validly supports its enforcement policy.

*ii. The Ordinance*.[7]

The Cambridge Ordinance Chapter 9.04.051 reads:

> A. No person shall post or attach, or directly or indirectly cause to be posted or attached in any manner, any commercial handbill, poster, advertisement or notice of any kind on public property except by permission of the City Manager or his designee, or on private property including without limitations motor vehicles without the consent of the owner or occupant thereof. Aylesworth Decl., Exhibit A.

The same can be said of the plain meaning of the words in the Ordinance as in the Statute. There can be little doubt about the meaning of the words "[n]o person shall post or attach, or directly or indirectly cause to be posted or attached in any manner…"

Soto makes much of the title of the Ordinance ("Defacing public property.") It should be noted that City of Cambridge Ordinance Chapter 1.04.050 expressly provides that

> [a]ll headings or chapters, articles or divisions and all catchlines of sections and subsections are unofficial and intended only for convenience and arrangement and as mere catchwords to indicate the contents of the chapters, articles, divisions, sections and subsections. They shall not be deemed to be part of the contents of the chapters, articles, divisions, section or subsections; nor shall the headings and catchlines later the otherwise intended meaning of any provision of this code.

[6] The Commissioner was not asked how an object may have been "put upon" an automobile.
[7] Chapter 9.04.050 was amended on May 18, 2015 and a new Chapter 9.04.051 which only applies to commercial notices.

By virtue of this section of the City Ordinance, the heading "[d]facing public property" should not inform the Court regarding the meaning or scope of the Ordinance. The heading is "unofficial" and "intended only for convenience."[8]

*d. The City is Not Bound by Department of Public Works Employee's Opinion of the Law.*

Soto mistakenly asserts that the opinion of a non-supervisory employee as to the meaning of an Ordinance, (one of many employees charged with enforcing it), binds the City to his interpretation. Mr. Best is not in a position of authority to bind the City with his interpretation of the law. Moreover, contrary to Soto's assertion, (Soto's Memorandum at p. 13), Mr. Best is not the sole person charged with enforcing the Ordinance—the Department of Public Works, the Inspectional Services Department and the Police Department are all charged with enforcement under the Ordinance. Aylesworth Decl., Exhibit A, Sec. 9.04.051(C); see also Prussia Decl., Exhibit F (City's 30(b)(6) Tr. 40:18-23). The circumstances presented here are in stark contrast to those Soto attempts to invoke support for in Sullivan v. Augusta, 511 F.3d 16, 29 (1st Cir. 2007). There, the affiant was the primary person charged with enforcing the challenged law and he was in a position of greater authority

> That he consulted with superiors and spoke for the City, not just himself, can be inferred from the fact that in the affidavit he purported, under oath, to speak for the City; it is only reasonable to assume that a ranking officer like Gregoire would not have purported to speak for the City in important litigation of this type without first obtaining authorization. While he was not the Police Chief or City Manager, he was the second in command in the Police Department, the agency empowered by the two ordinances to issue both parade and mass outdoor gathering permits, and, subject to the Chief, was in charge of reviewing and acting upon applications to hold parades and marches in Augusta. 511 F.3d, at 29-30.

---

[8] This is in fact common practice with many municipal codes.

Mr. Best, is an employee of the City's Department of Public Works who reports to the City's Superintendent of Streets. Prussia Decl., Exhibit J (Deposition of Vincent Best Tr. ("Best Dep.") Tr. 12:8-21). The Superintendent of Streets is appointed by the City Manager. Aylesworth Decl., Exhibit C (Cambridge Ordinance Chapter 2.54.050). Under the Plan "E" form of government adopted by the City of Cambridge, the City Manager is charged with the "faithful execution of the laws of the commonwealth and [the City's] ordinances…." M.G.L. c. 43, § 93 *et seq*. Pursuant to M.G.L. c. 43, § 103, the City Manager has the authority "to supervise the administration of the affairs of the city…." There is no factual support for the contention that Mr. Best spoke on behalf of the City when he opined that the Ordinance did not apply to fliers placed on parked cars. This was a task delegated to the City's designated a Rule 30(b)(6) representative, not to Mr. Best.

Finally, Soto's attempt to impute the City's enforcement policy to the opinion expressed by a single City Councilor is entirely misplaced and unavailing. The statements of an individual member during the course of legislative deliberations by a public body do not represent the official position of the public body itself. Moskow v. Boston Redevelopment Authority, 349 Mass. 553, 564 (1965).

*2. The City Has A Substantial Interest In Protecting Private Property Rights*.

The City has a significant governmental interest in furthering individuals' interests in having their private property left alone by those who do not have permission to use it. Jobe v. City of Catlettsburg, 409 F.3d 261, 268 (6th Cir. 2005). Allowing individuals to decide for themselves how, when or whether their private property is used either for a public advertisement (e.g. the affixing of a poster to a car) or as a container for an advertisement (e.g., placing a leaflet under the car windshield wipers) is a legitimate, if not compelling, government interest. Id. Citing Lloyd

Corp. v. Tanner, 407 U.S. 551, 570 (1972) ("It would be an unwarranted infringement of property rights to require them to yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist. Such an accommodation would diminish property rights without significantly enhancing the asserted right of free speech.")

