# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAULA F. SOTO, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CAMBRIDGE, <br><br> Defendant. | Civil Action No. 1:13-cv-10822-JGD |

### REPLY MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT CITY OF CAMBRIDGE'S OPPOSITION TO PLAINTIFF PAULA F. SOTO'S <u>MOTION FOR SUMMARY JUDGMENT</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    I.    Ms. SOTO'S AS APPLIED CHALLENGE TO THE CITY'S UNCONSTITUTIONAL RESTRICTION ON HER FIRST AMENDMENT ACTIVITY IS NOT MOOT ....................................................... 2

    II.    THE CITY HAS FAILED TO SHOW THAT ITS POLICY OF RESTRICTING MS. SOTO'S FIRST AMENDMENT ACTIVITY SURVIVES SCRUTINY UNDER THE TIME, PLACE AND MANNER ANALYSIS ................................................................................................... 3

        A.    Protecting Private Property from Unauthorized Use and Preventing Visual Blight are Not Substantial Interests Recognized by Courts in This Context ................................................................................. 4

        B.    The City Fails to Show that Restricting Ms. Soto's Leafleting Activity Serves Its Asserted Interests in Curbing Visual Blight or Protecting Property Rights ................................................................... 5

            1.    The City's inability to point to a single instance in which it has enforced its policy further undercuts its argument that its policy serves its purported governmental interests ................ 7

        C.    The City Fails to Prove that Its Policy is Narrowly Tailored to Advance the City's Purported Interests ................................................. 10

        D.    The City's Policy Fails to Provide Ample Alternatives for Ms. Soto to Reach Her Targeted Audience .................................................. 11

CONCLUSION .................................................................................................................... 12

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*,
    485 U.S. 568 (1988) ...................................................................................................9

*Horina v. The City of Granite City*,
    538 F.3d 624 (7th Cir. 2008) .........................................................................3, 4, 5, 12

*Jobe v. City of Catlettsburg*,
    409 F.3d 261 (6th Cir. 2005) .....................................................................................5

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009) ............................................................................ passim

*Krantz v. City of Fort Smith*,
    160 F.3d 1214 (8th Cir. 1998) ..........................................................................3, 5, 10

*Martin v. City of Struthers*,
    319 U.S. 141 (1943) ..................................................................................................10

*Massachusetts Fair Share, Inc. v. Town of Rockland*,
    610 F. Supp. 682 (D. Mass. 1985) ............................................................................10

*Ocasio v. City of Lawrence, Mass.*,
    788 F. Supp. 99 (D. Mass. 1992) ..............................................................................2

*Ramsey v. City of Pittsburgh*,
    764 F. Supp. 2d 728 (W.D. Pa. 2011) ............................................................3, 4, 11

*Robinson v. Town of Kent*,
    835 F. Supp. 2d 1 (S.D.N.Y. 2011) ...................................................................3, 6, 7

*Schneider v. State*,
    308 U.S. 147 (1939) ....................................................................................................3

*Traditionalist Am. Knights of the KKK v. City of Cape Girardeau, Mo*,
    897 F. Supp. 2d 824 (E.D. Mo. 2012) ........................................................................3

*United States v. Grace*,
    461 U.S. 171 (1983) ....................................................................................................6

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. amend. I ................................................................................................ passim

**STATE STATUTES**

Mass. Gen. Laws Chapter 266 § 126 ...................................................................................................1, 9

Mass. Gen Laws Chapter 270 § 16 ................................................................................................ passim

**LOCAL ORDINANCES**

CAMBRIDGE, M.A., CODE § 8.24.010 ................................................................................................11

CAMBRIDGE, M.A., CODE § 9.04.050A ................................................................................................1

CAMBRIDGE, M.A., CODE § 9.04.051 ........................................................................................... passim

CAMBRDIGE, M.A., CODE § 12.08 ......................................................................................................11

**PRELIMINARY STATEMENT**

The City's Opposition makes clear that it still takes the position that Soto will be subject to arrest or fines if she places noncommercial leaflets on parked automobiles. This position—whether characterized as a policy or as an interpretation of a City ordinance or state law—threatens Soto's constitutionally protected speech rights and thus warrants granting summary judgment.

