UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAULA F. SOTO, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CAMBRIDGE, <br><br> Defendant. | Civil Action No. 1:13-cv-10822-JGD |

**STATEMENT OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF
PLAINTIFF PAULA F. SOTO'S MOTION FOR SUMMARY JUDGMENT**

During the hearing on September 21, 2015, the Court allowed briefing on: (1) whether this case presents a justiciable case or controversy under Article III where a City of Cambridge ("City") police officer, pursuant to a City ordinance, stopped Ms. Soto from placing leaflets on parked cars on one occasion; and (2) whether the City is liable for that interference with Ms. Soto's First Amendment rights.  Because these issues were not raised by the City (and thus were not addressed in the summary judgment briefing), Ms. Soto respectfully submits the following statement of supplemental authority to address them.

As shown below, a case or controversy exists because a Cambridge police officer violated Ms. Soto's First Amendment rights on December 12, 2011, because that violation is directly traceable to the City's conduct, and because Ms. Soto has requested damages (however nominal) for that violation.  Moreover, the City is liable to Ms. Soto because its enforcement

1

policies, as opposed to misconduct by a police officer acting against City policy, are the reason Ms. Soto's rights were violated in 2011.[1]

I. MS. SOTO HAS A JUSTICIABLE CASE AND CONTROVERSY.

Ms. Soto has satisfied her burden to show that a "case or controversy" exists. The core of the Article III "case or controversy" requirement is the limitation of standing to those who have personally suffered, or will imminently suffer, actual injury. To prove that she has standing, Ms. Soto need only show that (1) she "personally has suffered some actual or threatened injury" as a result of the City's conduct, (2) the injury is fairly traceable to the City's conduct, and (3) "the injury likely will be redressed by a favorable decision." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003) (*quoting N. H. Right to Life PAC v. Gardner*, 99 F.3d. 8, 13 (1st Cir. 1995)). All three elements are satisfied here.

First, Ms. Soto suffered an actual injury on December 12, 2011 when a City police officer deprived her of her constitutional right to engage in expressive activity and the City threatened to subject her to criminal and civil fines if she continued to leaflet.[2] *See R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 30 (1st Cir. 1999) ("[A] 'conflict between state officials empowered

---

[1] The Court also asked whether the risk of *future* action by the City against Ms. Soto entitles her to declaratory or injunctive relief. The answer to this question is unequivocally yes, in light of (1) the City's steadfast view that M.G.L. c. 266, § 126 prohibits leafleting parked cars and (2) the City's acknowledgment that its police department is authorized to enforce that view against citizens like Ms. Soto. *See, e.g.*, Dkt. 81, City's Amended Opposition to Soto's Motion for Summary Judgement at 1 ("Pursuant to . . . M.G.L. c. 266, § 126 (the 'Statute') and City of Cambridge Ordinance Chapter 9.04 (the 'Ordinance'), the act of placing fliers on parked motor vehicles is a prohibited activity."); *Id.* at 9 ("Here, the enforcement of the Ordinance and the Statute as applied to Soto and others represents a 'means of achieving the government's interest' that would be achieved less effectively absent this policy of enforcement). Nevertheless, this issue might be further clarified by the parties' response to the Court's order requesting a joint statement regarding the City's stance on enforcement its interpretation of § 126. Accordingly, this supplemental statement of authority addresses only whether *prior* events, and in particular the City's responsibility for and ratification of the enforcement action taken against Ms. Soto on December 12, 2011, gives rise to a case or controversy under Article III.

