**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PAULA F. SOTO,<br><br>         Plaintiff,<br><br>v.<br><br>CITY OF CAMBRIDGE,<br><br>         Defendant. | Civil Action No. 1:13-cv-10822-JGD |

**PLAINTIFF PAULA F. SOTO'S OPPOSITION**
**TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

Cambridge's motion is premised on the assertion that the Court's Order on September 21, 2015 precluded Soto from serving additional discovery requests. Cambridge is incorrect. During the hearing, the Court ordered Cambridge to take a final position on whether it maintains its policy of prohibiting noncommercial leafleting:

> *[T]he ball is really in the city's court to come out and say whether or not this is your policy, and if so, where is it reflected.* But not it's our job to enforce the statute. That's not what I'm asking you. I'm asking you very specifically, ***do[es] [Cambridge] have a custom or policy or practice of prohibiting this type of leafleting now that the ordinance has been amended***.

Ex. 1, Sept. 21, 2015 Motion Hearing Tr. at 34:25-35:7 (emphasis added). The Court left open the door for additional discovery directed at ascertaining Cambridge's official position on noncommercial leafleting now that the Ordinance has been amended. *Id*. at 34:1-5 ("Now, I don't know if that can be done by stipulation ***or if that requires additional discovery.***") (emphasis added).

1

To facilitate a productive meet and confer[1] regarding the specific question of whether Cambridge continues to prohibit noncommercial leafleting on parked cars, Soto served nine (9) requests for admissions and one (1) interrogatory directly tailored to this question. *See* Dkts. 101-2 and 101-3. Cambridge refused to respond. Instead, Cambridge submitted an affidavit from its Police Commissioner stating that Cambridge no longer has a policy "pursuant to the Ordinance," but does have a policy of "enforcing the laws of the Commonwealth," which includes M.G.L. c. 266, §126, ("the Statute"), and which Cambridge has heretofore interpreted as prohibiting noncommercial leafleting. *See* Dkt. 95, Affidavit of Police Commissioner Robert Haas at ¶¶3, 5; Dkt. 102 at 8.

Even though the Court directed Cambridge ***not*** to condition its answer on its supposed obligation to "enforce laws" that is precisely what Cambridge did. *See* Ex. 1 at 32:12-14, 35:3-4, 37:11-12 ("THE COURT: I'm not terming it in terms of do you have a policy of enforcing the statute…. That's not what I'm asking you….. ***I want to know whether there's a policy under the scenario regardless of the basis for the policy.***") (emphasis added); Dkt. 101 at 4-8 (Cambridge (incorrectly) asserting that Soto's requests are "not relevant to the narrow question of whether the City has a policy ***other than enforcing the laws of the Commonwealth.***") (emphasis added). Cambridge's inadequate response, which flouts the Court's clear directive, exemplifies why Soto

---

[1] Cambridge asserts that the "parties agreed to continue that conference for the morning of October 16, 2015 but counsel for the Plaintiff unilaterally cancelled the conference." Dkt. No. 101 at 3. That is incorrect. As is clear from the parties' correspondence—which Cambridge omitted from its filing—the parties had discussed potential dates, one of which was October 16, but the parties never confirmed a time. *See* Ex. 2 at p. 4, Email from C. Williams dated Oct. 13, 2015. Plaintiff's counsel provided several alternative dates and times to resolve the matter, but Defendant's counsel was not available. *See e.g., id.* at p. 3, Email from J. Ong dated October 15, 2015 ("In order to not delay the meet and confer any longer, we can be available anytime today except from 12-1 pm or 2-3 pm, and alternatively, anytime tomorrow afternoon starting at 2 pm."); *id.* at p. 3, Email from S. Aylesworth dated October 15, 2015 ("I'm not able to confer today on this or tomorrow afternoon….I would suggest we propose November 9th, a two-week extension.").

was substantially justified in serving discovery requests that would require Cambridge to provide straight-forward responses to the question raised by the Court.  Cambridge's failure to do so, speaks volumes about its position.  If Cambridge truly has abandoned its policy of prohibiting noncommercial leafleting—*in totum*—then why would it refuse to answer a straight-forward request seeking confirmation of that supposed fact.[2]  The reason is clear—despite the amendment to the Ordinance, ***Cambridge continues to prohibit noncommercial leafleting based on its view of the Statute***.  Cambridge enforced that policy against Soto in December 2011 and continues, today, to assert that its policy proscribes Soto's First Amendment protected activity:

- "Q: Does the City have a position on whether leafleting of cars violates the Defacement Statute?  A:  So, according to the [1994 Opinion Letter] that was written by [former City Solicitor] Russell Higley, he refers to ***the statute as the enforcement mechanism*** for placing fliers on fliers on car windshields."  Dkt. 52, Ex. F (Rule 30(b)(6) Dep. Tr. of Cambridge's Police Commissioner) at 122:5-13 (emphasis added);

