**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PAULA F. SOTO,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF CAMBRIDGE,<br><br>  Defendant. | Civil Action No. 1:13-cv-10822-JGD |

**PLAINTIFF PAULA F. SOTO'S STATEMENT REGARDING JUSTICIABILITY**

**TABLE OF CONTENTS**

Page

I.      THERE IS A JUSTICIABLE CASE OR CONTROVERSY OVER SOTO'S
        PRIOR LEAFLETING ACTIVITIES ................................................................3

II.     THERE IS A JUSTICIABLE CASE OR CONTROVERSY OVER SOTO'S
        ONGOING LEAFLETING ACTIVITIES. ........................................................8

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*,
705 F.3d 44 (1st Cir. 2013) ................................................................................................14

*Bd. of Cnty Comm'rs of Bryan Cnty., Okl. v. Brown*,
520 U.S. 397 (1997) ..............................................................................................................9

*Carey v. Piphus*,
435 U.S. 247 (1978) ...........................................................................................................7, 8

*City of Newport v. Fact Concerts, Inc.*,
453 U.S. 247 (1981) ............................................................................................................12

*Cortes-Reyes v. Salas-Quintana*,
608 F.3d 41 (1st Cir. 2010) ..................................................................................................8

*Davis v. Village Park II Realty Co.*,
578 F.2d 461 (2d Cir. 1978) .................................................................................................7

*Freedom from Religion Found., Inc. v. Connellsville Area Sch. Dist.*,
No. 2:12-CV-1406, 2015 WL 5093314 (W.D. Pa. Aug. 28, 2015) ....................................7, 8

*Garner v. Memphis Police Dep't*,
8 F.3d 358 (6th Cir. 1993) .................................................................................................10

*Genereux v. Raytheon Co.*,
754 F.3d 51 (1st Cir. 2014) ..................................................................................................9

*Golden v. Zwickler*,
394 U.S. 103 (1969) .......................................................................................................12, 13

*Horina v. City of Granite City, Ill.*,
538 F.3d 624 (7th Cir. 2008) ...............................................................................................1

*Klein v. City of San Clemente*,
584 F.3d 1196 (9th Cir. 2009) ..............................................................................................1

*Krantz v. City of Fort Smith*,
160 F.3d 1214 (8th Cir. 1998) ...........................................................................................1, 5

*Kuperman v. Wrenn*,
645 F.3d 69 (1st Cir. 2011) ..................................................................................................7

*Lokey v. Richardson*,
   600 F.2d 1265 (9th Cir. 1979) ............................................................................8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992), Dkt. 51 ........................................................................4, 5

*Mangual v. Rotger-Sabat*,
   317 F.3d 45 (1st Cir. 2003) ...........................................................................4, 5

*Mann v. Taser Int'l, Inc.*,
   No. 05-0273, 2007 WL 4794113 (N.D. Ga. Oct. 1, 2007) ......................................3

*McKusick v. City of Melbourne*,
   96 F.3d 478 (11th Cir. 1996) ...........................................................................10

*Meese v. Keene*,
   481 U.S. 465 (1987) ........................................................................................4

*Monell v. Dep't of Soc. Servs. of City of New York*,
   436 U.S. 658 (1978) ...........................................................................4, 5, 11, 12

*Morrison v. Board of Education of Boyd County*
   521 F.3d 602, 610 (6th Cir. 2008) .....................................................................6, 7

*Morgan v. Plano Independent School Dist.*,
   589 F.3d 740 (5th Cir. 2009) .............................................................................8

*Nat'l Amusements, Inc. v. Town of Dedham*,
   43 F.3d 731 (1st Cir. 1995) .............................................................................14

*New Hampshire Hemp Council, Inc. v. Marshall*,
   203 F.3d 1 (1st Cir. 2000) ................................................................................4

*New Hampshire Right to Life Political Action Comm. v. Gardner*,
   99 F.3d 8, 13 (1st Cir. 2000) ............................................................................4

*O'Connor v. City and Cnty. of Denver*,
   894 F.2d 1210 (10th Cir. 1990) .........................................................................8

*O'Shea v. Littleon*,
   414 U.S. 488, 495 (1974) ...............................................................................13

*Owen v. City of Independence*,
   445 U.S. 622 (1980) .......................................................................................12

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
   551 U.S. 701 (2007) .......................................................................................14

*Parow v. Kinnon*,
    300 F. Supp. 2d 256 (D. Mass. 2004) ...................................................................5

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986)...........................................................................6, 11, 12