Both the Statute and the Ordinance evidence an intent to protect private property rights. ("Whoever paints, or puts upon, or in any manner affixes to, any fence, structure, pole, rock or other object which is public property or the property of another….") M.G.L. c. 266, § 126. The Ordinance states that "no person shall post or attach, or directly cause to be posted or attached in any manner, any commercial handbill, poster, advertisement or notice of any kind on any private property including without limitations motor vehicles without the consent of the owner or occupant thereof." City of Cambridge Ordinance Chapter 9.04.051(A). As the City's representative testified, the City's interest in enforcing the Defacement Statute is to control the placement on person's property or public property without permission of the owner. SMF ¶ 46.

C. The City's Enforcement of the Ordinance and the Statute as Applied to Soto's Conduct is not Substantially Broader than Necessary to Protect the City's Interest in Eliminating Visual Blight and is Narrowly Tailored to Serve the City's Interest.

1. *Soto's Activity is not Handbilling or Leafletting.*

It is true that the aesthetic interest in preventing the kind of litter that may result from the distribution of leaflets on the public streets and sidewalks cannot support a prophylactic prohibition against the citizen's exercise of that method of expressing her views. In Schneider v. State, 308 U.S. 147 (1939) the Court held that ordinances that *absolutely* prohibited handbilling on the streets were invalid. The Court explained that cities could adequately protect the esthetic interest in avoiding litter without abridging protected expression merely by penalizing those who actually litter. Id. at 162.

But the holding in Schneider is not applicable to Soto's conduct of placing fliers on parked cars. "Handbilling" or "leafletting" as that activity has been interpreted by the Supreme Court means

> to tender the written material to the passerby who may reject it or accept it, and who thereafter may keep it, dispose of it properly, or incur the risk of punishment if he lets it fall to the ground. See Taxpayers for Vincent, at 810.

In ruling that the prohibition of the posting signs that contain non-commercial messages was constitutional the Supreme Court distinguished that conduct from "handbilling"--

> The rationale of Schneider is inapposite in the context of the instant case. In Schneider, individual citizens were actively exercising their right to communicate *directly* with potential recipients of their message. The conduct continued only *while the speakers and distributors remained on the scene*. In this case, appellees posted dozens of temporary signs throughout the area where they would remain unattended until removed. Taxpayers for Vincent at 809; see also Horina v. City of Granite City, Illinois, 538 F.3d 624, 632 (2008) ("Granite City's argument raises interesting questions as to whether placing handbills on privately owned automobiles and unoccupied buildings are activities that fall under the traditional definition of handbilling.")

The City's enforcement based on the Ordinance and the Statute does not prohibit "handbilling" or "leafletting." Indeed there is no mention in those laws that specifically refers to that conduct. The conduct that Soto engaged in violated the prohibition against the placing of notices on the property of another without the consent of the owner. The act of placing fliers on unoccupied motor vehicles is similar to the prohibited conduct in Taxpayers for Vincent. Neither the Ordinance, the Statute or the City's policy in enforcing those laws prohibit Soto from engaging in the activity of "handbilling" or "leafletting", i.e. standing in public way and offering the notices to passersby as that activity has been defined by the Supreme Court.

Soto admits that her intent was to use privately-owned motor vehicles as her own personal billboards and that her purpose in placing fliers on parked cars has little do with delivering her message to the owners of those vehicles. In an email dated December 15, 2011 produced by Soto—

> having cars is like having lots and lots of billboards; we angle the fliers for the passersby – not the car owner and yes, several people have told me – even guiltily – that they saw a flyer on a car and … took it (good for them; there's still more cars out there). (Emphasis supplied). Aylesworth Decl., Exhibit D (Soto December 15, 2011 Email).

As the Sixth Circuit held "parking a car on a public street is not an invitation to place literature on the car or, worse, to become a vehicular sandwich board for another citizen's message of the day." Jobe v. City of Catlettsburg, 409 F.3d 261, 271 (6th Cir. 2005). Yet this is precisely what Soto admits to doing and what she argues is constitutionally protected activity. Prussia Decl., Exhibit B, p. 6. Soto also refused to deny that she places fliers on motor vehicles so that they are viewed by pedestrians passing parked motor vehicles and not the owners of the automobiles. Prussia Decl., Exhibit B, p. 5. Soto's conduct can scarcely be described as an attempt "to communicate directly with potential recipients" of her message. Taxpayers for Vincent at 809.

*2. The Ordinance and the Statute are Narrowly Tailored to Serve the City's Interests*.

To satisfy the "narrowly tailored" test established by the courts, the restriction "need not be the least restrictive or least intrusive means of serving the government's interest," but it also may not "burden substantially more speech than is necessary to further" that interest. Ward, at 798-99. A regulation that impinges on speech will fall only if it is "substantially broader than necessary" to protect the state interest. Taxpayers for Vincent at 808. The incidental restriction on expression which results from the government's attempt to accomplish such a purpose is considered justified as a reasonable regulation of the time, place or manner of expression if it is narrowly tailored to serve that interest. See Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 647-648 (1981).