Citing a recent amendment made in response to this lawsuit, the City appears to concede that its Ordinance does ***not*** prohibit Soto's leafleting activity. *See* Defendant City of Cambridge's Opposition to Paula F. Soto's Motion for Summary Judgment (hereinafter "City Opp.") Exhibit A, Dkt. 68 (Ordinance No. 1367, Final Publication of CAMBRIDGE, M.A., CODE § 9.04.050A and CAMBRIDGE, M.A., CODE § 9.04.051); *see also* City Opp., Dkt. 66, at 3("[Ms.] Soto's conduct [of placing noncommercial flyers on cars parked on public streets] is no longer prohibited under the Ordinance as amended."). Accordingly, there is no Cambridge law that could justify fining Soto for, or otherwise preventing her from, conducting this leafleting. Yet the City persists with its view that a state Statute, M.G.L. c. 266 § 126, contains an enforceable prohibition against Soto's leafleting.[1] The City's view is incorrect, both because the Statute does not prohibit Soto's leafleting and because the Statute would be unconstitutional even if it did. With respect to statutory interpretation, the City cannot point to a single instance where the Statute, which prohibits ***defacement***, has been contorted to prohibit the placement of *loose paper* on parked vehicles. The City fails to point to anything other than its own bare interpretation of the Statute—nothing in the legislative history of the Statute, nothing in the

---

[1] Despite conceding that Ms. Soto's conduct is "no longer prohibited under the Ordinance," the City also seems to argue that its policy is based on the amended Ordinance. City Opp. at 3, 4. Those two positions are impossible to square.

regulations, nothing in the case law, and no instances of enforcement. The City simply has nothing to support its position. With respect to the constitution, the City fares no better. It fails to show a substantial government interest in support of its policy as applied to Ms. Soto and no genuine issue as to any material fact remains; therefore, this Court should grant summary judgment in Ms. Soto's favor. Indeed, courts across the country have struck down similar enforcement policies as unconstitutional. The same should be true here.

## ARGUMENT

**I.   MS. SOTO'S AS APPLIED CHALLENGE TO THE CITY'S UNCONSTITUTIONAL RESTRICTION ON HER FIRST AMENDMENT ACTIVITY IS NOT MOOT**

The City is correct that the constitutionality *of the Ordinance* "is no longer an issue in this case." City Opp. at 3. But that fact does not moot this case because Ms. Soto is challenging the City's prohibition on her leafleting activity, and that prohibition remains. Despite the City's admission that "[Ms.] Soto's conduct is no longer prohibited under the Ordinance, as amended," it proceeds to argue in the remainder of its brief that its *policy* is still in effect. City Opp. at 3. Accordingly, the constitutionality of the City's policy continues to be a live issue in this case. *See Ocasio v. City of Lawrence, Mass.*, 788 F. Supp. 99, 100 (D. Mass. 1992) (finding the "necessary adverseness" where the city maintained that its policy was "in effect").[2]

---

[2] Further, simply because the City recently amended its Ordinance such that its policy is no longer supported by the Ordinance—the act that gave rise to Ms. Soto's constitutional claim occurred in December 2011 (*i.e.*, when the prior City Ordinance was in effect). *See Ocasio*, 788 F. Supp. at 100 (rejecting the city's mootness argument despite the city's termination of the policy because plaintiff's damages claims required decision on the policy's constitutionality).

## II. THE CITY HAS FAILED TO SHOW THAT ITS POLICY OF RESTRICTING MS. SOTO'S FIRST AMENDMENT ACTIVITY SURVIVES SCRUTINY UNDER THE TIME, PLACE AND MANNER ANALYSIS.