[2] Where, as here, the unconstitutional act of a municipality's employee "executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," the municipality "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-701 (1978) (explaining further that "municipal bodies sued under § 1983 cannot be entitled to an absolute immunity"). The City does not dispute that the City police officer was enforcing the City's prohibition on leafleting parked cars when he prevented Ms. Soto from engaging in First Amendment activity on December 12, 2011. Thus, Ms. Soto is entitled to sue the City directly under 42 U.S.C. § 1983.

to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III") (citation omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992) (stating that when the plaintiff is the object of the challenged "government action or inaction . . . there is ordinarily little question that the action or inaction has caused him injury"). Ms. Soto's injury is neither abstract nor hypothetical; a City police officer prohibited her from leafleting on December 12, 2011, causing Ms. Soto to cease leafleting parked cars that day. Dkt. 51, Rule 56.1 Statement of Material Facts ("SMF") ¶19; *see Sullivan v. City of Augusta*, 511 F.3d 16, 30-31 (1st Cir. 2007) (finding that plaintiffs demonstrated an actual injury where the City of Augusta "deterred" an organizer from applying for a street march permit for a period of time); *see also Krantz v. City of Fort Smith*, 160 F.3d 1214, 1217-18 (8th Cir. 1998) (holding that plaintiffs who were restricted from leafleting due to the city's prohibition on leafleting parked cars had standing to bring their First Amendment challenge); *Wright v. Town of Southbridge*, No. CIV A 07-40305-FDS, 2009 WL 415506, at *5 (D. Mass. Jan. 15, 2009) (finding a cognizable injury where the Town of Southbridge ordered a family to remove protest signs from their car, even though the family refused to comply with the order).

Further, to the extent Ms. Soto was threatened with criminal penalties for exercising her First Amendment rights, the First Circuit does not require her to "[actually] suffer the penalty in order to generate a conflict worthy of standing in federal court." *Mangual*, 317 F.3d at 56; *see, e.g.*, *Parow v. Kinnon*, 300 F. Supp. 2d 256, 261-62 (D. Mass. 2004) (stating that injury is caused "by the threat that the speaker will be . . . punished for his or her speech," including "when the threatened sanction takes the form of a regulatory or financial penalty"). Accordingly, the fact

3

that Ms. Soto was not fined or ticketed for leafleting on December 12, 2011 is not a bar to federal jurisdiction over her claim.

Second, the City's prohibition of leafleting parked cars, which was enforced by a City police officer and ratified by City officials, was the direct cause of Ms. Soto's injuries. *See Monell*, 436 U.S. at 690 (holding that municipalities are eligible defendants for purposes of 42 U.S.C. § 1983 where the alleged unconstitutional action "implement[ed] or execute[d] a policy statement . . . or decision officially adopted and promulgated by [its] officers"); *see also* Dkt. 50, Soto's Motion for Summary Judgment, Ex. F, City's 30(b)(6) Dep. Tr., at 57:13-24, 58:1-13 (City's 30(b)(6) witness affirming that the City's Ordinance prohibited placing objects on windshields of vehicles, including leaflets); *id.* at 63:12-16; 66:12-17; 122:5-13 (City's 30(b)(6) witness affirming that the State Statute prohibited placing objects on windshields of vehicles, including leaflets); Ex. 1, City's Answer to Soto's First Set of Requests for Admission, No. 2 ("Admit that the City has a policy of enforcing the Ordinance so as to forbid the placement of flyers on parked automobiles on public streets." City's Response: "Admitted"); *id* at No. 5 ("Admit that to the extent that the City has a policy of forbidding the placement of flyers on parked automobiles on public streets, the policy is based on both the Ordinance and Mass Gen. Laws ch. 266, § 126." City's Response: "Admitted"). But for the police officer, who was acting under the authority of the City and whose actions were ratified by the City, Ms. Soto would have continued leafleting parked cars in the City of Cambridge on December 12, 2011. Moreover, a municipality may be liable for a single decision made by municipal policymakers, "whether or not that body had taken similar action in the past or intended to so in the future." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

ActiveUS 148876847v.1

Finally, the damages that Ms. Soto requested in her Amended Complaint—even if nominal—will redress the City's interference with her First Amendment rights. *See Cortes-Reyes v. Salas Quintana*, 608 F.3d 41, 53 (1st Cir. 2010) (allowing an award of nominal damages for a First Amendment violation); *see also Risdal v. Halford,* 209 F.3d 1071, 1072 (8th Cir. 2000) (noting that nominal damages are required "upon proof of an infringement of the first amendment right to speak").

Given that Ms. Soto has satisfied the three prongs necessary to confer standing, her claims against the City are properly before the Court and she is entitled to the relief requested.