- "[W]e have been notifying people that they're not to leaflet cars ***based on either the state statute*** or ordinance[.]"  *Id.* at 63:12-14  (emphasis added);

- "The 1994 Opinion Letter informed the City's position that ***the Statute prohibited the posting of flyers on cars***."  Dkt. 67 (Cambridge's Responses to Plaintiff's Statement of Material Facts) at No. 51  (emphasis added);

- "Admit that to the extent that the City has a policy of forbidding the placement of flyers on parked automobiles on public streets, ***the policy is based on*** both the

---

[2] *See e.g.* Dkt. 101, Ex. 2 at RFA No. 31 ("Admit that the City will not enforce, or threaten to enforce, a prohibition against Ms. Soto from placing noncommercial leaflets on parked cars on public streets.").

Ordinance and *Mass Gen. Laws ch. 266, § 126*." Response: "*Admitted*." Dkt. 97, Ex. 1 (Cambridge's Responses to Plaintiff's First Set of Requests for Admission) at No. 5 (emphasis added).

Indeed, even after the Ordinance was amended to permit noncommercial leafleting, Cambridge represented to this Court that it still nonetheless took the position that noncommercial leafletting was prohibited under the Statute. *See* Dkt. 81 at 1 ("***Pursuant to . . . M.G.L. c. 266, § 126 (the 'Statute') . . . the act of placing fliers on parked motor vehicles is a prohibited activity***.") (emphasis added).

In short, despite Cambridge's failure to comply with the Court's order to provide a clean answer about whether it will continue to prohibit noncommercial leafleting —the record demonstrates that there is an ongoing Article III "case or controversy" over Soto's claim.

Finally, to the extent that Cambridge argues that Soto's ten discovery requests are unduly burdensome, it has failed to show the requisite "good cause" why a protective order should be issued. *See Koninklijke Philips Elecs. N.V. v. ZOLL Medical Corp.*, 2013 WL 1833010, at *1 (D. Mass. Apr. 30, 2013) ("A party seeking a protective order . . . bears the burden of establishing 'good cause' for the request, i.e., that 'justice requires [the Court] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" (citing Fed. R. Civ. P. 26(c)(1)). Soto's requests are limited to the exact Article III "case or controversy" questions posed by the Court, including whether Cambridge continues to prohibit "placing leaflets on the windshield of cars parked on public streets" and whether Cambridge will enforce its prohibition against Soto. *See* Dkts. 101-2 and 101-3. Thus, Soto's requests were relevant and Cambridge was not substantially justified in refusing to respond. *See Davis v. Jacob S. Ciborowski Family Trust*, No. 11-cv-436-PB, 2012 WL 5904816 at *1 (D.N.H. Nov.

26, 2012) (finding that a party was not substantially justified in refusing to provide discovery where the discovery was relevant).  Moreover, in the time it took Cambridge to prepare the Police Commissioner's affidavit and prepare and file its brief, it could have responded to Soto's nine requests for admissions and one interrogatory.

The Court should deny Cambridge's motion, including its request for attorneys' fees.[3]  In any event, should the Court grant Soto's motion for summary judgment, Cambridge's motion for a protective order is moot.

---

[3] An award of attorneys' fees under Fed. R. Civ. P. 26(c)(3) is not appropriate when a party's position in a discovery dispute is "substantially justified."  Cambridge makes no effort to show why it would be entitled to attorneys' fees under the circumstances; nor can it, given the Court's express statement at the hearing that "additional discovery" might be appropriate.  *See supra* at 1.

Dated:  November 18, 2015 Respectfully submitted,

*/s/ Julia M. Ong*
Kevin S. Prussia (BBO# 666813)
Julia M. Ong (BBO# 685014)
Chaloea Williams (BBO# 691154)
WILMER CUTLER PICKERING
 HALE AND DORR, LLP
60 State Street
Boston, MA  02109
Telephone:  617-526-6000
Facsimile:  617-526-5000
kevin.prussia@wilmerhale.com
julia.ong@wilmerhale.com
chaloea.williams@wilmerhale.com

Of Counsel:

Matthew R. Segal (BBO# 654489)
AMERICAN CIVIL LIBERTIES UNION
 OF MASSACHUSETTS
211 Congress Street, 3rd Floor
Boston, MA  02110
Telephone:  617-482-3170
Facsimile:  617-451-0009
msegal@aclum.org

*Attorneys for Plaintiff Paula F. Soto*

**Certificate of Service**

       I, Julia M. Ong, hereby certify that PLAINTIFF PAULA F. SOTO'S OPPOSITION TO THE CITY'S MOTION FOR A PROTECTIVE ORDER filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on November 18, 2015.

                                              */s/ Julia M. Ong*
                                              Julia M. Ong