*Putnam v. Town of Saugus, Mass.*,
    365 F. Supp. 2d 151 (D. Mass. 2005) .................................................................12

*Ramsey v. City of Pittsburgh, Pa.*,
    764 F. Supp. 2d 728 (W.D. Pa. 2011).....................................................................1

*Robinson v. Town of Kent*,
    835 F. Supp. 2d 1 (S.D.N.Y. 2011)........................................................................1

*Rossi v. Town of Pelham*,
    35 F. Supp. 2d 58 (D.N.H. 1997).........................................................................10

*S. Boston Allied War Veterans Council v. City of Boston*,
    297 F. Supp. 2d 388 (D. Mass. 2003) ...................................................................6

*Sullivan v. City of Augusta*,
    511 F.3d 16 (1st Cir. 2007)...................................................................................4

*Tomaselli v. Beaulieu*,
    No. 08-10666-PBS, 2010 WL 1460259 (D. Mass. Apr. 2010) ................................9

*Traditionalist Am. Knights of the KKK v. City of Cape Girardeau, Mo.*,
    897 F. Supp. 2d 897 (E.D. Mo. 2012).....................................................................1

*Wagner v. City of Holyoke, Mass.*,
    404 F.3d 504 (1st Cir. 2005)...................................................................................6

*Wright v. Town of Southbridge*,
    No. 07-40305-FDS, 2009 WL 415506 (D. Mass. Jan. 15, 2009) .............................5

**State Cases**

*Commonwealth v. Anderson*,
    651 N.E.2d 1237 (Mass. App. Ct. 1995) ..............................................................11

**Constitutional Provisions**

US.CONST. amend I ........................................................................ *passim*

**Federal Statutes**

42 U.S.C. § 1983.................................................................................................4, 5

**Federal Rules**

Fed. R. Civ. P. 12(f)(2) ..................................................................................................3

Fed. R. Civ. P. 56.1 .......................................................................................................5

**State Statutes**

Mass Gen. Laws Ch. 266, § 126 ..............................................................................2, 10

**Local Ordinances**

Cambridge, M.A. Code § 9.04.050............................................................................ *passim*

## **INTRODUCTION**

This case involves a challenge to Defendant City of Cambridge's policy of prohibiting the placement of leaflets on parked automobiles on public streets.  Plaintiff Paula F. Soto, a political and social activist, distributes such leaflets to inform the Cambridge community about significant issues that, in her view, are not adequately addressed in the mainstream media. Soto's leaflets invite the community to discuss those issues at monthly film screenings, which Soto hosts at her apartment complex free of charge.  Cambridge, through its police and law departments, has told Soto that she will be subject to civil and criminal fines unless she stops her leafleting.  First, on December 12, 2011, when a Cambridge police officer informed Soto (incorrectly) that she needed a permit to leaflet and that her actions constituted littering.  And again in early 2012, when the Cambridge City Solicitor, relying on an opinion letter from 1994, cited Massachusetts General Law ch. 266, § 126 ("the Statute") and the Cambridge City Ordinance §9.04.050 ("the Ordinance") that the Cambridge Solicitor interpreted as prohibiting Soto's activity.  (Dkt. 51 at ¶¶ 24-29.)

Under these facts—which are undisputed—Soto is entitled to summary judgment. Federal courts across the country have found restrictions like that pronounced by Cambridge to be an unconstitutional restriction of speech under the First Amendment.  *See, e.g.*, *Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009); *Horina v. City of Granite City, Ill.*, 538 F.3d 624 (7th Cir. 2008); *Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir. 1998); *Traditionalist Am. Knights of the KKK v. City of Cape Girardeau, Mo.*, 897 F. Supp. 2d 824 (E.D. Mo. 2012); *Ramsey v. City of Pittsburgh, Pa.*, 764 F. Supp. 2d 728 (W.D. Pa. 2011); *Robinson v. Town of Kent*, 835 F. Supp. 2d 1 (S.D.N.Y. 2011).  For her already-incurred constitutional injuries, Soto is entitled to at least nominal damages and her reasonable attorneys' fees and costs.