The City's enforcement of the Ordinance and Statute advances these interests in a narrow and constitutional way. As in Taxpayers for Vincent, where Los Angeles banned the posting of signs on public property, 466 U.S. at 791 the "substantive evil" at issue—visual blight there—

> is not merely a possible by-product of the activity, but is created by the medium of expression itself. In contrast to Schneider, therefore, the application of the ordinance in this case responds precisely to the substantive problem which legitimately concerns the City. The ordinance curtails no more speech than is necessary to accomplish its purpose. Id. at 810.

Here, visual blight is caused by the "medium of expression itself," the posting of fliers on the private property of another. The City's enforcement of the Statute and the Ordinance (prior to its amendment) was narrowly tailored to remedy this "substantive evil."

Soto argues that the existence of laws regarding trespass and litter present the City with alternative ways to further its significant governmental interest in avoiding visual blight. However, Soto is incorrect that these laws would be available to the City as none of these laws apply to the posting of fliers on cars parked on public streets.

M.G.L. c. 266, § 120 only prohibits one from entering or remaining in, without right, the dwelling house, buildings, boats or improved or enclosed land, wharf or pier of another, after having been forbidden to do so by one with lawful control of the property. None of the City's interests in prohibiting visual blight on parked cars in the public way is addressed by this statute as motor vehicles parked on the public street are clearly not delineated within its purview. The same holds true for the City's trespass ordinance. [9] Aylesworth Decl., Exhibit E (City's Trespass Ordinance).

As mentioned previously, the City's significant government interest here is not littering (although littering might comprise a smaller subset of visual blight), so the state statute and City ordinance relating to the prohibition of littering are not relevant. Aylesworth Decl., Exhibit F

---

[9] However, if Soto is arguing that her conduct occurs on publicly-owned property, to which this ordinance applies, the City reserves the right to argue that the City's regulation of Soto's conduct is a "reasonable regulation" under the public forum doctrine. International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672 (1992).

(City's Littering Ordinance). They do not provide the City with alternative avenues to regulate of the prohibited conduct.

D. <u>The Ordinance and the Statute Leave Open Ample Alternative Channels of Communication for Soto.</u>

Finally, the City's enforcement of the Ordinance and the Statute leave open ample alternative channels of communication of Soto's message, including leafletting. <u>Ward v. Rock Against Racism</u>, 491 U.S. at 791 (1989).

The City's enforcement of the Ordinance and Statute do not touch her right to engage in leafletting activities as that conduct has been recognized by the courts—offering handbills to pedestrians and giving them the choice to take the handbill or leave it. <u>Taxpayers for Vincent</u>, 466 U.S. at 809-810 ("The [leafletting] right recognized by <u>Schneider</u> is to tender the written material to the passerby who may reject it or accept it, and who thereafter may keep it, dispose of it properly, or incur the risk of punishment if he lets it fall to the ground.") In fact, Soto admitted that she engaged in actual leafletting immediately after she was instructed to stop posting fliers on motor vehicles. Aylesworth Decl., <u>Exhibit G</u>.

The City's enforcement of these laws does not prohibit Soto from exercising her right to distribute literature in the same place where the ban on placing fliers on private property exists—namely by waiting in a parking lot or a street and asking the owners of the car whether they would like a leaflet or a sign for their car. By any measure, the City's enforcement allows Soto to distribute her fliers in an inexpensive, efficient and productive manner. <u>Jobe v. City of Catlettsburg</u>, 409 F.3d 261, 270 (6th Cir. 2005). The City's enforcement does not prohibit Soto from going door-to-door to talk to residents about the message they wish to share. The City's enforcement also does not prohibit Soto from leaving fliers at private residences. The City's enforcement also does not prohibit Soto from using any or all of the City's thirty-one (31) bulletin

boards located in parks throughout the City. Aylesworth Decl., Exhibit G. (Communication to the City Council from City Manager Richard C. Rossi dated January 5, 2015).

Moreover, the City's enforcement does not preclude other avenues Soto may take advantage to distribute her messages to the public. In fact, Soto already takes advantage of emailing notices to activist lists, posting in the windows of Cambridge business, posting in Cambridge parks, on the radio, community newspapers and online generally. Aylesworth Decl., Exhibit I; see also Aylesworth Decl., Exhibit J ("I always advertise on wicked local, boston.com, email groups and the like….").

CONCLUSION

For all these reasons, the City respectfully requests that the Court deny Soto's motion for summary judgment.

Respectfully submitted,

Defendant,
CITY OF CAMBRIDGE
By its Attorney,

/s/ Samuel A. Aylesworth_________________
Samuel A. Aylesworth (BBO #645057)
Asst. City Solicitor
Law Department – City Hall
795 Massachusetts Avenue
Cambridge, MA 02139
(617) 349-4121
saylesworth@cambridgema.gov

DATED: May 29, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be mailed to those indicated on the NEF as non-registered participants on or before May 29, 2015.

/s/ Samuel A. Aylesworth