Ms. Soto's First Amendment activity is constitutionally protected leafleting or handbilling. The City's argument to the contrary in its Opposition is incorrect,[3] inconsistent with the City's discovery responses in this case, and nothing more than an attempt to evade the force of a line of cases all of which strike down unconstitutional policies restricting leafleting activities like that here. *See Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) (placing loose paper on parked cars constitutes "leafleting" or "handbilling"); *Horina v. The City of Granite City*, 538 F.3d 624 (7th Cir. 2008) (same); *Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir. 1998) (same); *Traditionalist Am. Knights of the KKK v. City of Cape Girardeau, Mo*, 897 F. Supp. 2d 824 (E.D. Mo. 2012) (same); *Ramsey v. City of Pittsburgh*, 764 F. Supp. 2d 728 (W.D. Pa. 2011) (same); *Robinson v. Town of Kent*, 835 F. Supp. 2d 1 (S.D.N.Y. 2011) (same). For example, in *Krantz*, the activity at issue involved "placing handbills . . . [on] unattended parked cars." The court held that such activity constituted "leafleting" or "handbilling." 160 F.3d at 1216 ("the effect of the ordinances . . . can be construed as a limitation on handbilling activities, and . . . handbilling is an expressive activity protected by the First Amendment[.]")

Although the City attempts to characterize Ms. Soto's activity as something other than "leafleting" or "handbilling," that is mere semantics. As the City concedes, Ms. Soto's activity constitutes noncommercial speech because she places leaflets on cars for the purpose of

---

[3] The Court in *Members of City Council of City of Los Angeles v. Taxpayers for Vincent* never limited or defined the act of "handbilling" or "leafleting" to hand-to-hand distribution as the City claims. *See* 446 U.S. 789, 809-10. Rather, the Court, in determining whether the scope of the restriction was substantially broader than necessary to further the government's interest in preventing visual blight, distinguished both the activity and government's interest in *Schneider v. State*, 308 U.S. 147 (1939) with that of the appellees in *Taxpayers for Vincent*. *Id.*

communicating ideas. *See* City Opp. at 3.[4]  As such, the constitutionality of the City's restriction of Ms. Soto's protected expression is governed by the "time, place, and manner" analysis that applies to content-neutral restrictions on speech. *See Klein*, 584 F.3d at 1201.  Accordingly, the City's policy can survive scrutiny only if the City shows that its policy (1) serves a substantial government interest, (2) is narrowly tailored to advance that interest, and (3) leaves open ample alternative channels of communication for Ms. Soto to express her message.[5]  *Horina*, 538 F.3d at 631.  The City has failed to meet its burden on all three prongs.

> A. **Protecting Private Property from Unauthorized Use and Preventing Visual Blight are Not Substantial Interests Recognized by Courts in This Context**

As an initial matter, the City's assertion that it has a substantial interest in protecting private property from unauthorized use has been rejected by other courts.  The same should be done here.  In *Klein*, the City of San Clemente argued that its restriction prohibiting individuals from placing leaflets on cars parked on public streets furthered its substantial interest in protecting "an individual's right to decide how and when their private property will be used." 584 F.3d at 1204.  The Ninth Circuit rejected that argument and held:

> just as the protection of private property is not a sufficiently substantial government interest to justify an across-the-board ban on door-to-door solicitation, so ***that interest cannot suffice to justify an across-the-board ban on placing leaflets on the windshields of empty vehicles parked on public streets***.

*Id.* at 1205 (emphasis added); *see also Ramsey v. City of Pittsburgh*, 764 F. Supp. 2d at 733 ("Because the Supreme Court has held that the protection of private property was not a sufficiently substantial government interest to justify a ban on door-to-door solicitation at private

---

[4] *See* Prussia Decl. Exhibit F (Haas Dep. 122:5-13) (Admitting that "placing fliers on car windshields" constitutes "leafleting.")

[5] The parties do not dispute that the City's policy is content-neutral, the fourth element of the time, place and manner analysis. *Horina*, 538 F.3d  at 631.