II. THE CITY IS LIABLE FOR THE ENFORCEMENT ACTION AGAINST MS. SOTO ON DECEMBER 12, 2011.

Under § 1983, even **one** act by the City is sufficient to give rise to liability.[3] *Pembaur,* 475 U.S. at 480; *see, e.g.*, *Putnam v. Town of Saugus, Mass.*, 365 F. Supp. 2d 151, 181 (D. Mass. 2005) ("[T]he First Circuit Court of Appeals has recognized the proposition that an official's single act can serve as a policy and thus establish a basis for municipal liability."). As the Supreme Court made clear in *Pembaur*:

> To be sure, 'official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time. That was the case in *Monell* itself, which involved a written rule requiring pregnant employees to take unpaid leaves of absence before such leaves were medically necessary. However, as in *Owen* and *Newport*, a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government

---

[3] The City has never disputed the fact that the City police officer's interference with Ms. Soto's leafleting on December 12, 2011 was pursuant to an official City policy. Accordingly, the City has waived this argument. *See Davis v. Grimes*, 9 F. Supp. 3d 12, n.10 (D. Mass. 2014) (explaining that failure to brief an issue at the summary judgment stage constitutes waiver).

5

>'policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.

475 U.S. at 480-81.

Here, there can be no dispute that the City's actions against Ms. Soto were and have been pursuant to an official policy. The record indicates—and the City does not dispute—that on December 12, 2011, an on-duty uniformed City police officer approached Ms. Soto as she was placing noncommercial leaflets on parked cars and ordered her to stop leafleting. *See* SMF at ¶¶ 15-16. After being informed of the police officer's actions, the City Solicitor, speaking on behalf of the City as its legal representative, affirmed that the City stood by its policy to prohibit the placement of leaflets on parked cars and stated that it would enforce the policy against Ms. Soto—thereby ratifying the conduct of the police officer and making clear that Ms. Soto could be fined for leafleting.[4]  SMF at ¶¶ 24, 40; *see also* Amended Complaint, Ex. 5, Letter from City Solicitor to Rich Johnston dated March 13, 2013 ("Having reviewed your letter and draft Complaint the City maintains its position that its ordinance is presumptively valid and as such the City is required to enforce it."). These facts alone—***all of which are undisputed***—are sufficient to establish an official policy under § 1983.

---

[4] Pursuant to City of Cambridge Ordinance 2.26.030, the City Solicitor is the City's legal representative. Accordingly, the City Solicitor's legal statements on behalf of the City "may fairly be said to represent official . . . policy, because within [her] sphere of discretion, she is the vessel through which the municipality acts." *Putnam*, 365 F. Supp. 2d at 191. Further, the City does not dispute that the City Solicitor may communicate the City's official positions or policies in her capacity as its legal representative.

Dated:   October 9, 2015                              Respectfully submitted,

                                                    */s/ Julia M. Ong*
Kevin S. Prussia (BBO# 666813)
Julia M. Ong (BBO# 685014)
Chaloea Williams (BBO# 691154)
WILMER CUTLER PICKERING
 HALE AND DORR, LLP
60 State Street
Boston, MA  02109
Telephone:  617-526-6000
Facsimile:  617-526-5000
kevin.prussia@wilmerhale.com
thaila.sundaresan@wilmerhale.com
julia.ong@wilmerhale.com

Of Counsel:

Matthew R. Segal (BBO# 654489)
AMERICAN CIVIL LIBERTIES UNION
 OF MASSACHUSETTS
211 Congress Street, 3rd Floor
Boston, MA  02110
Telephone:  617-482-3170
Facsimile:  617-451-0009
msegal@aclum.org

*Attorneys for Plaintiff Paula F. Soto*

ActiveUS 148876847v.1

**Certificate of Service**

       I, Julia M. Ong, hereby certify that PLAINTIFF PAULA F. SOTO'S STATEMENT OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF PAULA F. SOTO'S MOTION FOR SUMMARY JUDGMENT filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on October 9, 2015.

                                                  */s/ Julia M. Ong*
                                                  Julia M. Ong