After Soto moved for summary judgment, Cambridge amended the Ordinance to permit noncommercial leafleting activities like that of Soto—effectively disavowing one of the two grounds that Cambridge relied upon in support of its prohibition.  Accordingly, the Court has requested briefing on whether there remains a justiciable claim going-forward.  There is.  While Cambridge has conceded (as it must) that the amended Ordinance allows noncommercial leafleting, Cambridge has never disputed that, regardless of the Ordinance, it continues to have a policy of prohibiting noncommercial leafleting and that it will enforce its policy against Soto. To be sure, the Ordinance was merely one of *two* grounds that Cambridge relied upon to support its unconstitutional policy.  (*See* Dkt. 37, Ex. 4, 1994 Opinion Letter at 1.)  The *other* ground— the Defacement Statute—remains the same as it did on December 12, 2011 and *Cambridge has never disclaimed its position that the Statute prohibits Soto's leafleting*.  (Dkt. 51 at ¶ 51 ("The 1994 Opinion Letter informed the City's position that the Statute prohibited the posting of flyers on cars.").)[1]  More importantly, regardless of *what* Cambridge basis its policy on—an ordinance, its interpretation of a state statute, an opinion letter, or something else—*Cambridge has never disputed that it, in fact, maintains a policy of prohibiting leafleting and that it will enforce it against Soto*.

Even now, when the Court directed Cambridge to simply answer—yes or no—whether it maintains such a policy, Cambridge has not denied that it does.  Rather, Cambridge carefully

---

[1] *See also* Dkt. 52, Ex. F, (Nov. 12, 2014 Dep. Tr. of Cambridge Police Commissioner) at 63:12-16; 66:12-17; 122:5-13 (Cambridge's Rule 30(b)(6) witness affirming that the Statute prohibited placing objects on windshields of vehicles, including leaflets); Dkt. 94, Ex. 1 at No. 5 (Cambridge's Answer to Soto's First Set of Requests for Admission) ("Admit that to the extent that the City has a policy of forbidding the placement of flyers on parked automobiles on public streets, the policy is based on both the Ordinance and Mass Gen. Laws ch. 266, § 126." Response: "ADMITTED"); Dkt. 81 at 1 ("*Pursuant to . . . M.G.L. c. 266, § 126 (the 'Statute')* and City of Cambridge Ordinance Chapter 9.04 (the 'Ordinance'), *the act of placing fliers on parked motor vehicles is a prohibited activity*.") (emphasis added).

states that it has no policy "pursuant to the Ordinance."  As the Court has previously recognized, *why* Cambridge has a policy is irrelevant to justiciability—the only question is whether it does. (Dkt. 92 at 31:23-32:5 (Sept. 21, 2015 Motion Hearing Tr.) ("THE COURT:  That's not the – don't phrase it that way. . . .  The question is, do you have a policy of prohibiting the placement of noncommercial leaflets on publicly parked cars. . . .  I don't care why you have that policy. That's the question that's at issue in this case.").)

Unless and until Cambridge states that it no longer prohibits noncommercial leafleting— unequivocally and without condition—there remains a live case and controversy over Soto's ongoing activity which requires adjudication.[2]

## I.   THERE IS A JUSTICIABLE CASE OR CONTROVERSY OVER SOTO'S PRIOR LEAFLETING ACTIVITIES

As set forth in Soto's October 9 Supplemental Statement (Dkt. 94),[3] Soto has satisfied her burden to show that a "case or controversy" exists over her prior leafleting activities.  The core of the Article III "case or controversy" requirement is the limitation of standing to those who

---

[2] Even if Cambridge disavowed its policy *in totum*, there still would be a justiciable claim based on Cambridge's prior policy and enforcement action against Soto.  A municipality cannot evade liability with a *post hoc* disavowal of prior unlawful conduct.  For example, if an individual was subject to excessive use of force during the course of an arrest, there would be a justiciable civil rights claim against the municipality—even if the police department disavowed and remedied whatever prior policy or failure of training that led to the unlawful act.  The victim would still be entitled to damages for the constitutional injury.  The same is true for Soto.

[3] In a footnote, Cambridge contends that Soto's October 9 supplemental brief should be stricken as prohibited by the Court's September 21, 2015 Scheduling Order.  (Br. at 2 n.1.)That is incorrect.  As expressly noted in Soto's supplemental brief, the submission was directed to a separate issue raised at the hearing—namely, whether Cambridge can be liable based on one enforcement action (it can).  (Dkt. 94 at 1 & n.1.)  That issue is different from the issue raised by the Court's order, *i.e.*, whether Cambridge continues to have a policy prohibiting noncommercial leafleting.  In any event, it is well-settled that a footnote is not the appropriate form to bring a motion to strike.  *See* Fed. R. Civ. P. 12(f)(2) (requiring party to bring a motion before court when moving to strike); *cf. Mann v. Taser Int'l, Inc.*, No. 05-0273, 2007 WL 4794113, at *1 n.1 (N.D. Ga. Oct. 1, 2007) (denying Defendant's request, which was made in a footnote, to strike a portion of the record).