4

homes, *the protection of private property interests cannot justify the City's ban on placing leaflets on the windshields of vehicles parked on public streets*.") (emphasis added).

Further, courts have rejected the argument that a government restriction on the type of leafleting at issue here furthers a substantial interest in preventing visual blight. In *Klein*, the court explained that curbing visual blight is a "weak" substantial interest where the leaflets are being placed on cars that are temporarily parked on public streets and can be readily removed from the windshields. 584 F.3d at 1201 n.4 (contrasting the facts in *Taxpayers for Vincent*, where the individuals were attaching signs to *permanently* situated utility poles such that the government indeed had a substantial interest in curbing the visual blight). Similarly, here, the City's purported interest of curbing visual blight should be rejected because Ms. Soto's leaflets are "not permanently present on the streets, nor are the leaflets permanently affixed to the cars." *Id.*

> **B.    The City Fails to Show that Restricting Ms. Soto's Leafleting Activity Serves Its Asserted Interests in Curbing Visual Blight or Protecting Property Rights.**

Even assuming the City's purported interests are substantial, that is not enough to justify its enforcement policy. Rather, as held by a majority of the circuit courts that have considered similar restrictions on the time, place, and manner of leafleting vehicles parked on public streets, the City must show that "a cause-and-effect relationship actually exists between the placement of handbills on parked cars and [the City's purported interests]." *Krantz*, 160 F.3d at 1221-22 (rejecting City's argument that its restriction served its purported government interest); *Horina*, 538 F.3d at 633 (the City must come forward with more than simply a "common-sense" rationale; it must adduce facts supporting a causal nexus). *See also Klein*, 584 F.3d at 1203-04 (rejecting the lower evidentiary standard used in *Jobe v. City of Catlettsburg*, 409 F.3d 261 (6th Cir. 2005), and following the subsequently-issued rulings by the Seventh and Eighth circuits

requiring that a city provide evidence to show its substantial interests are being served by the restriction). The nexus requirement under the second prong is no different than the required showing by a governmental entity in any other time, place, and manner analysis. *See United States v. Grace*, 461 U.S. 171, 177 (1983) ("the government may enforce reasonable time, place, and manner regulations as long as the restrictions 'are content-neutral, are narrowly tailored ***to serve a significant government interest***, and leave open ample alternative channels of communication.'") (citation omitted).

The City fails to carry its burden here because it has not adduced any evidence that there is a nexus between its enforcement policy and its asserted interests of protecting property rights and preventing blight. There simply is no evidence that placing noncommercial leaflets on parked cars causes the problems that the City asserts. *See Robinson*, 835 F. Supp. 2d at 6 (finding that the town failed to provide sufficient documentary or testimonial evidence to show that its interests justify its restriction on leafleting vehicles where the only evidence the town provided were "generalizations about the Town's littering problem," and "conclusory statements" that "its citizens should be able to decide whether their private property may be used as a container for a public advertisement [.]").

Like *Robinson*, the City only provides "generalizations" and "conclusory statements" about the City's substantial interests. The City has failed to provide the necessary "documentary or testimonial evidence to show that its interests justify its restriction." *Robinson*, 835 F. Supp. 2d at 6. Simply declaring it so, which is all the City has done,[6] is not enough. For example, in *Robinson*, the court found that the town failed to carry its burden of showing that its restriction

---

[6] *See* City Opp. at 6 ("There is little doubt that visual blight is a significant governmental interest."); City Opp. at 14 ("the City's interest in enforcing the Defacement Statute is to control the placement on person's property or public property without permission of the owner.").

was justified when the town failed to provide any evidence, including "that Town citizens have objected to their cars being used as vessels for political leafleting." 835 F. Supp. 2d at 6-7; *see Klein*, 584 F.3d at 1203 ("Noticeably absent from the City's argument, however, is any claim that the type of leafleting engaged in by Klein significantly increases the [problem the City is purportedly interested in targeting]."). Here, beyond irrelevant legislative history regarding an ordinance that no longer applies to Ms. Soto's conduct,[7] the City fails to produce any "sufficient documentary or testimonial evidence" to show that its interests in curbing visual blight and protecting private property further serves its policy of restricting Ms. Soto's noncommercial leafleting activity. *Robinson*, 835 F. Supp. 2d at 6.