have personally suffered, or will imminently suffer, actual injury.  To prove that she has

standing, Soto need only show that (1) she personally has suffered some actual or threatened

injury as a result of Cambridge's conduct, (2) the injury is fairly traceable to Cambridge's

conduct, and (3) the injury likely will be redressed by a favorable decision.  *See Mangual v.*

*Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003) (citing *New Hampshire Right to Life Political*

*Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996)); *see also New Hampshire Hemp*

*Council, Inc. v. Marshall*, 203 F.3d 1, 5 (1st Cir. 2000) (noting that the standing doctrine is

"somewhat relaxed where First Amendment interests are threatened") (citing *Meese v. Keene*,

481 U.S. 465 (1987)).

Cambridge has raised no dispute over the first two elements.  Nor can it.  As to the first

element, Soto suffered an actual injury on December 12, 2011 when a Cambridge police officer

deprived her of her constitutional right to engage in expressive activity and threatened to subject

her to criminal and civil fines if she continued to leaflet, thereby causing Soto to cease leafleting

that day.[4]  *See Sullivan v. City of Augusta*, 511 F.3d 16, 30-31 (1st Cir. 2007) (finding that

plaintiffs demonstrated an actual injury where the City of Augusta "deterred" an organizer from

applying for a street march permit for a period of time); *see also Lujan v. Defenders of Wildlife*,

504 U.S. 555, 561-62 (1992) (stating that when the plaintiff is the object of the challenged

---

[4] Where, as here, the unconstitutional act of a municipality's employee "executes a policy
statement, ordinance, regulation, or decision officially adopted and promulgated by that body's
officers," the municipality "can be sued directly under § 1983 for monetary, declaratory, or
injunctive relief."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-701
(1978) (explaining further that "municipal bodies sued under § 1983 cannot be entitled to an
absolute immunity").  Cambridge does not dispute that its police officer was enforcing
Cambridge's prohibition on leafleting parked cars when he prevented Soto from engaging in
First Amendment activity on December 12, 2011.  Thus, Soto is entitled to sue Cambridge
directly under 42 U.S.C. § 1983.

"government action or inaction . . . there is ordinarily little question that the action or inaction has caused him injury").[5]

Further, to the extent Soto was threatened with criminal penalties for exercising her First Amendment rights, the First Circuit does not require her to "[actually] suffer the penalty in order to generate a conflict worthy of standing in federal court." *Mangual*, 317 F.3d at 56; *see, e.g.*, *Parow v. Kinnon*, 300 F. Supp. 2d 256, 261-62 (D. Mass. 2004) (stating that injury can be caused "by the threat that the speaker will be . . . punished for his or her speech," including "when the threatened sanction takes the form of a regulatory or financial penalty"). Accordingly, the fact that Soto was not fined or ticketed for leafleting on December 12, 2011 is not a bar to federal jurisdiction over her claim.

As to the second element, Cambridge's prohibition of leafleting parked cars, which was enforced by a Cambridge police officer and ratified by Cambridge officials under the 1994 Opinion Letter, was the direct cause of Soto's injuries. *See Monell*, 436 U.S. at 690 (holding that municipalities are eligible defendants for purposes of 42 U.S.C. § 1983 where the alleged unconstitutional action "implement[ed] or execute[d] a policy statement . . . or decision officially adopted and promulgated by [its] officers"); *see also* Dkt. 52, Ex. F (Nov. 12, 2014 Dep. Tr. of Cambridge Police Commissioner) at 122:5-13 (Cambridge's Rule 30(b)(6) witness explaining that the City's prohibition of placing objects on windshields of vehicles, including leaflets, is based in part on the 1994 Opinion Letter); Dkt. 67 (Cambridge's Responses to Plaintiff's

---

[5] Dkt. 51, Rule 56.1 Statement of Material Facts ("SMF") ¶ 19; *see also Krantz*, 160 F.3d at 1217-18 (holding that plaintiffs who were restricted from leafleting due to the city's prohibition on leafleting parked cars had standing to bring their First Amendment challenge); *Wright v. Town of Southbridge*, No. 07-40305-FDS, 2009 WL 415506, at *5 (D. Mass. Jan. 15, 2009) (finding a cognizable injury where plaintiffs alleged that the Town of Southbridge ordered a family to remove protest signs from their car, even though the family refused to comply with the order).