Finally, the most recent amendment to the Ordinance—which explicitly excludes Soto's noncommercial leafleting—undermines the City's claim that its policy of prohibiting noncommercial leafleting to curb visual blight and protect private property rights is supported by the Ordinance.

> **1.** ***The City's inability to point to a single instance in which it has enforced its policy further undercuts its argument that its policy serves its purported governmental interests***

Excluding its threat to fine Ms. Soto for her protected speech, the City has ***never*** enforced its policy against an individual for placing a noncommercial leaflet on a car parked on a public street. In fact, other than the enforcement action at issue in this case, the City has not identified a

---

[7] In any event, the legislative history surrounding the original enactment of the 1992 Ordinance stemmed from the City's concern about visual blight caused from ***commercial*** advertisements and flyers affixed to utility poles, trees and other public property. Prussia Decl. Exhibit I (Cambridge City Council Meeting Minutes, June 30, 2014); *see* Prussia Decl. Exhibit H (Haas Dep. 27:21-28:9). At best, City Councilor Toomey's statements reveal that the Ordinance was amended in 1992 to prevent the defacement of public property and littering from ***commercial*** flyers on parked cars. Moreover, the 1994 Opinion Letter, which discusses whether the Ordinance prohibits "business[es] [from] . . . placing advertisements on parked cars," corroborates City Councilor Toomey's statements. *See* Prussia Decl. Exhibit D (1994 Opinion Letter). But that has nothing to do with Ms. Soto's ***noncommercial*** speech rights here.

7

single instance in which it issued a warning, citation, or fine to anyone for placing noncommercial leaflets on parked cars on public streets. The City's Compliance Officer agrees. Prussia Decl., Exhibit J (Compliance Officer Tr. 26:22 – 28:4; 29:7-19, 30:17-23). While the City quibbles that the Compliance Officer is not really "the" compliance officer, the City fails to provide any evidence that any other City employee charged with enforcing the Ordinance has actually enforced it to prevent noncommercial leafleting on cars parked on public streets. The instances of "enforcement" that the City points to are entirely inapposite and therefore, provide no support to its argument.[8] *See* Prussia Decl. Exhibit L (police incident reports regarding individuals that defaced public and private property or trespassed onto private property to post fliers or distribute commercial leaflets); Prussia Decl. Exhibit M (emails in which the City Compliance Officer notified individuals who used adhesives and other bonding agents to post flyers to public property that they violated the Ordinance).

Nor does the Statute on which the City relies suggest that there exists a statewide governmental interest in prohibiting Soto's leafleting activity. Indeed, outside of its own interpretation of the statutory text, the City does not produce a single document to support its position that the Statue prohibits noncommercial leafleting on parked cars. Further, the City has not provided an example in which it enforced the Statue in ***any*** context to show that its interpretation of the Statute furthers its purportedly significant interests in preventing the placement of noncommercial leaflets on parked cars. *See* Prussia Decl. Exhibit F (Haas Dep. 128:4-129:1) (City's 30(b)(6) designee concedes that he is unaware of any instance in which a resident or business has been cited or notified for violating the Statute.). Other than the City's

---

[8] *See* City of Cambridge's Response to Soto's Rule 56.1 Statement of Material Facts ¶¶ 76-77 (hereinafter "City Resp. to SMF") (The City does not dispute that it produced every instance in which it enforced or threatened to enforce the Defacement Ordinance and none of the instances produced relate to noncommercial leafleting of cars parked on public streets).