Statement of Material Facts) at No. 51 ("The 1994 Opinion Letter informed the City's position

that the Statute prohibited the posting of flyers on cars."); *id.* at No. 29 (Cambridge admitting

that the word "placement" in the 1994 Opinion Letter "has equal applicability to commercial and

noncommercial fliers.").  That the enforcement against Soto occurred just once is irrelevant.  *See*

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("[W]here action is directed by those

who establish governmental policy, the municipality is equally responsible whether that action is

to be taken only once or to be taken repeatedly.").

   As to the final element, relying on just one case from another Circuit, Cambridge

contends that nominal damages are insufficient to redress a constitutional injury.[6]  That is plainly

wrong.  Nominal damages are sufficient to redress Soto's injuries.  *See Wagner v. City of*

*Holyoke, Mass.*, 404 F.3d 504, 509 (1st Cir. 2005) (upholding award of nominal damages for

violation of plaintiff's First Amendment rights); *S. Boston Allied War Veterans Council v. City of*

*Boston*, 297 F. Supp. 2d 388, 399 (D. Mass. 2003) (awarding plaintiff nominal damages for

defendant's violation of plaintiff's First Amendment rights).  Cambridge cites no law holding

otherwise.

   The case cited by Cambridge—*Morrison v. Board of Education of Boyd County*—does

not hold otherwise.  521 F.3d 602, 610 (6th Cir. 2008).  Rather, it expressly holds that "nominal

damages ***are*** a vehicle for a declaratory judgment."  *Id.* (emphasis added).  What *Morrison*

appears to address are situations where a claim for prospective relief has become moot.  The

question in those cases (where the claim for prospective relief has become moot) is whether a

claim for retrospective relief, *e.g.*, through an award of nominal damages, is sufficient to prevent

---

[6] Cambridge has never before raised any argument with respect to standing.  *See, e.g.*, Dkt. 41,
Cambridge's Answer to Amended Complaint.

dismissal.  As an initial matter, this case is not like *Morrison*.  Unlike *Morrison*, where the plaintiff had no claim based on future harm (because the school district abandoned its unconstitutional policy), here, Soto expressly has a claim for declaratory and injunctive relief because Cambridge continues to maintain an unconstitutional prohibition against noncommercial leafleting.  Accordingly, in this case, nominal damages **would** be sufficient to acknowledge that Soto's constitutionally protected right was violated and to ensure her constitutionally protected rights are protected.  *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) (explaining that an award of nominal damages ensures that "the law recognizes the importance to organized society that those rights be scrupulously observed").

But even if Soto's claim for prospective relief had become moot, *Morrison* would not require dismissal.  While the First Circuit does not appear to have expressly ruled on the issue, the weight of authority, including from the Supreme Court, suggests that an initial claim for nominal damages can sustain an otherwise moot case.  For example, the First Circuit has held that, where a plaintiff had been released from prison, which mooted his claim for injunctive relief against a rule limiting the length of his beard, nominal and punitive damages could be sufficient to avoid mooting the entire case.  *Kuperman v. Wrenn*, 645 F.3d 69, 73 & n.5 (1st Cir. 2011) (because "some relief" was available, the claims were not moot).  This decision is in accord with other cases from other Circuits which more directly address the issue.  *See*, *e.g*., *Davis v. Village Park II Realty Co.*, 578 F.2d 461, 463 (2d Cir. 1978) ("The availability of either nominal or substantial damages is sufficient to prevent this case from becoming moot."); *Freedom from Religion Found., Inc. v. Connellsville Area Sch. Dist.*, No. 2:12-CV-1406, 2015 WL 5093314, at *11 (W.D. Pa. Aug. 28, 2015) ("The clear consensus outside the Third Circuit is that a valid claim for nominal damages is sufficient to avoid mootness….Thus the Court

concludes that plaintiff's claims for nominal damages continues to present a live controversy, and the Court must address the merits of their challenge[.]") (internal quotation marks omitted); *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 (5th Cir. 2009) (holding that claim for nominal damages for past alleged constitutional violations avoids mootness even where school district's earlier policy had been replaced by new policy); *Lokey v. Richardson*, 600 F.2d 1265, 1266 (9th Cir. 1979) (finding that action not mooted where appellant could be entitled to nominal damages)*; O'Connor v. City and Cnty. of Denver*, 894 F.2d 1210, 1215-16 (10th Cir. 1990) (holding that action not mooted where defendant repealed and amended alleged unconstitutional municipal law because plaintiffs' asserted claim for nominal damages for past violations); *cf. Carey*, 435 U.S. at 266 (approving an award of nominal damages to students who, though suffering no actual injury, had been suspended without an opportunity to respond to the charges against them in violation of their procedural due process rights).