speculation that the Statute "would have" been enforced,[9] and the City's interpretation of the text of the Statute, the City does not provide any other reason why the Statute would prohibit Soto's leafleting let alone furthers the City's interest in preventing visual blight and protecting private property. Further, the City fails to show how the Statute's text supports its policy. On its face, the Statute prohibits "paint[ing], put[ting] upon, and affix[ing]" an object to another object. M.G.L. c. 266 § 126. The Statute describes this conduct as defacement. *Id.* ("The [violator] shall . . . forfeit . . . the cost of removing or obliterating such defacement."). The City does not— nor can it—argue that placing pieces of paper on a car constitutes defacement.[10]

Even if the statutory text could in theory be interpreted to ban Soto's leafleting activity, basic principles of statutory interpretation would require holding that the state legislature did not enact—and thus did not intend—such a ban. At best for the City, courts are divided on whether there is a constitutional right to place noncommercial leaflets on parked cars. *See* City. Opp. at 2. Accordingly, under the canon of constitutional avoidance, the Statute must be interpreted not to ban such leafleting unless such an interpretation would be clearly contrary to the statutory text. *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) ([W]here . . . construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems . . . ."). Given that the City has identified no case adopting its interpretation of the Statute, the Statute must therefore be interpreted not to prohibit Soto's leafleting. And for the same reason, the state legislature must be regarded as having expressed no governmental interest in such a prohibition.

---

[9] *See* Prussia Decl. F (Haas Dep.130:1-4) ("I suspect there are officers who would have told people when they're aware of the fact there's a violation of the statute that they're in violation of the statute.")

[10] Placement of leaflets on cars—including underneath windshield wipers—does not come close to "destroy[ing] or mar[ing] the face or external appearance of" a car. *See* Prussia Decl. Exhibit N (Excerpts from Webster's Third New International Dictionary) (defining "to deface").

Accordingly, the City's failure to enforce its policy against noncommercial leafleting demonstrates that the policy does not further a significant government interest.

### C. The City Fails to Prove that Its Policy is Narrowly Tailored to Advance the City's Purported Interests.

Even if the City's policy furthers a substantial interest, it still fails First Amendment scrutiny if it is not narrowly tailored to advance the City's interest. It is not. Indeed, Courts have held that similar restrictions are not narrowly tailored where the restriction "prohibit[s] the placement of any handbill on any unattended vehicle, regardless of whether the driver, owner, or an occupant might wish to receive the handbill . . . ." *Krantz*, 160 F.3d at 1221. That is precisely what the City's policy does here.

First, the City argues that it has an interest in protecting private property rights, which, at its core involves the protection against trespass. But, courts have struck down such bans on leafleting if the ordinance restricts more speech than necessary to serve the interest of preventing trespass on private property. *See Klein*, 584 F.3d at 1204 ("The assertion of an interest in protecting the rights of car owners runs counter to the general rule that the 'right to distribute literature . . . necessarily protects the right to receive it.'") (quoting *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)); *see also Massachusetts Fair Share, Inc. v. Town of Rockland*, 610 F. Supp. 682, 689 (D. Mass. 1985) ("[D]efendants' concerns with public annoyance may be accommodated without impermissibly infringing upon the first amendment rights of the plaintiffs."). The Ninth Circuit explained in *Klein* that vehicle owners can place "No Solicitation" signs on their dashboards to avoid unwanted leaflets because the same protection applies to residence owners, and "vehicles are entitled to less assiduous protection than residences." *Klein*, 584 F.3d at 1205; *see also Massachusetts Fair Share, Inc.*, 610 F. Supp. at

689 ("Furthermore, a resident wishing to avoid solicitors may do so by simply posting a 'no solicitation' or 'no trespassing' sign at his door or at the entrance to his property.").