In any event, Soto is not solely seeking nominal damages, but also appropriately seeking declaratory relief, injunctive relief, costs, and attorney fees, and any other relief the Court deems just. These reliefs sought are all sufficient to meet the redressability prong of the Article III standing requirement as they will redress the City's interference with her First Amendment rights. *See Cortes-Reyes v. Salas-Quintana*, 608 F.3d 41, 53 (1st Cir. 2010) (allowing an award of nominal damages for a First Amendment violation).

## II.  THERE IS A JUSTICIABLE CASE OR CONTROVERSY OVER SOTO'S ONGOING LEAFLETING ACTIVITIES.

Regarding Soto's claim for prospective relief, Cambridge does not contend that Soto's case is unripe or moot. Rather, all Cambridge raises by way of a justiciability challenge is that Soto's claim is "hypothetical conjecture" (Br. at 4-6). That is incorrect.

The record evidence in this case indisputably establishes that Cambridge has a policy of prohibiting noncommercial leafleting.  While Cambridge now admits that such a policy is no longer permitted "pursuant to the Ordinance," (Dkt. 95 at ¶ 3) Cambridge has not made such a concession with respect to the Statute.  Rather, Cambridge has expressly stated that it views the Statute as prohibiting noncommercial leafleting and that it has an ongoing "obligation to enforce" it.  (Br. at 8.)[7]

First, at the outset of (and throughout) this case, Cambridge stated that its policy of prohibiting leafleting was premised on the 1994 Opinion Letter and relies on **both** the Ordinance as well as the Statute.[8]

- "Q: Does the City have a position on whether leafleting of cars violates the Defacement Statute?  A:  So, according to the [1994 Opinion Letter] that was written by [former City Solicitor] Russell Higley, he refers to *the statute as the enforcement mechanism* for placing fliers on fliers on car windshields."  Dkt. 52-6 (Rule 30(b)(6) testimony of Cambridge) at 122:5-13 (emphasis added);

- "[W]e have been notifying people that they're not to leaflet cars *based on either the state statute* or ordinance[.]"  *Id.* at 63:12-14  (emphasis added);

- "The 1994 Opinion Letter informed the City's position that *the Statute prohibited the posting of flyers on cars*."  Dkt. 67 (Cambridge's Responses to Plaintiff's Statement of Material Facts) at No. 51  (emphasis added);

---

[7] Statements made by Cambridge's counsel necessarily bind the municipality.  *See Genereux v. Raytheon Co.*, 754 F.3d 51, 58-59 (1st Cir. 2014) (holding that an attorney's representations to the court and to opposing party are binding on the attorney's client); *Tomaselli v. Beaulieu*, No. 08-10666-PBS, 2010 WL 1460259, at *6 (D. Mass. Apr. 1, 2010) (explaining that "the client being represented was a state actor, and, as Town Counsel, the attorneys were appointed to speak for the Town").

[8] *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (explaining that municipality liability will be found when the municipality is the "moving force" behind the alleged injury).

- "Admit that to the extent that the City has a policy of forbidding the placement of flyers on parked automobiles on public streets, ***the policy is based on*** both the Ordinance and ***Mass Gen. Laws ch. 266, § 126***."  Response: "***Admitted.***"  Dkt. 97, Ex. 1 (Cambridge's Responses to Plaintiff's First Set of Requests for Admission) at No. 5 (emphasis added).

- "***Pursuant to . . . M.G.L. c. 266, § 126 (the 'Statute') . . . the act of placing fliers on parked motor vehicles is a prohibited activity***."  Dkt. 81 at 1 (emphasis added).

Second, in response to the Court's September 21, 2015 Order, Cambridge did not disavow the 1994 Opinion Letter or its prior pronouncement regarding its interpretation of the Statute (like it did for the Ordinance).  Instead, Cambridge's Police Commissioner affirmed that "the City's police officers have a policy, custom and/or practice of enforcing the laws of the

Commonwealth as they are required to do so."[9]  (Dkt. 95 at ¶ 5; *see also* Br. at 8 (Cambridge

stating that it is obligated to "enforce the laws of the Commonwealth which includes M.G.L. c.