Second, the City also argues that it has an interest in preventing visual blight. Here again, courts have struck down such bans on leafleting when a city has other ordinances that furthers the city's purported interests. *See Ramsey*, 764 F. Supp. 2d at 732, 734 (finding that where the City's asserted interests were to "reduce litter and visual blight," such a restriction on leafleting was not narrowly tailored where "the City already has an ordinance that proscribes littering, therefore the City should be able to effectively control its littering problem without broad restrictions on handbilling."). Similarly, here, the City has other means to combat its asserted interests without enforcing its "broad restriction" against Ms. Soto's leafleting activity. *Id.*; *see e.g.*, M.G.L. c. 270 § 16 (prohibiting littering); CAMBRIDGE, M.A., CODE § 8.24.010 *et. seq.* ("Refuse and Litter"); CAMBRIDGE, M.A., CODE § 12.08 *et. seq.* ("Advertising Signs and Displays"). Further, because the City's enforcement policy stemmed from the City's concern about visual blight caused from ***commercial*** advertisements, the City's restriction on Ms. Soto's noncommercial leafleting activity "substantially burdens more speech than necessary to further its interests in stemming the stated [] problem." *Ramsey*, 764 F. Supp. 2d at 734.

Thus, the City's policy is not narrowly tailored to advance either of its purported governmental interests.

### D. The City's Policy Fails to Provide Ample Alternatives for Ms. Soto to Reach Her Targeted Audience.

Finally, the City has not met its burden to prove that its policy leaves open adequate alternatives for Ms. Soto to reach her targeted audience. The City argues that under its policy, Ms. Soto is not prohibited from leafleting via hand-to-hand or door-to-door, or from posting her noncommercial flyers on windows of businesses and park bulletins in the City. City Opp. at 18-

11

19.  But federal courts have held that hand-to-hand and door-to-door soliciting ***are not adequate alternatives to leafleting*** on cars parked on public streets.  *See Horina,*, 538 F.3d at 636 ("Forcing an individual to limit handbilling activities to person-to-person solicitation is extremely time consuming and burdensome . . . . Because of these limitations, the time it would take the individual to convey the message to the intended audience would increase from perhaps under an hour to conceivably several days."); *Klein*, 584 F.3d at 1205 (same).  Further, the alternatives "must be more than 'merely theoretically available'—'[they] must be realistic as well.'"  *Horina*, 538 F.3d at 635.

The City fails to address these precedents (because it cannot).  Here, where the City suggests that Ms. Soto "wait[] in a parking lot or a street and ask[] the owners of the car whether they would like a leaflet," (City Opp. at 18) the alternative is not realistic.  *See Horina*, 538 F.3d at 636 ("And we cannot say that an alternative channel of communication is realistic when it requires a speaker significantly—and perhaps prohibitively—more time to reach the same audience.").  Lastly, just because Ms. Soto engages in alternatives to leafleting parked cars, does not diminish the fact that the City's policy of preventing her from placing noncommercial flyers on parked cars is unconstitutional.  *Horina*, 538 F.3d at 636 (explaining that the existence of more costly and less effective alternatives to leafleting parked cars are not sufficient to meet the government's burden under time, place, and manner analysis).

## CONCLUSION

For all these reasons, Plaintiff respectfully requests that the Court grant her motion for summary judgment on Counts 1 to 4 of her Amended Complaint.

| | |
|---|---|
| Dated: June 12, 2015 | Respectfully submitted, |

                                        */s/ Chaloea Williams*_____
Kevin S. Prussia (BBO #666813)
Julia M. Ong (BBO #685014)
Chaloea Williams (BBO # 691154)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Of Counsel:
Matthew R. Segal (BBO #654489)
AMERICAN CIVIL LIBERTIES UNION
OF MASSACHUSETTS
211 Congress Street, 3rd Floor
Boston, MA 02110
Telephone: (617) 482-3170
Facsimile: (617) 451-0009
msegal@aclu.org

*Attorneys for Plaintiff*
*Paula F. Soto*

**CERTIFICATE OF SERVICE**

    I, Chaloea Williams, hereby certify that a true and correct copy of the above document was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 12$^h$ day of June 2015.

                                                                            /s/ *Chaloea Williams*