2266 [sic], § 126.").)  As explained above, that enforcement history includes applying the 1994

Opinion Letter, which relies on an interpretation of the Statute, to prohibit Soto's First

---

[9] To the extent that Cambridge is seeking to evade liability by suggesting that its enforcement of the Statute against Soto is compelled by the Commonwealth, there is no support for that assertion in the record.  There is no evidence in the record that the Commonwealth has ever enforced the Statute to prohibit noncommercial leafleting.  *See Commonwealth v. Anderson*, 651 N.E.2d 1237, 1239 (Mass. App. Ct. 1995) (sole Massachusetts decision to interpret the Statute in *dicta* in a case that involved act of spray painting graffiti on a stone wall, *i.e.*, not leafleting).  Nor is there any evidence in the record that the Commonwealth has directed cities and municipalities to enforce the Statute in such a manner.  Rather, the record establishes that Cambridge itself was the moving force behind the constitutional violation.  Cambridge has the discretion to enforce the Statute and, as reflected in at least the 1994 Opinion Letter, it has **chosen**, on its own, to interpret the Statute as supporting its policy of prohibiting noncommercial leafleting.  The Commonwealth has made clear that it has no interest in Cambridge's position.  *See* Dkt. 91 (Email from Attorney General declining to intervene in this litigation).  Accordingly, there can be no doubt that Cambridge, and only Cambridge, is responsible for Soto's constitutional injury. *See McKusick v. City of Melbourne, Fla.*, 96 F.3d 478, 484 (11th Cir. 1996) ("We agree with McKusick that the development and implementation of an administrative enforcement procedure, going beyond the terms of the [state court] injunction itself, leading to the arrest of all antiabortion protestors found within the buffer zone, including persons not named in the injunction nor shown by probable cause to be acting in concert with named parties, would amount to a cognizable policy choice [by the city]."); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-65 (6th Cir. 1993) (holding that municipal liability could attach to exercise of city's deadly force policy because that policy, although authorized by state law, was more restrictive than the state law required and therefore was "a deliberate choice from among various alternatives"); *Rossi v. Town of Pelham*, 35 F. Supp. 2d 58, 77 (D.N.H. 1997) ("Rossi claims that Pelham officials enforced New Hampshire Revised Statutes Annotated (RSA) 41:36, which requires the outgoing tax collector's documents to be surrendered to the board of selectmen, in an unconstitutional manner by deploying [a town police officer] to perform a warrantless search of Rossi's office.  ***Thus, the 'policy' is constituted by the unconstitutional manner that Pelham officials chose to enforce state law, rather than . . . the 'innocuous' act of enforcing state law***. This Pelham policy was the moving force behind the constitutional violation, not the otherwise lawful RSA 41:36.").

Amendment-protected speech of distributing noncommercial leaflets on publicly parked vehicles.[10]

Accordingly, there is nothing "abstract" about Soto's claim.  The Court does not need to engage in any "conjecture" or make any "predictions" about whether Cambridge will enforce its policy against Soto in the future.  Cambridge's own actions and statements make clear that it will, and that Soto will face imminent injury as a result of Cambridge's actions.  *See Putnam v. Town of Saugus, Mass.*, 365 F. Supp. 2d 151, 181 (D. Mass. 2005) (holding that "***a 'policy' for purposes of municipal liability*** may stem from ***a single incident of misconduct***." (citing *Pembaur*, 475 U.S. at 481) (emphasis added).

The two cases relied on by Cambridge are inapposite.  First, *Golden v. Zwickler*, 394 U.S. 103 (1969), involved a plaintiff who had been charged with violating a state statute that

---

[10] At the hearing, the Court raised the question regarding whether an unwritten or one-time policy is actionable.  (Dkt. 92, Sept. 21, 2015 Motion Hearing Tr. at 24:16-17, 25:5-18.)  As an initial matter, the 1994 Opinion Letter embodies Cambridge's policy of prohibiting noncommercial leafleting—accordingly, it is in writing.  There is no dispute between the parties on that point.  (Dkt. 67 (Cambridge's Responses to Plaintiff's Statement of Material Facts) at No. 29 (Cambridge admitting that the word "placement" in the 1994 Opinion Letter "has equal applicability to commercial and noncommercial fliers."); *id* at No. 51 (City admitting that the "***1994 Opinion Letter informed the City's position*** that the Statute prohibited the posting of flyers on cars.") (emphasis added).)   Cambridge has not disavowed the 1994 Opinion Letter and its interpretation to apply to noncommercial leafleting.  Further, the Supreme Court has made clear that government liability can exist under *Monell* regardless of whether the "official policy" takes the form of a writing or an oral statement; and regardless of whether it is rooted in a law on the books or nothing at all.  The Supreme Court has further made clear that municipal liability can attach regardless of whether the "policy" has recurring application or occurs just once.  *Monell* itself involved a policy—untied to any ordinance or statute—requiring pregnant employees to take maternity leaves before medically necessary.  *See Monell*, 436 U.S. at 660-61; *see also Pembaur*, 475 U.S. at 481 ("[T]he municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly"); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 251-53 (1981) (vote of city council to cancel license for rock concert was an official policy giving rise to *Monell* liability); *Owen v. City of Independence, Mo.*, 445 U.S. 622, 629-33 (1980) (personnel decision made by city council constitutes "official policy").

prevented persons from distributing anonymous handbills in connection with an election campaign. The subject of plaintiff's handbills was a congressman, who, after the filing of the complaint, decided to withdraw from the race. *Id.* at 106-07. Because plaintiff in *Golden* only sought prospective relief, the Court found that it was conjectural whether plaintiff would be prosecuted under the state statute in the future because there was nothing in the record indicating that plaintiff would continue to engage in distributing handbills (because the congressman was no longer running for re-election). *Id.* at 109. Here, the record is clear that Soto does intend to continue engaging in her constitutionally protected activity (Dkt. 52, Ex. 2 at RFA No. 1) and that Cambridge will enforce its policy against her based on its incorrect interpretation of the Statute. Thus, there is nothing conjectural about whether Cambridge will take action against Soto such that injunctive and declaratory relief is warranted.

Similarly, *O'Shea v. Littleton* is also distinguishable from the facts in this case. In *O'Shea*, the Court dismissed the plaintiffs' claims because it was not clear that any of the named plaintiffs had actually suffered the injury alleged in the complaint. 414 U.S. 488, 495 (1974) ("None of the plaintiffs is identified as himself having suffered any injury in the manner specified."). Here, by contrast there is no real dispute that Soto did suffer an injury in fact on December 12, 2011 when Cambridge prohibited her from engaging in her constitutionally protected activity. Cambridge also does not dispute that such action was conducted, and ratified by Cambridge officials, pursuant to Cambridge's policy, as reflected in the 1994 Opinion Letter,

interpreting both the Ordinance and the Statute.  Further, the record is also clear that Cambridge will continue to take action against Soto pursuant to its policy.[11]

### CONCLUSION

For the foregoing reasons, along with the reasons stated in Soto's Supplemental Statement of Authority and her Memorandum of Law in Support of Motion for Summary Judgment, Plaintiff respectfully requests that the Court grant her motion for summary judgment on Counts 1 to 4 of her Amended Complaint.

---

[11] That Cambridge has elected to stay its enforcement against Soto during the course of this litigation is irrelevant.  *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (finding that plaintiffs had standing despite school district's cessation of unconstitutional practice against plaintiffs pending outcome of litigation); *see also Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops,* 705 F.3d 44, 54-55 (1st Cir. 2013) (explaining that the voluntary cessation doctrine "is to avoid a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after"); *c.f. Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 n.3 (1st Cir. 1995) (case still actionable despite agreement by parties not to enforce disputed ordinance pending outcome of litigation).

Dated:   November 18, 2015                    Respectfully submitted,


                                              */s/ Julia M. Ong*
                                              Kevin S. Prussia (BBO# 666813)
                                              Julia M. Ong (BBO# 685014)
                                              Chaloea Williams (BBO# 691154)
                                              WILMER CUTLER PICKERING
                                              HALE AND DORR, LLP
                                              60 State Street
                                              Boston, MA  02109
                                              Telephone:  617-526-6000
                                              Facsimile:  617-526-5000
                                              kevin.prussia@wilmerhale.com
                                              julia.ong@wilmerhale.com
                                              chaloea.williams@wilmerhale.com


                                              Of Counsel:


                                              Matthew R. Segal (BBO# 654489)
                                              AMERICAN CIVIL LIBERTIES UNION
                                               OF MASSACHUSETTS
                                              211 Congress Street, 3rd Floor
                                              Boston, MA  02110
                                              Telephone:  617-482-3170
                                              Facsimile:  617-451-0009
                                              msegal@aclum.org


                                              *Attorneys for Plaintiff Paula F. Soto*

**<u>Certificate of Service</u>**

I, Julia M. Ong, hereby certify that PLAINTIFF PAULA F. SOTO'S STATEMENT REGARDING JUSTICIABILITY filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on November 18, 2015.

/s/ Julia M. Ong
Julia M. Ong